UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL ASCHE, STEVEN B. LEVINE, TIMOTHY S. REED, MARCIAL CUEVAS and JACK WILLIAM DUNLAP,<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD INSURANCE COMPANY OF ILLINOIS,<br><br>Defendant. | Case No. 303CV0416 PCD |

**DEFENDANT'S MEMORANDUM OF LAW SUPPORTING
MOTION FOR SUMMARY JUDGMENT**

Dated:  December 3, 2004

Respectfully submitted,

Hartford Insurance Company of Illinois

By its attorneys
W. Joe Wilson (ct22292)
jwilson@tylercooper.com
William H. Champlin III (ct04202)
champlin@tylercooper.com
TYLER COOPER & ALCORN, LLP
185 Aslyum Street
CityPlace/35th Floor
Hartford, CT  06103-3488
(860) 725-6200
Fax (860) 278-3802

**TABLE OF CONTENTS**

*TABLE OF AUTHORITIES*                                                                iii

*INTRODUCTION*                                                                          1

*FACTUAL SUMMARY*                                                                       2

I.      THE POLICY                                                                      2

     A.      THE POLICY IS A CLAIMS-MADE POLICY                                      3

     B.      NOTICE OF POTENTIAL CLAIMS                                              4

     C.      REGULATORY EXCLUSION.                                                   4

II.     CLAIMS BROUGHT OR THREATENED AFTER THE POLICY PERIOD                            
                                                                                       5

     A.      THE FDIC DISMISSAL ORDER                                                5

     B.      CBC'S ONLY LETTER TO HARTFORD WITHIN THE POLICY
           PERIOD                                                                  5

     C.      CBC'S LETTER AFTER THE POLICY PERIOD.                                   6

     D.      THE MEGALER ACTION.                                                     7

     E.      THE FDIC AND CDOB PROCEEDINGS (THE "FDIC ACTION").                      
                                                                                       8

     F.      THE "THREATENED SHAREHOLDER ACTION".                                    9

*ARGUMENT*                                                                             10

I.      APPLICABLE LEGAL STANDARDS                                                     10

     A.      SUMMARY JUDGMENT                                                       10

     B.      STANDARD FOR CONSTRUING INSURANCE POLICIES
           UNDER CONNECTICUT LAW                                                   11

II.     NONE OF THE CLAIMS FOR WHICH COVERAGE IS SOUGHT WAS
     MADE DURING THE POLICY PERIOD                                                 12

III.    THE CORRESPONDENCE TO HARTFORD PRIOR TO THE
     EXPIRATION OF THE POLICY PERIOD DID NOT PROVIDE NOTICE
     OF THE SPECIFIC WRONGFUL ACTS THAT GAVE RISE TO THE
     CLAIMS FOR WHICH COVERAGE IS NOW SOUGHT                                       14

     A.      THE NOTICE PROVISIONS IN A CLAIMS-MADE POLICY
           DEFINE THE SCOPE OF COVERAGE                                            14

     B.      THE NOTICE PROVIDED TO HARTFORD BY CBC                                 16

C.    THE MEGALER ACTION ALLEGES DIFFERENT WRONGFUL
      ACTS BY DIFFERENT DIRECTORS.                                      18

D.    THE FDIC ACTION ALLEGES DIFFERENT WRONGFUL ACTS
      BY DIFFERENT DIRECTORS.                                          20

IV.   IN ANY EVENT, THE POLICY EXCLUDES CLAIMS MADE BY THE
      FDIC AND CDOB                                                    21

V.    THERE IS NO COVERAGE FOR ANY THREATENED OR FUTURE
      CLAIMS AGAINST THE PLAINTIFFS                                    22

*CONCLUSION*                                                           22

## TABLE OF AUTHORITIES

*CASES*

Aetna Life & Cas. Co. v. Bulaong, 588 A2d 138 (Conn. 1991).                                    11

Am. Home Assurance Co. v. Abrams, 69 F. Supp. 2d 339 (D. Conn. 1999)              19

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)                                               10

Burns v. Int'l Ins. Co., 709 F. Supp. 187 (N.D. Cal. 1989), aff'd 929 F.2d 1422 (9th Cir.
   1991)                                                                                                               14

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)                                                          10

Enfield Pizza Palace, Inc. v. Ins. Co. of Greater N.Y., 755 A.2d 931 (Conn. App. 2000)    11

FDIC v. Caplan, 838 F. Supp. 1125 (W.D. La. 1993)                                                  19

FDIC v. Mijalis, 15 F.3d 1314 (5th Cir. 1994)                                                        14, 19

