# EXHIBIT A



## Hartford Financial Products

### Policy Separator Page

RECEIVED NOV 8 2002 DRINKER, BIDDLE & REATH LLP

| | |
|---|---|
| Insured Name: | CBC |
| Policy Number: | NDA0200230 |
| Effective Date: | 7/01/2001 |
| Department: | E28   FINANCIAL SERVICES |
| Underwriter: | THOMAS IORIO |
| Job User: | Wilson, Christina |
| Job Number: | 100823 |
| Job Name: | DOPPRINT |
| Date Printed: | 11/06/2001   14:16:32 |

# DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

POLICY NUMBER  NDA0200230-01

HARTFORD INSURANCE COMPANY OF ILLINOIS
Naperville, Illinois


THE HARTFORD

**NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR WRONGFUL ACTS FOR WHICH CLAIMS ARE FIRST MADE WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO THE INSURER NO LATER THAN SIXTY (60) DAYS AFTER THE TERMINATION OF THE POLICY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE AND OTHER CLAIMS EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE AND OTHER CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION AMOUNT.**

**THE POLICY DOES NOT PROVIDE FOR ANY DUTY OR OBLIGATION ON THE PART OF THE INSURER TO DEFEND THE DIRECTORS AND OFFICERS AND THE COMPANY.**

## DECLARATIONS

**ITEM A**  Name of Company and Address:

CBC
612 BEDFORD STREET
STAMFORD, CT 06901

• Agency Code, Name and Address

80007
SWETT & CRAWFORD/BRYSON ASSOC.
TWO WALL STREET
10TH FL.
NEW YORK, NY 10005

**ITEM B**  Policy Period: From 12:01 a.m. on  7/01/01  To 12:01 a.m. on  7/01/02

**ITEM C**

| LIMIT OF LIABILITY | $ 5,000,000 | in the aggregate each **Policy Period**, including **Claims Expenses** |
|---|---|---|

**ITEM D**

| RETENTION | INSURING AGREEMENT A | $ 0 | each **Director** and **Officer**, each **Claim**, including **Claims Expenses**, but in no event exceeding |
| | | $ 0 | in the aggregate each **Claim**, including **Claims Expenses**, with respect to all **Directors** and **Officers**. |
| | INSURING AGREEMENT B | $ 200,000 | in the aggregate each **Claim**, including **Claims Expenses**, with respect to Company Reimbursement. |
| | INSURING AGREEMENT C | $ 200,000 | in the aggregate each **Securities Claim**, including **Claims Expenses**. |

**ITEM E**  SECURITIES CLAIM COINSURANCE:
   CLAIMS EXPENSES  0 %    ALL OTHER LOSS  0 %

**ITEM F**  INSURING AGREEMENT C COVERAGE GRANTED?   ☒ Yes   ☐ No

**ITEM G**

| DISCOVERY PERIOD PREMIUM | $ 45,000 |
| DISCOVERY PERIOD DURATION | TWELVE  ( 12 ) months |

**ITEM H**  PRIOR LITIGATION DATE
   INSURING AGREEMENTS A AND B:  7/01/00    INSURING AGREEMENT C:  7/01/00

**ITEM I**  NON-PROFIT **OUTSIDE POSITION** COVERAGE GRANTED?   ☒ Yes   ☐ No

**ITEM J**  PREMIUM:  $ 66,000.00

**ITEM K**  FORM NUMBER OF ENDORSEMENTS ATTACHED AT ISSUANCE:
   SEE FORM GU207 (SCHEDULE OF ENDORSEMENTS)

This Declarations Page, together with the completed and signed Proposal, including all attachments and exhibits, and the attached Directors, Officers and Company Liability Policy form and all endorsements thereto, shall constitute the Contract between (1) the Directors and Officers and the Company and (2) the Insurer.

DO 00 S005 00 0600   Date: _____     Authorized Representative: _____

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

Case 3:03-cv-00416-PCD    Document 22-3    Filed 01/31/2005    Page 4 of 15

GU 207
(6-78)

# ENDORSEMENT

This endorsement, effective on  7/01/01  at 12:01 A.M. standard time, forms a part of
Policy No.  NDA0200230-01   of the   HARTFORD INSURANCE CO. OF IL.

