EXHIBIT 5

## STEWART OCCHIPINTI & MAKOW, LLP
ATTORNEYS AND COUNSELLORS AT LAW

CHARLES A. STEWART, III
FRANK S. OCCHIPINTI*
------
OF COUNSEL
TRACY E. MAKOW*+
EDWARD G. WILLIAMS

1350 BROADWAY
SUITE 2200
NEW YORK, NEW YORK 10018
(212) 239-5500
FACSIMILE: (212) 239-7030
som@somlaw.com

85 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068
(973) 716-0707
FACSIMILE (973) 716-0887

*ADMITTED IN NEW YORK AND NEW JERSEY
+ADMITTED IN DISTRICT OF COLUMBIA

January 10, 2003

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

The Hartford
Hartford Plaza
Hartford, CT 06115
Attention: D&O Claims

       Re:    Connecticut National Bank of Commerce
                Policy Number NDAC0200230-01

Dear Sir or Madam:

      The undersigned represents Steven B. Levine, Marshall Asche, Timothy Reed, Marcial Cuevas and Jack William Dunlop, former directors of Connecticut Bank of Commerce ("CBC"). I am writing to advise you that by letter dated January 3, 2003, Mr. Levine has received notice of a claim or potential claim by or on behalf of certain unnamed stockholders of CBC and against CBC, its officers and directors arising from alleged wrongful acts and conduct of CBC during the policy period. A copy of a the January 3, 2003 letter from the unnamed stockholder's counsel, Robert A. Slavitt of Slavitt, Connery and Vardamis, constituting such notice to Mr. Levine is attached hereto.

                                                      Very truly yours,

                                                      Charles A. Stewart, III

cc:    Steven B. Levine, M.D.
         Alan J. Joaquin, Esq.

RECEIVED JAN 1 4 2003 DRINKER, BIDDLE & REATH LLP

LAW OFFICES

**SLAVITT, CONNERY & VARDAMIS**

ABRAHAM D. SLAVITT (1994)
PAUL R. CONNERY (1953)
ROBERT A. SLAVITT
GEORGE A. VARDAMIS (2001)
STEPHEN A. HABETZ*
S. ANTOINETTE MORTON
TRICIA L. PINTO**
TODD D. HAASE

618 WEST AVENUE

P. O. BOX 2129

NORWALK, CONNECTICUT 06852-2129

(203) 838-7555

FRANCIS M. BOSZE
GEORGE R. CIAMPA***†
HARRY M. LESSIN (1990)
R. E. VAN NORSTRAND (1985)

OF COUNSEL

TELECOPIER (203) 866-9724

* ALSO ADMITTED IN D.C.
** ALSO ADMITTED IN NEW YORK
*** ALSO ADMITTED IN MICHIGAN
† ALSO ADMITTED IN MASSACHUSETTS

January 3, 2003

Steven B. Levine
17 Sachem Road
Weston, CT 06883

Re:   **Connecticut Bank of Commerce - Determination of Insolvency and Appointment of Receivers - Stockholder Loss Claims**

Dear Sir:

Please be advised that we represent stockholders of Connecticut Bank of Commerce, who were stockholders prior to January 1, 2002, and remain stockholders as and of June 26 and June 27, 2002, and continue to own and hold stock certificates issued by said bank.

As a result of your participation in unsafe and unsound practices in connection with Connecticut Bank of Commerce, and by reason of your using your official position in a manner contrary to the interests of Connecticut Bank of Commerce, said shareholders lost all value in their shares by reason of the conduct of the Connecticut Bank Commissioner and the FDIC on or about June 26 and June 27, 2002. The average value of said shares as traded in the three month period prior to June 26 and June 27 was $2.57 per share, which represents the loss per share of our clients resultant from your conduct as above described and as determined by the Banking Department of the State of Connecticut.

We assume that Connecticut Bank of Commerce maintained directors and liability insurance for the bank and its officers and directors, and that your conduct as above described is covered by said policies, and that you will deliver this letter to said carrier or its agent. If, in fact, such policy did not exist, please notify the writer immediately.

