UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL ASCHE, STEVEN B. LEVINE, TIMOTHY S. REED, MARCIAL CUEVAS and JACK WILLIAM DUNLAP, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 303CV0416 PCD |
| HARTFORD INSURANCE COMPANY OF ILLINOIS, | ) ) ) |
| Defendant. | ) ) ) |

## DEFENDANT HARTFORD'S LOCAL RULE 56(a)(1) STATEMENT

This Statement is filed pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(a)(1). The defendant contends that there is no genuine issue to be tried as to the following material facts:

### The Policy

1.      Hartford issued Directors, Officers and Company Liability Policy No. NDA0200230-01 to CBC [Connecticut Bank of Commerce] for a Policy Period from 12:01 a.m. July 1, 2001 to 12:01 a.m. July 1, 2002 (the "Policy"), with a Limit of Liability of $5,000,000 each Policy Period, including Claims Expenses. [1]  Complaint, Ex. A, Policy Declarations Page. (For the Court's convenience, the Policy is also attached to Defendant's Memorandum of Law in Support of Motion for Summary Judgment as Exhibit A.)

---

[1]  In this Statement, capitalized terms that are not otherwise defined are used as defined in the Policy.

2.    Insuring Agreement A of the Policy provides:

> Except for Loss which the Insurer pays pursuant to Insuring
> Agreement B of this Policy, the Insurer will pay on behalf of
> the Directors and Officers Loss which the Directors and
> Officers shall become legally obligated to pay as a result of a
> Claim first made during the Policy Period or Discovery Period,
> if applicable, against the Directors and Officers for a Wrongful
> Act which takes place during or prior to the Policy Period.

Complaint, Ex. A, Section I(A).

3.    Insuring Agreement B provides coverage to CBC for Loss for which CBC has

indemnified the Directors and Officers for an otherwise covered Loss.  Complaint, Ex. A,

Section I(B).

4.    CBC is not indemnifying the Plaintiffs because it is Financially Insolvent,

defined by Section IV(G) of the Policy as the status of CBC resulting from the appointment

of (among other things) any receiver, in this case, the Federal Deposit Insurance Corporation

("FDIC").  Complaint, Ex. E and Ex. A, Section IV(G).

5.    Insuring Agreement C provides coverage to CBC for its own direct liability,

but only for Securities Claims and Employment Practices Claims.  Complaint, Ex. A, Section

I(C) and Endorsement No. 7.

6.    A Securities Claim is defined to mean any Claim brought by a Securities

holder of CBC that

> (1) alleges a violation of the Securities Act of 1933, the
> Securities Exchange Act of 1934, any similar state statute or
> similar common law, or any rules or regulations promulgated
> thereunder; or
> (2) arises from the purchase or sale of, or offer to purchase or
> sell, any Securities issued by [CBC], whether such purchase,
> sale or offer involves a transaction with [CBC] or occurs in the
> open market.

Complaint, Ex. A, Section IV(M).

7.      An Employment Practices Claim is defined to mean a Claim by or on behalf of a past, present or prospective employee of CBC

> which in whole or in part is based upon or arises from any actual or alleged wrongful dismissal, discharge or termination (either actual or constructive) of employment, sexual or workplace harassment, unlawful employment discrimination, wrongful failure to hire or promote, wrongful discipline, failure to grant tenure, negligent employment evaluation, invasion of privacy, employment related defamation, or employment-related wrongful infliction of emotional distress.

Complaint, Ex. A, Endorsement No. 7 at II(1).

8.      None of the claims or potential claims attached to Plaintiffs' Complaint constitutes a Securities Claim or Employment Practices Claim. Complaint, Exs. B, C, D, E, F, G, I.

9.      The Policy provides that it is the duty of the Insureds, not the duty of Hartford, to defend any Claims. Complaint, Ex. A, Section III(B).

10.     The Policy defines "Claim" as:

> (1) a written demand for civil damages or other civil relief commenced by the Insureds' receipt of such demand;
>
> (2) a civil proceeding commenced by the service of a complaint or similar pleading, or
>
> (3) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,
>
> against Directors or Officers or, with respect to Insuring Agreement (C), the Company, for a Wrongful Act, including any appeal therefrom.