Hansen v. Ohio Cas. Ins. Co., 687 A.2d 1262 (Conn. 1996).                                      11

Home Ins. Co. v. Adco Oil Co., 154 F.3d 739 (7th Cir. 1998)                                     15

ITC Investments, Inc. v. Employers Reinsurance Corp., 2000 Conn. Super LEXIS 3544
                                                                                                                     14, 15

Kelly v. Figueiredo, 610 A.2d 1296 (Conn. 1992)                                                      11

LaForge v. American Casualty Company of Reading, PA 37 F.3d 580 (10th Cir. 1994)     14

Sapp v. Greif, No. 97-3200, 1998 U.S. App. LEXIS 6668 (10th Cir. Apr. 3, 1998)          19

Schultz v. Hartford Fire Ins. Co., 569 A.2d 1131 (Conn. 1990)                                    11

Shilberg Integrated Metals Corp. v. Continental Cas. Co., 819 A.2d 773 (Conn. 2003).
                                                                                                                           11

Slaughter v. Am. Cas. Co., 37 F.3d 385 (8th Cir. 1994)                                            21

Western World Ins. Co. v. Peters, 989 F. Supp. 188 (D. Conn. 1997)                           11

*RULES*

Fed R. Civ. P. 56(e).                                                                                             10

*OTHER AUTHORITIES*

Appleman, 7A Insurance Law and Practice §4504.01 at 312 (Berdal ed., 1979).     14

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

|  |  |
|---|---|
| MARSHALL ASCHE, STEVEN B. LEVINE, TIMOTHY S. REED, MARCIAL CUEVAS and JACK WILLIAM DUNLAP, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 303CV0416 PCD |
| HARTFORD INSURANCE COMPANY OF ILLINOIS, | ) ) ) |
| Defendant. | ) ) |

---

## DEFENDANT'S MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT

Defendant, Hartford Insurance Company of Illinois ("Hartford"), by and through its counsel, hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment in the above-captioned action.   Hartford respectfully asks this Court to grant summary judgment in its favor based on the clear and unambiguous provisions of the insurance policy at issue in this litigation.   Pursuant to those provisions, Hartford has no liability to the Plaintiffs because (1) the claims for which coverage is sought were not first made during the policy period; (2) those claims and potential claims may not be deemed first made during the policy period; and (3) the policy's regulatory exclusion precludes coverage.

## INTRODUCTION

In this litigation, Plaintiffs, former directors and officers of Connecticut Bank of Commerce ("CBC"), allege that Hartford breached the terms of an insurance policy it issued to

CBC and seek a declaration that the policy covers certain claims that have been, "or may be," asserted against Plaintiffs by third parties. The insurance policy at issue is a "claims-made" policy, providing coverage only for Claims that are or may be deemed first made between 12:01 a.m. on July 1, 2001 and 12:01 a.m. on July 1, 2002 (the "Policy Period").[1] Plaintiffs seek coverage for claims that were actually made in October 2002 and November 2002: a civil lawsuit brought by a former CBC depositor and proceedings initiated by the Connecticut Department of Banking and the Federal Deposit Insurance Corporation. Plaintiffs also seek a declaration of coverage for claims, including a "Threatened Shareholder Action" (the threat was made in a letter dated January 2003), that have not yet been brought. Plaintiffs' arguments cannot be supported either by the express terms of the contract or by Connecticut law interpreting those terms.

## FACTUAL SUMMARY

**I.    THE POLICY**

Hartford issued Directors, Officers and Company Liability Policy No. NDA0200230-01 to CBC for a Policy Period from 12:01 a.m. on July 1, 2001 to 12:01 a.m. on July 1, 2002 (the "Policy"), with a Limit of Liability of $5,000,000, including Claims Expenses, subject to a $200,000 Retention for Company Reimbursement and Company Securities Claim Liability coverages. Complaint, Ex. A, Policy Declarations Page. (For the Court's convenience, the Policy is also attached hereto as Exhibit A.)

---

[1]   In this Memorandum, capitalized terms that are not otherwise defined are used as defined in the Policy.

**A.    The Policy Is A Claims-Made Policy**

Section I(A) of the Policy provides the following:

> Except for Loss which the Insurer pays pursuant to Insuring Agreement B of this Policy [indemnification by CBC], [2] the Insurer will pay on behalf of the Directors and Officers Loss which the Directors and Officers shall become legally obligated to pay as a result of a <u>Claim first made during the Policy Period</u> or Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period. (Emphasis added.)

Thus, the Policy provides coverage only for Claims made before July 1, 2002 at 12:01 a.m. [3]

Complaint, Ex. A, Section I(A).