Issued to  CBC

*Ramani Ayer*
Authorized Representative

SCHEDULE

|   | Form | Date | Title |
|---|---|---|---|
|   | HG00S00200 | 6/00 | IN WITNESS PAGE |
| 1 | DO00R30200 | 6/96 | GENERAL PROFESSIONAL E&O EXCLUSION |
| 2 | DO00R33000 | 6/96 | FIDUCIARY EXTENSION |
| 3 | DO00R33100 | 6/96 | IRA EXTENSION |
| 4 | DO00R33300 | 6/96 | REGULATORY COVERAGE ENDORSEMENT (SUCCESSFUL DEFENSE) |
| 5 | DO00R33600 | 6/96 | EMPLOYEE AS CO-DEFENDANTS |
| 6 | DO00R34200 | 6/96 | SECURITIES OFFERING ENDORSEMENT |
| 7 | DO00R49200 | 5/98 | EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT WITH ENTITY COVERAGE |

GU 207 (6-78)

# THE HARTFORD

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of, and subject to, the payment of the premium, and in reliance upon the particulars, statements, attachments and exhibits contained in and submitted with the Proposal and which shall be the basis of this Policy and shall be deemed to be incorporated herein, and subject to all the terms and conditions of this Policy, the Insurer and the Insureds agree as follows:

I. INSURING AGREEMENTS

This Policy affords the following coverages:

(A) DIRECTORS' AND OFFICERS' LIABILITY

Except for **Loss** which the Insurer pays pursuant to Insuring Agreement (B) of this Policy, the Insurer will pay on behalf of the **Directors** and **Officers Loss** which the **Directors** and **Officers** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Directors** and **Officers** for a **Wrongful Act** which takes place during or prior to the **Policy Period**;

(B) COMPANY REIMBURSEMENT

The Insurer will pay on behalf of the **Company Loss** for which the **Company** has, to the extent permitted or required by law, indemnified the **Directors** and **Officers**, and which the **Directors** and **Officers** have become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Directors** and **Officers** for a **Wrongful Act** which takes place during or prior to the **Policy Period**;

(C) COMPANY SECURITIES CLAIM LIABILITY

If Insuring Agreement (C) coverage is granted pursuant to Item F of the Declarations, the Insurer will pay on behalf of the **Company Loss** which the **Company** shall become legally obligated to pay as a result of a **Securities Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Company** for a **Wrongful Act** which takes place during or prior to the **Policy Period**;

provided, however, as a condition precedent to any such coverage, the **Insureds** shall report such **Claim** (including such **Securities Claim**) to the Insurer as soon as practicable but in no event later than sixty (60) days after the termination of the **Policy Period** or **Discovery Period**, if applicable.

II. EXTENSIONS

(A) DEATH, INCAPACITY OR BANKRUPTCY

In the event of the death, incapacity or bankruptcy of a **Director** or **Officer**, any **Claim** made against the estate, legal representatives, heirs or the assigns of such **Director** or **Officer** for a **Wrongful Act** of such **Director** or **Officer** shall be deemed to be a **Claim** against such **Director** or **Officer**.

(B) DISCOVERY PERIOD

If the Insurer or the **Parent Company** fails or refuses to renew this Policy or if the **Parent Company** cancels this Policy, any **Insured** shall have the right, upon payment of the Discovery Period Premium set forth in Item G of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item G of the Declarations following the effective date of such cancellation or non-renewal but only with respect to any

(C) Subject to Section VII. of this Policy, the Insurer shall advance on behalf of the **Insureds Claims Expenses** which **Directors** and **Officers** or, solely with respect to Insuring Agreement (C), the **Company**, have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**, provided always that to the extent it is finally established that any such **Claims Expenses** are not covered under this Policy, the **Insureds**, as appropriate, agree to repay the Insurer such non-covered **Claims Expenses**.

(D) The Insurer may, with the written consent of the **Insured**, settle any **Securities Claim** for solely a monetary amount which the Insurer deems reasonable. If the **Insured** withholds consent to such settlement, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed the amount for which the Insurer could have settled such **Claim** plus **Claims Expenses** accrued as of the date such settlement was proposed in writing by the Insurer to the **Insured**.