If we do not hear from you or the carrier within thirty (30) days from the date of this letter, we will have to take whatever actions are necessary to protect our client's rights and to recover for their losses. We believe that you, individually, are both jointly and severally responsible for our client's loss.

Very truly yours,

SLAVITT, CONNERY & VARDAMIS

Robert A. Slavitt

RAS:gkc

106-D:\personal\cbc.010303.wpd

# EXHIBIT 6

**CBC**

Connecticut Bank o[f Commerce]
90 Broad Street • New Yor[k]
Tel. (212) 858-3389   Fax

*[Handwritten: 7/2/02 John, Please enter + manage this new matter — Joe]*

*[Handwritten: ICTS]*

**DARREN SCHULMAN**
Executive Vice President
Chief Operating Officer

The Hartford
Hartford Plaza
Hartford, CT 06115

Attention:   D&O Claims

Re:   Connecticut Bank of Commerce/Policy # NDA0200230-01

Ladies and Gentlemen

    I write to provide you with notice in connection with the above-referenced policy.

    It has come to the attention of Connecticut Bank of Commerce (the "Insured") that its directors and officers, including but not limited to its Chairman Randolph W. Lenz and its President and CEO J. Donald Weand, Jr., may be subject to claims for wrongful acts. The Insured learned about this matter on Tuesday, June 25, 2002, when it directors and senior management met with representatives of the Federal Deposit Insurance Corporation ("FDIC") and the State of Connecticut Banking Department. Attached to this letter is the Prompt Corrective Action Directive Ordering Dismissal issued by the FDIC on June 25, 2002, which describes the information that the Insured has obtained at this point in time.

    Please do not hesitate to contact me if you have any questions or need additional information. I can be reached at (212) 858-3389.

Very truly yours,

Darren Schulman   EVP.

Enclosure

---

**Branches**

| Stamford Executive Offices | Woodbridge | Branford | Time Warner Building | New York |
|---|---|---|---|---|
| 612 Bedford Street | 128 Amity Road | 620 West Main Street | 75 Rockefeller Plaza | 90 Broad Street |
| Stamford, CT 06901 | Woodbridge, CT 06525 | Branford, CT 06405 | New York, NY 10019-6908 | New York, NY 10004-2290 |
| Tel. (203) 708-8850 | Tel. (203) 392-2334 | Tel. (203) 488-6301 | Tel. (212) 314-9800 | Tel. (212) 858-3300 |
| Fax (203) 977-8372 | Fax (203) 392-2338 | Fax (203) 488-5761 | Fax (212) 314-9888 | Fax (212) 858-3449 |

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>CONNECTICUT BANK OF COMMERCE<br>STAMFORD, CONNECTICUT<br><br>(INSURED STATE NONMEMBER BANK) | PROMPT CORRECTIVE<br>ACTION DIRECTIVE<br>ORDERING DISMISSAL<br><br>FDIC-02-101 PCAD |

Connecticut Bank of Commerce, Stamford, Connecticut ("Bank"), is a "critically undercapitalized" insured depository institution as that term is defined in section 38(b)(1) of the Federal Deposit Insurance Act ("Act"), 12 U.S.C. § 1831o(b)(1), and section 325.103 of the Federal Deposit Insurance Corporation ("FDIC") Rules and Regulations, 12 C.F.R. § 325.103. Capital levels reflected in the Bank's Reports of Condition and Income as of March 31, 2002, which represented the Bank as "adequately capitalized," when adjusted by preliminary results of a joint examination of the Bank conducted by the FDIC and the State of Connecticut as of April 1, 2002, result in a ratio of tangible equity capital to total assets that equals negative 1.94 percent, thus rendering the Bank "critically undercapitalized" for purposes of the prompt corrective action provisions of the Act.

1. The FDIC has determined that the continued employment of Randolph W. Lenz ("Respondent Lenz"), would not materially strengthen the Bank's ability to become adequately capitalized. This is based upon the finding that:

2

(a) Since 1992, Respondent Lenz has been Chairman of the Bank's Board, the majority shareholder of the Bank, and is currently a member of the Bank's Board Compensation and Credit Committees. He has been previously criticized by the FDIC in its 2001 Report of Examination ("2001 Exam Report") for causing or permitting the Bank to engage in lax, preferential and hazardous lending activities, and it is evident that the volume of loans with undue risk he has referred and continues to refer to the Bank has resulted in severe asset quality problems that have ultimately resulted in the Bank's insolvency.