Complaint, Ex. A, Section IV(A).

11.     Directors and Officers, in turn, are defined in the Policy to include "one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors or officers of [CBC]." Complaint, Ex. A, Section IV(D).

12.     As a condition precedent to coverage under the Insuring Agreements, the Insureds must report any Claim to Hartford as soon as practicable but in no event later than sixty days after the termination of the Policy Period or Discovery Period, if applicable. Complaint, Ex. A, Section I.

13.     The Insureds did not purchase a Discovery Period, which, therefore, is not applicable.  Affidavit of James Palermini ("Palermini Aff.") (attached to Defendant's Memorandum of Law in Support of Motion for Summary Judgment as Exhibit B), ¶ 2.

14.     The Policy provides:

> If during the Policy Period the Insureds become aware of a specific Wrongful Act that may reasonably be expected to give rise to a Claim against any Director or Officer . . . and if such Wrongful Act is reported to the Insurer during the Policy Period in writing with particulars as to the reasons for anticipating such a Claim, the nature and dates of the alleged Wrongful Act, the alleged damages sustained, the names of potential claimants, any Director or Officer involved in the alleged Wrongful Act and the manner in which the Insureds first became aware of the specific Wrongful Act, then any Claim subsequently arising from such duly reported Wrongful Act shall be deemed under this Policy to be a Claim made during the Policy Period in which the Wrongful Act is first duly reported to the insurer.

Complaint, Ex. A, Section VIII(A).

15.     Endorsement No. 4 to the Policy excludes from coverage any Claim

> brought by or on behalf of the Resolution Trust Corporation, Office of Thrift Supervision, Federal Deposit Insurance Corporation, the Comptroller of the Currency, or similar federal or state supervisory or regulatory authority.

4

> In the event, however, of a judgment or other final
> adjudication establishing no liability on the part of any
> Insureds for any Claim(s) which would otherwise be excluded
> by the terms of this Endorsement, the Insurer hereby agrees
> that the Claims Expenses with regard to any such Claim(s)
> shall not be excluded from coverage by reason of this
> Endorsement, provided any coverage afforded for such Claims
> Expenses shall be subject to a $2,500,000 Limit of Liability . . .
> provided that such Limit of Liability shall be part of and not in
> addition to the [aggregate] Limit of Liability . . .

Complaint, Ex. A, Endorsement No. 4.

### The Dismissal Order

16.    On June 25, 2002, the FDIC issued a Prompt Corrective Action Directive

Ordering Dismissal (the "Dismissal Order"), directing CBC to dismiss Randolph Lenz,

Chairman of CBC's Board, and J. Donald Weand, Jr., CBC's President and Chief Executive

Officer, because Lenz's and Weand's continued employment "would not materially

strengthen [CBC's] ability to become adequately capitalized." Palermini Aff., Ex. 6,

Dismissal Order at ¶¶ 1-2.

17.    The Dismissal Order stated that Lenz had been criticized previously by the

FDIC in a 2001 Report of Examination for causing or permitting CBC to engage in lax,

preferential and hazardous lending activities. Id. at ¶ 1(a).

18.    The Dismissal Order describes an "apparently fraudulent scheme or unlawful

and unsound lending whereby [Lenz and Weand] caused or permitted the Bank to purchase

another financial institution, MTB Bank . . . with $20 million of the Bank's own existing

funds" instead of through the infusion of $20 million in new capital as required by the FDIC.

Id. at ¶¶ 1(b), 2(b).

19.    The Dismissal Order states that the scheme was accomplished

5

> through more than $20 million in loans that [Lenz] caused or
> permitted the Bank to make to nominee borrowers and others,
> including related interests of Respondent Lenz. That same
> money was later transferred to Respondent Lenz or his related
> interests, who transferred it to the Bank in the form of capital
> purportedly to satisfy the condition to purchase MTB. The
> result was that the Bank's capital was inflated by $20 million
> more than it actually was. Respondent Lenz subsequently
> concealed the scheme from FDIC examiners.