Section IV(A) of the Policy defines "Claim" as:

> a written demand for civil damages or other civil relief commenced by the Insureds' receipt of such demand;

> a civil proceeding commenced by the service of a complaint or similar pleading, or

> a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

> against Directors or Officers or, with respect to Insuring Agreement (C), the Company, for a Wrongful Act, including any appeal therefrom.

Complaint, Ex. A, Section IV(A).

---

[2]  CBC is not indemnifying the Plaintiffs for otherwise covered Loss because it is Financially Insolvent, defined by Section IV(G) of the Policy as the status of CBC resulting from the appointment of (among other things) any receiver, in this case, the Federal Deposit Insurance Corporation ("FDIC").  Complaint, Exhibits A and E.

[3]  The Insureds did not purchase a Discovery Period, which, therefore, is not applicable. Affidavit of James Palermini ("Palermini Aff.") (attached hereto as Exhibit B), ¶ 2.

**B.      Notice of Potential Claims**

The Policy provides a means whereby certain actions brought after the Policy Period may

be <u>deemed</u> Claims made during the Policy Period.   This provision is triggered <u>only</u> if the

Insureds preserved coverage by complying with Section VIII(A):

> If during the Policy Period the Insureds become aware of a specific
> Wrongful Act that may reasonably be expected to give rise to a
> Claim against any Director or Officer . . . and if such Wrongful Act
> is reported to the Insurer during the Policy Period in writing with
> particulars as to the reasons for anticipating such a Claim, the
> nature and dates of the alleged Wrongful Act, the alleged damages
> sustained, the names of potential claimants, any Director or Officer
> involved in the alleged Wrongful Act and the manner in which the
> Insureds first became aware of the specific Wrongful Act, then any
> Claim subsequently arising from such duly reported Wrongful Act
> shall be deemed under this Policy to be a Claim made during the
> Policy Period in which the Wrongful Act is first duly reported to
> the insurer.

Complaint, Ex. A, Section VIII(A).

**C.      Regulatory Exclusion**

Endorsement No. 4 to the Policy excludes from coverage any Claim

> brought by or on behalf of the Resolution Trust Corporation,
> Office of Thrift Supervision, Federal Deposit Insurance
> Corporation, the Comptroller of the Currency, or similar federal or
> state supervisory or regulatory authority.

Endorsement No. 4 creates an exception to this "regulatory exclusion" <u>only</u> in the event of a

judgment or other final adjudication establishing no liability on the part of <u>any</u> Insured for an

otherwise excluded Claim.  If triggered by a final adjudication of no liability, the exception

would apply <u>only</u> to Claims Expenses and <u>only</u> up to a specified limit of $2,500,000.

Complaint, Ex. A, Endorsement No. 4.

- 4 -

## II.     CLAIMS BROUGHT OR THREATENED AFTER THE POLICY EXPIRED

No Claims were made against the Plaintiffs during the Policy Period.  Plaintiffs assert

coverage for Claims made in October and November 2002 and for a potential claim that was

threatened in January 2003.  The sole – and misplaced – premise for their assertion is an order

dated June 25, 2002, a week before the Policy Period expired.  On that day, the Federal Deposit

Insurance Corporation ("FDIC") issued to CBC a Prompt Corrective Action Directive Ordering

Dismissal  (the "Dismissal Order").

The Dismissal Order directed CBC to dismiss Randolph Lenz, Chairman of CBC's

Board, and J. Donald Weand, Jr., CBC's President and Chief Executive Officer.[4]  According to

the FDIC, their dismissal was necessitated because their continued employment "would not

materially strengthen [CBC's] ability to become adequately capitalized."   Palermini Aff., Ex. 6,

Dismissal Order at ¶¶ 1-2.  As described in detail below, the Dismissal Order cites a 2001 Report

of Examination ("2001 Report"), which had criticized Lenz for causing or permitting CBC to

engage in lax, preferential and hazardous lending activities.  Id. at ¶ 1(a).  The Dismissal Order

identified specific acts by Lenz and Weand but did not name any other individuals as having

engaged in wrongful conduct.

### A.     CBC's Only Letter to Hartford within the Policy Period

By letter dated June 26, 2002, the executive vice president of CBC, Darren Schulman,

advised Hartford that CBC's directors and officers "may be subject to claims for wrongful acts."