(E) The **Insureds** shall, as a condition precedent to their rights under this Policy, give to the Insurer all information and cooperation as the Insurer may reasonably require and shall do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

## IV. DEFINITIONS

(A) "**Claim**" means:

  (1) a written demand for civil damages or other civil relief commenced by the **Insureds'** receipt of such demand,

  (2) a civil proceeding commenced by the service of a complaint or similar pleading, or

  (3) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

  against **Directors** or **Officers** or, with respect to Insuring Agreement (C), the **Company**, for a **Wrongful Act**, including any appeal therefrom.

(B) "**Claims Expenses**" means that portion of **Loss** consisting of reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses incurred in the defense or appeal of a **Claim**, but shall not include the wages, salaries, benefits or expenses of any **Directors**, **Officers** or employees of the **Company**.

(C) "**Company**" means any company named in Item A of the Declarations and any **Subsidiary**.

(D) "**Director(s)**" and/or "**Officer(s)**" means:

  (1) one or more natural persons who were, now are or shall hereafter be duly elected or appointed directors or officers of the **Company**, or, with respect to a **Subsidiary** incorporated outside the United States, their functional equivalent; and

  (2) with respect to a **Securities Claim** only, any other natural persons who were, now are or shall hereafter be employees of the **Company**.

(E) "**Discovery Period**" means the period set forth in Item G of the Declarations.

(F) "**Executive Officer**" means the president, chief executive officer, chief operating officer, chief financial officer, in-house general counsel, managing director, any executive vice president and any equivalent executive officer of the **Company**.

(G) "**Financial Insolvency**" means the status of the **Company** as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession.

(C) for, based upon, arising from, or in any way related to any claim, **Wrongful Act**, or circumstance if notice thereof is given under any directors and officers liability policy, the term of which incepted prior to the Inception Date of this Policy;

(D) brought or maintained by or on behalf of the **Company** or any **Director** or **Officer**, in any capacity, except:

   (1) a **Claim** that is a derivative action brought and maintained on behalf of the **Company** by one or more security holders who are not **Directors** and **Officers** and who bring or maintain the **Claim** without the solicitation, assistance or participation of any **Director** and **Officer**;

   (2) a **Claim** by a former **Director** or **Officer** for the actual or alleged wrongful termination, discrimination or sexual harassment of such **Director** or **Officer**;

   (3) a **Claim** for contribution or indemnity, if the **Claim** directly results from another **Claim** that is otherwise covered under this Policy; or

   (4) a **Claim** by any employee(s) of the **Company** described in Section IV.(D)(2) of this Policy;

(E) for, based upon, arising from, or in any way related to:

   (1) the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

   (2) any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste,

   including without limitation any **Securities Claim** or any other **Claim** by or on behalf of the **Company** or its shareholders in their capacity as such.

   Pollutants include, but are not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including without limitation smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed;

(F) for, based upon, arising from, or in any way related to such **Directors** and **Officers** serving as a director, officer, trustee, regent, governor or employee of any entity other than the **Company** even if such service is at the direction or request of the **Company**, provided this exclusion does not apply with respect to a **Claim** for a **Wrongful Act** by a **Director** or **Officer** while serving in an **Outside Position** if such **Claim** is brought and maintained without the solicitation, assistance or participation of the entity in which the **Director** or **Officer** serves in the **Outside Position** or any director, officer, trustee, regent, governor or employee of such entity;

(G) for, based upon, arising from, or in any way related to an actual or alleged violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar federal, state, local or common law;

(H) for, based upon, arising from, or in any way related to any demand, suit, or other proceeding against any **Insured** which was pending on or existed prior to the applicable Prior Litigation Date specified in Item H of the Declarations, or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such demand, suit, or other proceeding;

(I) for, based upon, arising from, or in any way related to their gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled;

(J) for, based upon, arising from, or in any way related to any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by such **Insured** if a judgment or other final adjudication adverse to the **Insured** establishes such an act, omission or willful violation, provided this exclusion shall apply to Insuring Agreement (C), if granted, only if such judgment or final adjudication establishes that a **Director** or **Executive Officer** of the **Company** committed such an act, omission or willful violation;

VII. **ALLOCATION**

If both **Loss** covered under this Policy and loss not covered under this Policy are incurred, either because a **Claim** against an **Insured** includes both covered and uncovered matters or because a **Claim** not covered under Insuring Agreement (C) is made against both a **Director** and **Officer** and others, including the **Company**, the **Insureds** and the Insurer shall fairly and reasonably allocate such amount between covered **Loss** and uncovered loss.