(b) The 2001 Exam Report cited loan administration weaknesses, credit underwriting deficiencies and a lack of adherence to prudent credit policy guidelines and other weaknesses in controls and procedures necessary to guard against an elevated level of loan risk. These weaknesses resulted in the Bank stipulating to the issuance by the FDIC of a Cease-and-Desist Order dated November 30, 2001, to correct such practices including addressing credit administration weaknesses, revising the Bank's Credit Policy, reducing concentrations of credit, and reducing the volume of adversely classified and criticized loans.

(c) Management of the Bank under the control of Chairman Lenz is poor. Weak risk management practices in many areas of Bank supervision are evident. Despite being warned of loan administration weaknesses, Respondent Lenz has continued to cause or permit the Bank to approve or allow renewal of loans despite the fact that prudent underwriting, effective administration, or adequate oversight appears absent. The findings of the 2002 examination of the Bank indicate that the Bank is in noncompliance with numerous provisions of the November 30, 2001 Cease and Desist Order. The amount of adversely classified loans as of the 2002 examination is $97,584,000.

3

(d) An example of such hazardous lending is a credit relationship to finance gaming operations in Latin American countries which was referred to the Bank by Mr. Lenz. This relationship originated on November 8, 2000 as a line-of-credit in the amount of $250,000, but was amended and restated eleven times. Another line-of-credit was added on December 1, 2001, for $1,125,000 for a sale-leaseback arrangement where the Bank purchased gaming equipment (slot machines) located in Panama. Since origination this credit relationship has grown to $3,795,000. Origination and administration of the loan has been accomplished in a manner contrary to the Bank's Credit Policy. Among other things, repayment of these loans is solely dependent on the successful operation of gambling facilities in Latin America, which have yet to show a profit; the working capital line has been continually renewed with additional advances to fund accrued interest, expenses, and cover operating losses; at each renewal/extension and advance of funds Bank management has capitalized the accrued interest; collateral coverage is weak and since the activities are outside the jurisdiction of the US, collecting or liquidating this loan would be difficult.

(e) The FDIC has discovered evidence that during the period beginning the first quarter of 2000, Respondent Lenz engaged in a apparently fraudulent scheme of unlawful and unsound lending whereby he caused or permitted the Bank to purchase another financial institution, MTB Bank, New York, New York ("MTB"), with $20 million of the Bank's own existing funds instead of through the infusion of $20 million in new Tier I capital, including not less than $10 million in common stock, as was required by the FDIC as a condition to the acquisition. Respondent Lenz represented to the FDIC that he would contribute of $20 million of his own outside funds to purchase common and noncumulative perpetual preferred stock. This scheme was accomplished through more than $20 million in loans that Respondent caused or permitted

4

the Bank to make to nominee borrowers and others, including related interests of Respondent Lenz. That same money was later transferred to Respondent Lenz or his related interests, who transferred it to the Bank in the form of capital purportedly to satisfy the condition to purchase MTB. The result was that the Bank's capital was inflated by $20 million more than it actually was. Respondent Lenz subsequently concealed the scheme from FDIC examiners.

(f) While he has provided capital contributions in the past, the apparent fraudulent activities described above that resulted in at least $20,000,000 of such contributions being obtained through loans by the Bank itself, rather than independently from Respondent Lenz, draws into serious question his ability to provide future capital contributions in a quantity sufficient to assure the future viability of the Bank.

2. The FDIC has also determined that the continued employment of J. Donald Weand, Jr. ("Respondent Weand") would not materially strengthen the Bank's ability to become adequately capitalized. This is based upon the finding that:

(a) Respondent Weand has been President and Chief Executive Officer of the Bank since May 1999. He also served at various times as Senior Vice President, Chief Lending Officer and Chief Operating Officer at the Bank since 1996, and currently serves as a member of the Bank's Management, Risk Management, and Asset and Liability Committees. Respondent Weand has demonstrated no ability to restore a troubled institution to a safe and sound condition and the financial condition of the Bank has deteriorated under Mr. Weand's management, falling from a "3" rated composite bank to a currently insolvent "5" rated institution.