Id. at ¶ 1(e).

20.    The only specific acts by Lenz and Weand described by the FDIC in the

Dismissal Order are:

- Lenz referred to CBC a hazardous line of credit
  beginning on November 8, 2000 to finance gaming operations
  in Latin America (Id. at ¶ 1(d));

- Lenz added another hazardous line of credit on
  December 1, 2001 for a sale-leaseback arrangement where
  CBC purchased slot machines in Panama (Id.);

- Lenz engaged in an apparently fraudulent scheme
  "beginning the first quarter of 2000" involving CBC's purchase
  of MTB Bank in New York, artificially inflating CBC's capital
  by $20 million, and then hid the scheme from FDIC examiners
  (Id. at ¶ 1(e));

- Weand was responsible for and was the originating
  officer for some aspects of the MTB scheme (Id. at ¶ 2(b)).

### The Megaler Action

21.    On October 3, 2002, Megaler, S.A., a corporation based in Uruguay that had

maintained a commercial deposit account with CBC, filed an action captioned *Megaler, S.A.*

*v. Randolph Lenz*, et al., Case No. 02 CV 7925, in the U.S. District Court for the Southern

District of New York (the "Megaler Action"), naming as defendants CBC directors Randolph

Lenz, Marshall Asche, Steven Levine, Brian Marks, Timothy S. Reed, Marcial Cuevas, and William Dunlap, and officer Eduardo P. Martin.  Complaint, Ex. G.

22.      The Megaler Action alleges that on April 1, 2002, the Connecticut Department of Banking and the FDIC conducted a joint examination of CBC, which resulted in a finding that CBC was insufficiently funded by $34,500,000 and that it had insufficient earnings to fund this deficiency.  Complaint, Ex. G, ¶¶ 20-21.

23.      The Megaler Action alleges that on April 8, 2002, one week after the Joint Examination, defendant Martin traveled to Buenos Aires to meet with Megaler in order to induce the company to make additional deposits to its account, and that during those meetings, Martin misrepresented to Megaler that "the financial condition of CBC Bank was sound, and without problems," as a result of which Megaler deposited  $2,693,103.18 in its CBC account.  Id. at ¶¶ 22-24.

24.      The Megaler Action alleges that CBC's directors were negligent in supervising and preventing Martin from making such misrepresentations and that they breached their duty to plaintiff as a depositor to disclose the bank's financial condition.  Id. at ¶¶ 53, 41.

25.      By letters dated October 17, October 21 and November 8, 2002, respectively, Plaintiffs, through their counsel, gave notice to Hartford of the Megaler Action.  Palermini Aff., Ex. 1.

### The FDIC Proceeding

26.      On November 22, 2002, the FDIC filed a Notice of Assessment of Civil Money Penalties (the "FDIC Proceeding"), captioned In the Matter of: Randolph W. Lenz, J. Donald Weand, Jr., Marcial Cuevas, Jack W. Dunlap, Steven B. Levine, Brian A. Marks, and

Marshall C. Asche, individually and as former institution-affiliated parties of Connecticut

Bank of Commerce, Stamford, Connecticut, Case Nos. FDIC-02-174e; FDIC-02-158e;

FDIC-02-160c&b; FDIC-02-161c&b; FDIC-02-175k; FDIC-02-176k; FDIC-02-177k; FDIC-

02-178k; FDIC-02-179k; FDIC-02-180k; FDIC-02-181k; FDIC-02-182k.   Palermini Aff.,

Ex. 2.

     27.    The FDIC Proceeding finds that CBC's directors wrongfully approved "a

number of large, commercial loans" totaling $20,00,000 on March 22, 2000, seven loans on

June 21, 2000, thirteen "additional related loans" between April 2000 and February 2001,

and eight extensions and two new loans on June 23, 2002.   Id. at ¶¶ 39, 74, 87, 105 and 107.