Palermini Aff., Ex. 6.  Mr. Schulman's letter enclosed the Dismissal Order and advised Hartford

that it "describes the information that the Insured has obtained at this point in time."   Id.  The

---

[4]   Neither Mr. Lenz nor Mr. Weand is a party to this coverage litigation or, indeed, sought
coverage under the Policy for Claims made against them.

letter noted that the directors and senior management of CBC learned of "this matter" in a meeting with the FDIC and the Connecticut Department of Banking ("CDOB") on June 25, 2002. Id. Except for the Dismissal Order itself, the CBC letter did not enclose any of the documents attached to Plaintiffs' Complaint as Exhibits B, C, D or E.  Accordingly, prior to July 1, 2002, Hartford did not receive any of the information contained in (a) the June 25, 2002 letter from the FDIC to CBC's Board of Directors describing the April 1, 2002 Joint Examination;  (b) the June 25, 2002 letter from the CDOB to CBC's Board describing the Joint Examination;  (c) the CDOB's *ex parte* application to the Superior Court for an order appointing the FDIC as Receiver;  (d) the November 30, 2001 Cease and Desist Order; or (e) the Order appointing the FDIC as Receiver.  Palermini Aff., ¶ 12.

**B.     CBC's Letter After the Policy Period**

By a letter dated July 1, 2002 (after the Policy Period expired at 12:01 a.m.), CBC's insurance broker, Swett & Crawford, provided Hartford with the following notice of "occurrence" described as:

> Insured bank shut down & seized by Dept of Banking.  FDIC named as receiver.  See News Articles, Action Directive from FDIC.

Palermini Aff, Ex. 7, pp 1-2.  The news articles stated that the Commissioner of the Connecticut Department of Banking had  "shut down and seized" CBC and that the FDIC "was named as receiver."  Id., pp 3-5.  The articles did not report that on June 26, 2002, the Commissioner filed an *ex parte* application with the Superior Court of Connecticut asking the court to name the FDIC as CBC's receiver.  Neither the broker, CBC nor any Insured provided Hartford with notice of or a copy of the Commissioner's filing.  Palermini Aff., ¶ 12.

In a letter dated July 26, 2002, Hartford acknowledged receipt of Swett & Crawford's correspondence and of Schulman's letter of June 26, 2002 with the FDIC Dismissal Order. Hartford generally reserved all of its rights and defenses, including its rights as to whether the materials submitted to it constitute a Claim under the Policy. Palermini Aff., Ex. 8, pp 2, 3. Hartford also reserved its rights and defenses as to whether the materials provided notice with the particularity required by the Policy. Id., p 2. Finally, Hartford reserved its right to exclude coverage for claims made by the FDIC, pursuant to the "regulatory exclusion" set forth in Endorsement No. 4 to the Policy. Id., pp 2-3. Hartford received no response to its letter from any Insured. Palermini Aff., ¶ 11. In any event, no Insured incurred any personal liability as a result of the FDIC Dismissal Order, the Commissioner's seizing of CBC or the naming of the FDIC as receiver. In fact, no Insured challenged Hartford's coverage views for another three months, when a Claim was finally made.

**C.      The Megaler Action**

In October and November 2002, more than three months after the Policy Period expired, Plaintiffs sought coverage from Hartford for losses from a complaint filed on October 3, 2002, in the U.S. District Court for the Southern District of New York, captioned *Megaler, S.A. v. Randolph Lenz, Marshall Asche, Steven Levine, Brian Marks, Timothy S. Reed, Marcial Cuevas, Jack William Dunlap and Eduardo P. Martin*, Case No. 02 CV 7925 (the "Megaler Action"). Palermini Aff., Ex. 1; Complaint, Ex. G.

Megaler is a business corporation based in Uruguay. Complaint, Ex. G, ¶ 1. The Megaler Action alleges that Megaler was induced to make deposits with CBC by Eduardo Martin, CBC's Executive Vice President and Head of International Operations. Id. at ¶ 49. The complaint alleges that on April 1, 2002, the Connecticut Department of Banking and the FDIC

- 7 -

conducted a joint examination of CBC (the "Joint Examination"),[5] which resulted in a finding that CBC was insufficiently funded by $34,500,000, and that it had insufficient earnings to fund this deficiency. Id. at ¶¶19-21.

The gravamen of the Megaler complaint is that only one week after the Joint Examination, Eduardo Martin misrepresented to Megaler that "the financial condition of CBC Bank was sound, and without problems" inducing Megaler to deposit $2,693,103.18 in its CBC account. Id. at ¶23. There is no allegation that Lenz or Weand committed any wrongful acts to induce Megaler to deposit the funds.