If there can be an agreement on an allocation of **Claims Expenses**, the Insurer shall advance on a current basis **Claims Expenses** allocated to covered **Loss**. If there can be no agreement on an allocation of **Loss**:

(A) in any arbitration, suit or other proceeding, no presumption shall exist concerning what is a fair and reasonable allocation;

(B) the Insurer shall advance on a current basis **Claims Expenses** which the Insurer believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined; and

(C) the Insurer, solely if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Insurer and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of **Claims Expenses** on account of a **Claim** shall be applied retroactively to all **Claims Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Claims Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

VIII. **NOTICE**

(A) If during the **Policy Period** the **Insureds** become aware of a specific **Wrongful Act** that may reasonably be expected to give rise to a **Claim** against any **Director** or **Officer** or, with respect to Insuring Agreement (C), the **Company**, and if such **Wrongful Act** is reported to the Insurer during the **Policy Period** in writing with particulars as to the reasons for anticipating such a **Claim**, the nature and dates of the alleged **Wrongful Act**, the alleged damages sustained, the names of potential claimants, any **Director** or **Officer** involved in the alleged **Wrongful Act** and the manner in which the **Insureds** first became aware of the specific **Wrongful Act**, then any **Claim** subsequently arising from such duly reported **Wrongful Act** shall be deemed under this Policy to be a **Claim** made during the **Policy Period** in which the **Wrongful Act** is first duly reported to the Insurer.

(B) Notice of any **Claim** or specific **Wrongful Act** shall be given in writing to **The Hartford, Hartford Plaza, Hattford, CT. 06115 Attention: D&O Claims**. All other notices under this Policy shall be given to the same addressee but to the attention of Financial Products Underwriters.

(C) All notices under this Policy shall refer to the Policy Number, shall be in writing, shall be given by mail, prepaid express courier or facsimile properly addressed and shall be effective upon receipt.

IX. **GENERAL CONDITIONS**

(A) TERRITORY

This Policy extends to **Wrongful Act**s taking place or **Claim**s made anywhere in the world.

(B) CANCELLATION OF POLICY

The Insurer may cancel this Policy for non-payment of premium by sending not less than ten (10) days notice to the **Parent Company** at its last known address. The Insurer may not otherwise cancel this Policy. The **Parent Company** may cancel this Policy by sending contemporaneous notice to the Insurer, provided the **Parent Company** may not cancel this Policy after the effective date of the acquisition of the **Parent Company** as

(a) acquires securities or voting rights in another corporation or creates another corporation, which as a result of such acquisition or creation becomes a **Subsidiary**, or

(b) acquires any corporation by merger into or consolidation with the **Company**,

such corporation and its **Directors** and **Officers** shall be **Insureds** under this Policy but only with respect to **Wrongful Acts** taking place after such acquisition or creation.

However, if during the **Policy Period** the fair value of (i) all cash, securities, assumed liabilities and other consideration paid by the **Company** for any such acquisition, or (ii) all assets acquired or liabilities assumed by the **Company** in any single transaction or series of related transactions, exceeds 20% of the total consolidated assets or liabilities, respectively, of all **Companies** as reflected in the **Parent Company's** last audited consolidated financial statements prior to such acquisition, the **Parent Company** as a condition precedent to coverage with respect to such new **Insureds** or to coverage for **Wrongful Acts** relating to such acquired assets or assumed liabilities and occurring subsequent to such acquisition or assumption, shall give written notice of such acquisition or assumption to the Insurer as soon as practicable but in no event more than ninety (90) days after the effective date of such acquisition or assumption, together with such information as the Insurer may require, and shall pay any additional premium so required by the Insurer. If the **Parent Company** fails to comply with such condition precedent, coverage otherwise afforded by this Section (H)(1) shall terminate as of ninety (90) days after the effective date of such acquisition or assumption.

(2) **Acquisition of Parent Company**

If during the **Policy Period** (i) the **Parent Company** merges into or consolidates with another entity such that the **Parent Company** is not the surviving entity, or (ii) another entity, or person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Company**, then coverage under this Policy shall continue until the later of:

(a) termination of the **Policy Period**, or

(b) any subsequent date to which the Insurer may agree by endorsement,

but only with respect to **Claims** for **Wrongful Acts** taking place prior to such merger, consolidation or acquisition. Any coverage extension pursuant to (b), above, shall be conditioned upon any premium paid or to be paid under this Policy being deemed fully earned upon inception of such coverage extension. Any **Claim** made during such coverage extension shall be deemed to have been made during the **Policy Period** in which such merger, consolidation or acquisition occurred.