(b) Respondent Weand was responsible for and was the originating officer for many of the loans that were involved in the scheme described in paragraph 1(e) above, the proceeds of which were used to purchase MTB. He has caused or permitted the Bank to engage in lax

5

underwriting and preferential and hazardous lending activities described in paragraph 1(b) through (d), above. As President and Chief Executive Officer, Mr. Weand has also been responsible for allowing poor underwriting practices to continue.

(c) Respondent Weand's direction of the Bank has also strongly contributed to weak risk management practices in many areas of Bank supervision which will result in noncompliance with numerous provisions of the November 30, 2001 Cease and Desist Order, as determined in the FDIC/State 2002 Joint examination.

Furthermore, the FDIC has reason to believe that at present, Respondents Lenz and Weand continue to cause the Bank to originate risky loans and that, unless Respondents are dismissed, such transactions could be similarly repeated, and could further weaken the condition of the Bank, and/or otherwise prejudice the interests of the depositors. The FDIC also has reason to believe that based upon Respondents' participation in apparent fraudulent and hazardous lending described above, and their previous concealment to examiners, there is a strong potential asset dissipation and the possibility of document destruction.

Therefore, the FDIC finds it necessary, in order to carry out the purposes of section 38 of the Act, to issue this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL without providing notice as set forth in section 308.201(a)(1) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.201(a)(1), and hereby issues the PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL pursuant to section 38 of the Act, 12 U.S.C. §1831o, and section 308.201(a)(2) of the FDIC's Rules of Practice and Procedure.

PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL

IT IS HEREBY DIRECTED that the Bank shall dismiss from office Randolph W. Lenz,

6

Chairman of the Board and J. Donald Weand, Jr., President and Chief Executive Officer of the Bank. IT IS FURTHER DIRECTED that this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall become effective and enforceable immediately upon its receipt by the Bank.

Each provision of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall be binding upon the Bank, its directors, officers, employees, agents, successors, assigns, and other institution-affiliated parties of the Bank.

The Bank may file a written appeal of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL within fourteen (14) calendar days from the date of issuance of this directive as provided in section 308.201(a)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.201(a)(2

Within ten (10) calendar days from receipt of a copy of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL as required by section 38(n) of the Act, 12 U.S.C. § 1831o(n), and 308.203(a) of the FDIC's Rules of Practice and Procedures, 12 C.F.R. § 308.203(a), Respondents Lenz and Weand may each file a written request for reinstatement pursuant to section 308.203(b) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.203(b). Within such written response each Respondent may request an informal hearing before the FDIC under section 308.203(b)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.203(b)(2). If either Respondent desires to present oral testimony or witnesses at

7

the hearing, he shall include a request to do so with the request for an informal hearing, and such request shall specify the names of the witnesses and the general nature of their expected testimony.

The appeal and any request for reinstatement shall be filed with Patrick J. Rohan, Regional Director, or his successor, Federal Deposit Insurance Corporation, 15 Braintree Hill Office Park, Suite 100 Braintree, Massachusetts 02184. Copies of all papers filed in this proceeding shall be served upon the Office of the Executive Secretary, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington, D.C. 20429, Michael J. Zamorski, Director, Division of Supervision, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington, D. C. 20429, A.T. Dill, III, Senior Counsel, Legal Division, Compliance and Enforcement Section, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington, D. C. 20429, and upon David Schecker, Regional Counsel (Supervision), Federal Deposit Insurance Corporation, 15 Braintree Hill Office Park, Suite 100 Braintree, Massachusetts 02184.

Each provision of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall remain effective and enforceable except to the extent that, and until such time as, any provision shall be modified, terminated, suspended, or set aside by the FDIC.

Pursuant to delegated authority.

Dated at Washington, D.C., this 25th day of June, 2002.

_____
Michael J. Zamorski, Director
Division of Supervision
Federal Deposit Insurance Corporation