     28.    The FDIC Proceeding issues notice of the following:

1) Notice To Prohibit From Further Participation in the conduct of the affairs of any insured depository institution against Lenz and Weand.  This charge is based on allegations that Lenz and Weand: violated laws, rules, regulations, cease and desist orders and conditions imposed by Regulators; and engaged in unsafe or unsound practices and breaches of fiduciary duty. The Notice also alleges that "by reason of the violations, unsafe or unsound practices and breaches of fiduciary duty": (a) CBC has suffered or will suffer loss or damage; (b) "Respondent Lenz and Respondent Weand have received financial gain or benefit;" and (c) such transactions "involve [their] personal dishonesty." Id. at ¶¶ 120-123.

2) Notice of Charges for Orders of Restitution against Lenz and Weand.  This Notice alleges that Lenz was unjustly enriched in the amount of at least $20 million in this matter and that he and Weand caused or were primarily responsible for causing CBC to issue loans having a present aggregate unpaid balance of at least $34 million. Id. at ¶¶ 124-128.

3) Notice of Assessment Of Civil Money Penalties, Findings of Fact and Conclusions of Law against all Respondents alleging that each of them knowingly violated law and/or regulations and "knowingly and/or recklessly caused a substantial pecuniary gain or other benefit by reason of such acts." Id. at ¶¶ 129-135.

4) Order To Pay Civil Money Penalties for the conduct described in the FDIC Filing.  The FDIC asserts that these penalties should be in the amounts of $2 million and $1 million respectively for Lenz and Weand and that the other Respondent Directors be assessed fines of either $500,000 (Cuevas, Dunlap and Levine) or $250,000 (Reed, Marks and Asche).   Id. at ¶¶ 136-138.

**The Connecticut Department of Banking Proceeding**

29.    On November 22, 2002, the State of Connecticut, Department of Banking

served notice upon director Brian Marks of Intent to Impose Civil Penalties upon him (the

"CDOB Proceeding"). The CDOB alleges that the penalties are based upon the approval by

CBC's Credit Committee of sixteen loans in March 2000.    Palermini Aff., Ex. 3, ¶ 10.

30.    By letter dated December 4, 2002, counsel for Brian Marks provided Hartford

with a copy of the CDOB Proceeding and the FDIC Proceeding. Palermini Aff., Ex. 4.

**The Shareholder Threat**

31.    By letter dated January 10, 2003, counsel for Plaintiff Levine provided

Hartford with a "threatened shareholder action." Palermini Aff., Ex. 5.

32.    Director Levine received a letter dated January 3, 2003 from stockholders of

CBC, "who were stockholders prior to January 1, 2002 and remain stockholders as of June

26 and June 27, 2002 and continue to own and hold stock certificates issued by CBC" (the

"Shareholder Letter"). Id. According to the Shareholder Letter:

> As a result of [Levine's] participation in unsafe and unsound
> practices in connection with Connecticut Bank of Commerce,
> and by reason of your [Levine] using your official position in a
> manner contrary to the interests of Connecticut Bank of
> Commerce, said shareholders lost all value in their shares by
> reason of the conduct of the Connecticut Bank Commissioner
> and the FDIC on or about June 26 and June 27, 2002.

Id.

33.    The Shareholder Letter indicates that Levine's conduct resulted in a loss of

$2.57 per share and that Levine is jointly and severally responsible for such loss. Id. It is not

clear from the letter who, besides Levine, may have responsibility for such loss. No demand

for reimbursement of the alleged loss is asserted in the Shareholder Letter. Id.

**The Insureds' Correspondence with Hartford**

34.     By letter dated June 26, 2002, CBC advised Hartford that CBC's directors and officers "may be subject to claims for wrongful acts."  The letter enclosed a copy of the FDIC Dismissal Order issued on June 25, 2002, but no other documents.  Palermini Aff., Ex. 6.  The letter states:

> I write to provide you with notice in connection with the above-referenced policy.
>
> It has come to the attention of the Connecticut Bank of Commerce (the "Insured") that its directors and officers, including but not limited to its Chairman Randolph W. Lenz and its President and CEO J. Donald Weand, Jr., may be subject to claims for wrongful acts.  The Insured learned about this matter on Tuesday, June 25, 2002, when it[s] directors and senior management met with representatives of the Federal Deposit Insurance Corporation ("FDIC") and the State of Connecticut Banking Department.  Attached to this letter is the Prompt Corrective Action Directive Ordering Dismissal issued by the FDIC on June 25, 2002, which describes the information that the Insured has obtained at this point in time.