**D.    The FDIC and CDOB Proceedings (the "FDIC Action")[6]**

On November 22, 2002, the FDIC issued a Notice of Assessment of Civil Money Penalties (the "FDIC Proceeding") captioned *In the Matter of: Randolph W. Lenz, J. Donald Weand, Jr., Marcial Cuevas, Jack W. Dunlap, Steven B. Levine, Brian A. Marks, and Marshall C. Asche, individually and as former institution-affiliated parties of Connecticut Bank of Commerce, Stamford, Connecticut.*[7]  Palermini Aff., Ex. 2. The FDIC Proceeding alleges that the respondents, who include the Plaintiffs in this action, participated in various straw loan schemes and made and/or authorized improper loans and loan extensions that were poorly underwritten, violated CBC's loan policy or exhibited other unsafe or unsound characteristics. Id. at p. 3.

---

[5]   Even though the Joint Examination occurred during the Policy Period, neither the broker, CBC nor any Insured ever provided notice of the Joint Examination to Hartford. Palermini Aff., ¶ 11.

[6]  Plaintiffs' Complaint refers to the FDIC and CDOB Proceedings collectively as "the FDIC Action." Complaint, ¶ 2.

[7]  The bank official centrally involved in the Megaler Action – Eduardo Martin – was not named as a Respondent by the FDIC.

The FDIC Proceeding includes the following notices:

> Notice Of Intention To Prohibit From Further Participation by Lenz and Weand in the conduct of the affairs of any insured depository institution. The Notice alleges that CBC suffered damage "by reason of the violations, unsafe or unsound practices and breaches of fiduciary duty" of Lenz and Weand, including "personal dishonesty" from which they "received financial gain or benefit." Id. at ¶¶ 120-123.

> Notice of Charges for Orders of Restitution against Lenz and Weand, alleging that Lenz was unjustly enriched in the amount of at least $20 million and that he and Weand caused or were primarily responsible for causing CBC to issue loans with an aggregate unpaid balance of at least $34 million. Id. at ¶¶ 124-128.

> Notice of Assessment Of Civil Money Penalties, Findings of Fact and Conclusions of Law against all Respondents. The FDIC found that each of the Respondents knowingly violated law and/or regulations and "knowingly and/or recklessly caused a substantial pecuniary gain or other benefit by reason of such acts." The FDIC ordered Lenz and Weand to pay penalties in the amounts of $2 million and $1 million respectively for Lenz and Weand and fines of $500,000 for Cuevas, Dunlap and Levine and fines of $250,000 for Reed, Marks and Asche). Id. at ¶¶ 129-138.

On November 22, 2002, the CDOB issued a Notice of Intent to Impose Civil Penalty upon at least one director, Brian Marks, based on the board's approval of sixteen loans issued in March 2000. Palermini Aff., Ex. 3, ¶ 10. Marks (who is not a Plaintiff in the instant action) provided the CDOB Notice to Hartford. Palermini Aff., Ex. 4. Although none of the Plaintiffs in the instant action provided similar notice or any copies of the CDOB papers commencing the proceeding, the Plaintiffs' Complaint seeks coverage for "regulatory proceedings initiated by" the CDOB. Complaint ¶ 2.

**E.    The "Threatened Shareholder Action"**

Plaintiff Levine received a letter dated January 3, 2003 from stockholders of CBC, "who were stockholders prior to January 1, 2002 and remain stockholders as of June 26 and June 27, 2002 and continue to own and hold stock certificates issued by said bank." Palermini Aff., Ex. 5. According to the stockholders:

> As a result of [Levine's] participation in unsafe and unsound
> practices in connection with Connecticut Bank of Commerce, and
> by reason of your [Levine] using your official position in a manner
> contrary to the interests of Connecticut Bank of Commerce, said
> shareholders lost all value in their shares by reason of the conduct
> of the Connecticut Bank Commissioner and the FDIC on or about
> June 26 and June 27, 2002.

Id. p. 2.  The letter from the stockholders does not provide any further detail concerning Levine's

conduct.   There is no allegation in the Plaintiffs' Complaint or any evidence in the record that

any stockholders filed any action against Levine or any other Insured.

## ARGUMENT

## I.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when the movant can demonstrate that there is no

genuine issue of material fact and that therefore it is entitled to judgment as a matter of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986).  Essentially, the inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

An issue of fact is "genuine" if the evidence is significantly probative or more than

merely colorable such that a jury could reasonably return a verdict for the nonmoving party.  Id.

at 248.  An issue of fact is "material" if proof thereof might affect the outcome of the lawsuit as

assessed from the controlling substantive law.  Id..

In order to establish the existence of a genuine issue of material fact sufficient to defeat

summary judgment, Plaintiffs in this case must set forth specific facts showing that there is a

genuine issue for trial.  Fed R. Civ. P. 56(e).  Hartford's summary judgment motion, however,