The **Parent Company** shall give written notice of such merger, consolidation or acquisition to the Insurer as soon as practicable, together with such information as the Insurer may reasonably require.

(3) **Cessation of Subsidiaries**

If before or during the **Policy Period** a corporation ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Directors** and **Officers** shall continue until termination of this Policy but only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such corporation ceased to be a **Subsidiary**.

(I) REPRESENTATIONS AND SEVERABILITY

The **Insureds** represent that the particulars and statements contained in the Proposal are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**HARTFORD INSURANCE COMPANY OF ILLINOIS**
HOME OFFICE – NAPERVILLE, ILLINOIS
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

*C. M. O'Halloran*                              *Ramani Ayer*

Secretary                                              President

HG 00 S002 00 0600

NDA0200230-01    7/01/01

|  |  |
|---|---|
|  | ENDORSEMENT NO: 1 |

.is endorsement, effective 12:01 am, 7/01/01 forms part
of policy number NDA0200230-01

**issued to:** CBC

**by:** HARTFORD INSURANCE CO. OF IL.

## GENERAL PROFESSIONAL E&O EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that Section V., EXCLUSIONS, is amended by adding the following:

M. for, based upon, arising from, or in any way related to the rendering of or failure to render professional services in connection with the **Company's** business.

other terms and conditions of this Policy remain unchanged.

DO 00 R302 00 0696

ENDORSEMENT NO: 2

,is endorsement, effective 12:01 am, 7/01/01 forms part
of policy number NDA0200230-01

issued to: CBC

by: HARTFORD INSURANCE CO. OF IL.

# FIDUCIARY EXTENSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that notwithstanding the provisions of Exclusion (G) in Section V., EXCLUSIONS, and without limiting or restricting in any way the coverage otherwise afforded under this Policy for the **Directors** and **Officers** under INSURING AGREEMENT A. and the **Company** under INSURING AGREEMENTS B. and C., the insurance afforded under this Policy is extended as follows:

1. The Insurer will pay on behalf of the **Insureds Loss** (excess of the Retention amount shown in Clause 5 of this Endorsement) which the **Insureds** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against any **Insureds** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

2. Solely with respect to the extension of coverage afforded by this Endorsement, Section IV., DEFINITIONS, is amended as follows:

    H. "**Insureds**" means the **Directors** and **Officers** as defined under Section IV., DEFINITIONS, (D) of this Policy, the **Company** as defined under Section IV., DEFINITIONS, (C) of this Policy, the **Covered Plan** as defined under Clause 6 of this Endorsement, all regular salaried or hourly employees of the **Company**, and any other natural person acting as a past, present or future fiduciary of any **Covered Plan**, including the estates, heirs or legal representatives of any deceased or legally incompetent **Insureds**.

    O. "**Wrongful Act**" means:

        1. any actual or alleged breach of the responsibilities, obligations or duties imposed upon fiduciaries of a **Covered Plan** by the Employment Retirement Income Security Act of 1974, as amended, by the common or statutory law of the United States, or any state or other jurisdiction;

        2. any other matter claimed against any **Insureds** solely because of the **Insureds'** service as a fiduciary of any **Covered Plan**; or

        3. any negligent act, error or omission in the administration of any **Covered Plan**.

3. Solely with respect to the extension of coverage afforded by this Endorsement, the term "**Directors**" and "**Officers**" wherever it appears in this Policy is deleted and replaced with the term "**Insureds**".

DO 00 R330 00 0696                                                                                                 Page 1

ENDORSEMENT NO: 3

This endorsement, effective 12:01 am, 7/01/01 forms part of policy number NDA0200230-01

issued to: CBC

by: HARTFORD INSURANCE CO. OF IL.