Id.

35.     By letter dated July 1, 2002, CBC's insurance broker, Swett & Crawford, provided Hartford with a General Liability Notice of Occurrence/Claim form (the "Accord Form"), with a facsimile time indication of 8:21 a.m.  Palermini Aff., Ex. 7.

36.     The occurrence is described as follows:

> D&O – Insured bank shut down & seized by Dept of Banking. FDIC named as receiver.  See News Articles, Action Directive from FDIC.

Id.

37.     The news articles stated that the Commissioner of the CDOB had "shut down and seized" CBC and that the FDIC "was named as receiver."  The articles did not report that on June 26, 2002, the Commissioner filed an *ex parte* application with the Superior Court of Connecticut asking the court to name the FDIC as CBC's receiver.   Id.

38.     In a letter dated July 26, 2002, Hartford acknowledged receipt of Swett & Crawford's correspondence and of Schulman's letter of June 26, 2002 with the FDIC Dismissal Order. Hartford generally reserved all of its rights and defenses, including its rights as to whether the materials submitted to it constitute a Claim as defined by the Policy. Hartford also reserved its rights and defenses as to whether the materials provided notice with the particularity required by the Policy. Finally, Hartford reserved its right to exclude coverage for claims made by the FDIC, pursuant to the "regulatory exclusion" set forth in Endorsement No. 4 to the Policy.   Palermini Aff., Ex. 8.

39.     Hartford received no response to its letter from any Insured.   Palermini Aff., ¶ 11.

40.     Prior to 12:01 a.m. on July 1, 2002, Hartford did not receive any of the following materials (a) the June 25, 2002 letter from the FDIC to CBC's Board of Directors describing the April 1, 2002 Joint Examination; (b) the June 25, 2002 letter from the CDOB to CBC's Board describing the Joint Examination; (c) the CDOB's *ex parte* application to the Superior Court for an order appointing the FDIC as Receiver; (d) the November 30, 2001 Cease and Desist Order; or (e) the Superior Court Order appointing the FDIC as Receiver. Palermini Aff., ¶ 12.

Dated:  December 3, 2004

Respectfully submitted,

W. Joe Wilson (ct22292)
jwilson@tylercooper.com
William H. Champlin III (ct04202)
champlin@tylercooper.com
TYLER COOPER & ALCORN, LLP
185 Asylum Street
CityPlace/35th Floor
Hartford, CT  06103-3488
(860) 725-6200
Fax (860) 278-3802
*Attorneys for Defendant*
*Hartford Insurance Company of Illinois*

Of Counsel:    Alan J. Joaquin
               Alison M. Jarandeh
               DRINKER BIDDLE & REATH
               1500 K Street N.W.
               Suite 1100
               Washington, D.C. 20005
               (202) 842-8800
               Fax (202) 842-8465

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL ASCHE, STEVEN B. LEVINE, TIMOTHY S. REED, MARCIAL CUEVAS and JACK WILLIAM DUNLAP,<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD INSURANCE COMPANY OF ILLINOIS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 303CV0416 PCD<br>)<br>)   **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>) |

W. Joe Wilson, an attorney admitted to practice in the United States District Court for the District of Connecticut certifies, pursuant to 28 U.S.C. §1746, under penalty of perjury, that on December 7, 2004, I served the attached Local Rule 56(a)(1) Statement upon all counsel of record in this action by depositing true copies of the same, each enclosed in a pre-paid envelope, in a depository maintained by the United States Postal Service in the City and State of Connecticut, addressed to the following at the address provided by each for that purpose, to wit:

Charles A. Stewart, III
Stewart Occhipinti LLP
1350 Broadway, Ste. 2200
New York, NY 10018

Richard P. Weinstein
Weinstein & Wisser P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107

Dated: December 7, 2004

W. Joe Wilson

13