# IRA EXTENSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that notwithstanding the provisions of Exclusion (G) in Section V., EXCLUSIONS, and without limiting or restricting in any way the coverage otherwise afforded under this Policy for the **Directors** and **Officers** under INSURING AGREEMENT A. and the **Company** under INSURING AGREEMENTS B. and C., the insurance afforded under this Policy is extended as follows:

1. The Insurer will pay on behalf of the **Insureds Loss** (excess of the Retention amount shown in Clause 4 of this Endorsement) which the **Insureds** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against any **Insureds** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

2. Solely with respect to the extension of coverage afforded by this Endorsement, Section IV., DEFINITIONS, is amended as follows:

    H. "**Insureds**" means any **Directors** and **Officers** as defined in Section IV., DEFINITIONS, (D), the **Company** as defined in Section IV., DEFINITIONS, (C) and all regular salaried or part-time employees of the **Company**.

    O. "**Wrongful Act**" means any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the **Insureds** in their administration of Individual Retirement Accounts (IRA's) and/or HR-10 Plans (Keogh Plans).

3. Solely with respect to the extension of coverage afforded by this Endorsement, the term "**Directors**" and "**Officers**" wherever it appears in this Policy is deleted and replaced with the term "**Insureds**".

4. Solely with respect to the extension of coverage afforded by this Endorsement, ITEM D of the DECLARATIONS of this Policy is amended to read as follows:

    RETENTION: $ 1,000 each **Claim**, including **Claims Expenses**.

5. The extension of coverage afforded by this Endorsement shall in no way serve to increase the Insurer's maximum aggregate LIMIT OF LIABILITY as shown under ITEM C of the DECLARATIONS.

All other terms and conditions of this Policy remain unchanged.

DO 00 R331 00 0696

ENDORSEMENT NO: 4

This endorsement, effective 12:01 am, 7/01/01 forms part
of policy number NDA0200230-01

issued to: CBC

by: HARTFORD INSURANCE CO. OF IL.


## REGULATORY COVERAGE ENDORSEMENT (SUCCESSFUL DEFENSE)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Directors** and **Officers** or, with respect to Insuring Agreement C, the **Company** brought or maintained by or on behalf of the Resolution Trust Corporation, Office of Thrift Supervision, Federal Deposit Insurance Corporation, the Comptroller of the Currency, or similar federal or state supervisory or regulatory authority or any director, commissioner or similar administrator thereof (collectively referred to herein as "Agencies"), regardless of whether such Agencies are acting in the capacity of a depository insurance organization, regulatory agency, receiver, conservator or liquidator of any institution or otherwise, and further without regard to whether such **Claim** is brought in the name of such Agencies, by or on behalf of such Agencies in the name of the **Company**, another entity or individual, or otherwise.

In the event, however, of a judgment or other final adjudication establishing no liability on the part of any **Insureds** for any **Claim(s)** which would otherwise be excluded by the terms of this Endorsement, the Insurer hereby agrees that the **Claims Expenses** with regard to any such **Claim(s)** shall not be excluded from coverage by reason of this Endorsement, provided any coverage afforded for such **Claims Expenses** shall be subject to a $ 2,500,000 Limit of Liability (excess of the amount of the applicable RETENTION shown in ITEM D of the DECLARATIONS), provided always that such Limit of Liability shall be part of and not in addition to the LIMIT OF LIABILITY provided for in ITEM C of the DECLARATIONS.


All other terms and conditions of this Policy remain unchanged.

DO 00 R333 00 0696

ENDORSEMENT NO: 5

ıis endorsement, effective 12:01 am, 7/01/01
of policy number NDA0200230-01                                                forms part

issued to: CBC

by: HARTFORD INSURANCE CO. OF IL.

## EMPLOYEES AS CO-DEFENDANTS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that the term "**Directors**" and "**Officers**", as defined in Section IV.(D), shall also include any other natural person who is at the time of the alleged **Wrongful Act** a full or part-time employee of the **Company**; provided that coverage is not afforded under this Policy with respect to any such employee to the extent the **Claim** against the employee alleges the employee rendered or failed to render professional service to persons or entities other than the **Company**, and provided further that coverage is afforded under this Policy with respect to any **Loss** on account of a **Claim** against such employee only if at the time such **Loss** is incurred such **Claim** is also made against one or more other **Insureds**.

It is further agreed that Exclusion (D) in Section V. shall not apply to any **Claim** brought or maintained by or on behalf of y employee described in this Endorsement.

All other terms and conditions of this Policy remain unchanged.

DO 00 R336 00 0696