"increases in asset concentration; weaknesses identified in the loan administration area; earnings performance continues to be erratic; remaining concerns with regard to staffing levels and the internal audit plan; and satisfactory reduction of adversely classified assets remain outstanding";

(e) On February 23, 2000, the Commissioner approved CBC's application to acquire a significant part of the assets and business of MTB Bank, a New York-chartered bank;

(f) On February 25, 2000, the FDIC approved CBC's application to acquire a significant part of the assets and business of MTB Bank, subject to certain conditions, including that Tier 1 capital be increased by not less than $20 million;

(g) On September 11, 2000, the CDOB and FDIC noted a number of deficiencies at CBC, including, "the administration of the Bank's internal audit program was not adequate; a detailed internal audit scope and testing procedures ... had not been completed; the accuracy of assigned internal classifications was marginally adequate; internal ratings did not always reflect the severity of deficiencies noted in the credit exposure reports";

(h) On March 5, 2001, the CDOB and the FDIC conducted a joint examination which revealed that the "overall condition of the institution had deteriorated to an unsatisfactory level." The CDOB and the FDIC found, among other things, that there had been "insufficient board oversight." They also made the following additional findings: "lack of management adherence to board-approved policies, particularly in the

areas of loan underwriting and credit administration; non-compliance with governing laws and regulations; weak risk management practices; and the lack of timely response to previous examination recommendations." The CDOB and the FDIC further found that a number of loans to insiders and/or their related interests, totaling $45,671,000, had had severe weakness and were either adversely classified or listed for Special Mention.

(i) As a result of the March 5, 2001 joint examination, the CDOB and the FDIC cited CBC for several alleged violations of federal banking laws and regulations, and thereafter issued a Cease and Desist Order on November 30, 2001;

(j) On April 1, 2002, the CDOB and the FDIC conducted another joint examination of CBC and concluded that CBC was out of compliance with several provisions of the November 30, 2001 Cease and Desist Order. Among other things, the CDOB and the FDIC found that CBC's allowance for loan and lease losses was underfunded by $34,500,000 and that "[t]he Bank has insufficient earnings to fund the deficiency in the allowance for loan and lease losses necessitating a transfer of $34,500,000 from equity capital or from the capital accounts of the Bank. This transfer will result in a negative Tier 1 capital of ($7,461,000)"; and

(k) On Sunday, June 23, 2002, CBC's Board of Directors approved two loans totaling $11.5 million, which (according to the Commissioner) were exceptions to CBC's credit policy and constituted an "unsafe and unsound loan practice and results in a dissipation of the Bank's assets." As result of the transfer, the Commissioner concluded that CBC was insolvent, and that there was a "reasonable likelihood that an unsafe and

unsound financial exists which is likely to have an adverse effect upon depositors or creditors of [CBC]."

26. In the November 30, 2001 Cease and Desist Order referenced in the 6/25/02 FDIC Dismissal Documents and relied upon by the Commissioner in its papers seeking to appoint the FDIC as Receiver, CBC had agreed to cease, among other things: "operating with a board of directors ("Board") that fails to provide adequate supervision and direction to the operating management of the Insured Institution"; "operating with inadequate supervision of the lending function"; operating with an excessive volume of poor quality assets"; "engaging in hazardous lending practices …"; "operating with an inadequate allowance for loan and lease losses"; "operating with inadequate disclosure, due diligence, and oversight of insider-related transactions and potential conflicts of interest"; "operating with marginal capital in relation to the type and quality of the assets held by the Insured Institution"; and operating with inadequate Board and Board Credit Committee minutes."

27. Moreover, in the November 30, 2001 Cease and Desist Order, CBC's Board of Directors were ordered to take, among others, the following steps: (1) develop a written policy analyzing CBC's management and staffing requirements to ensure compliance with the November 30, 2001 Order; (2) prepare a written plan specifying the actions necessary to implement the changes in management and staffing to ensure compliance with the November 30, 2001 Order; (3) establish a committee of the Board with responsibility of ensuring compliance with the November 30, 2001 Order; (4)

review and amend CBC's current lending practices; (5) review the adequacy of CBC's valuation reserve for loan and lease losses prior to the submission of any Report of Condition or Report of Income; (6) correct all credit administration deficiencies noted in March 2001; (7) establish an effective internal loan review and grading system to periodically review CBC's loan portfolio and identify and categorize problem credits; (8) develop a written budget; (9) review the appropriateness and use of quorum guidelines and enforce compliance with quorum guidelines; (10) adopt and implement a comprehensive written audit program for internal and external audits; and (11) furnish written progress reports to the Regional Director of the FDIC and the Commissioner detailing the form and manner of any actions taken to ensure compliance with the November 30, 2001 Order. A copy of the November 30, 2001 Cease and Desist Order is attached hereto and incorporated herein as Exhibit "D."

  28. On June 26, 2002, the Connecticut Superior court issued an Order appointing the FDIC as Temporary Receiver for CBC on the basis that "[t]here is reasonable likelihood that an unsafe or unsound condition exists which is likely to have an adverse effect upon the depositors and creditors of [CBC]. A copy of the court's Order appointing the FDIC as Temporary Receiver is attached hereto as Exhibit "E." Following a hearing, the FDIC was appointed the permanent Receiver of CBC. Thereafter, the CDOB and the FDIC have continued their investigation into the reasons for the financial insolvency of CBC, including scrutinizing the actions of the Outside Directors, which has caused each of them to incur substantial legal fees and expenses.

## NOTICE TO HARTFORD OF THE CDOB AND FDIC ALLEGATIONS

29. By letter dated June 26, 2002, CBC notified Hartford in writing that CBC's officers and directors, including but not limited to CBC's Chairman Randolph Lenz and its President and CEO J. Donald Weand, Jr., "may be subject to claims for wrongful acts" arising from the allegations made by the CDOB and the FDIC. CBC informed Hartford that it had first learned that its officers and directors might be subject to liability for wrongful acts at the meeting with representatives of the CDOB and the FDIC on June 25, 2002. Also, CBC attached to the June 26, 2002 notice letter a copy of the 6/25/02 FDIC Dismissal Documents. A copy of CBC's June 26, 2002 letter to Hartford is attached hereto as Exhibit "F."

30. Upon information and belief, Hartford thereafter received copies of the pleadings filed by the Commissioner in connection with its application to appoint the FDIC as Receiver of CBC.

## THE FILING OF THE MEGALER ACTION

31. On or about October 3, 2002, Megaler, S.A., a foreign banking institution located in Uruguay, commenced the Megaler Action against, among others, the Outside Directors. With respect to its claims against the Outside Directors, Megaler reiterated the allegations contained in the 6/25/02 Dismissal Documents and in the papers filed by the Commissioner seeking the appointment of the FDIC as Receiver. Among other things,

Megaler alleged that the two loans that the Board had approved on June 23, 2002 caused CBC to be "rendered insolvent, precipitating the Order of the Connecticut Superior Court, Judicial District of Hartford, closing CBC Bank on the afternoon of June 26, 2002." A copy of the Megaler complaint is attached hereto and incorporated herein as Exhibit "G."

32. In its complaint, Megaler alleged that CBC's Board of Directors "were aware and had knowledge of CBC Bank's insolvency, at a minimum, from June 23, 2002, and had failed to take steps to properly supervise CBC's employees."

33. In October 2002, the Outside Directors provided Hartford written notice regarding the claims alleged in the Megaler Action.

## HARTFORD'S DISCLAIMER OF COVERAGE FOR THE MEGALER ACTION

34. On December 9, 2002, Hartford advised the Outside Directors that there was no coverage under the Policy for the claims asserted in the Megaler Action. A copy of Hartford's denial letter is attached hereto as Exhibit "H." According to Hartford, there was no coverage under the Policy for the claims asserted against the Outside Directors in the Megaler Action because "the particulars of the specific Wrongful Act upon which the Megaler Action is based ... appears to be outside the scope of coverage."

35. Hartford raised no other grounds for disclaiming coverage for the Megaler Action other than those stated in the December 9, 2002 denial letter.

## THE THREATENED CLASS ACTION LAWSUIT

36. On January 3, 2003, two or more of the Outside Directors received a letter from a law firm purportedly representing stockholders of CBC, who were stockholders prior to January 1, 2002 and remained stockholders as of June 26 and 27, 2002. This letter stated in part:

> As a result of your participation in unsafe and unsound practices in connection with [CBC], and by reason of your using your official position in a manner contrary to the interests of [CBC], said shareholders lost all value in their shares by reason of the conduct of [CBC] and the FDIC on or about June 26 and June 27, 2002. The average value of said shares as traded in the three month period prior to June 26 and June 27 was $2.57 per share, which represents the loss per share of our clients resultant from your conduct as above described and as determined by the Banking Department of the State of Connecticut.
>
> We assume that [CBC] maintained directors and [sic] liability insurance for the bank and its officers and directors, and that your conduct as above described is covered by said policies ...
>
> If we do not hear from you or the carrier within thirty (30) days from the date of this letter, we will have to take whatever actions are necessary to protect our client's rights and to recover for their losses. We believe that you, individually, are both jointly and severally responsible for our client's loss.

37. On January 10, 2003, the Outside Director's counsel notified Hartford that the Outside Directors had received notice of a claim or potential claim by or on behalf of certain unnamed stockholders of CBC and against CBC, its officers and directors. A copy of the Outside Directors' Counsel's notice letter is attached hereto as Exhibit "I."

15

P 0027

### HARTFORD'S DISCLAIMER OF COVERAGE FOR
### THE THREATENED SHAREHOLDER ACTION

38. On February 10, 2003, Hartford advised the Outside Directors that there was no coverage under the Policy for the claims asserted in the Threatened Shareholder Action. A copy of Hartford's denial letter is attached hereto as Exhibit "J." According to Hartford, there was no coverage under the Policy for the threatened claims asserted against the Outside Directors in the Threatened Shareholder Action because "it is clear that [such claim] was not commenced until after the Policy Period expired." Furthermore, Hartford claimed that the notices it received prior to the expiration of the Policy Period did not constitute sufficient notice to encompass the Threatened Shareholder Action.

39. Hartford raised no other grounds for disclaiming coverage for the Threatened Shareholder Action other than those stated in the February 10, 2003 denial letter.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract – Claim Expenses for the Megaler Action

40. Plaintiffs repeat and reallege each and every allegation in paragraphs "1" to "39" above as if set forth at length herein.

41. Plaintiffs and CBC, as Insureds under the Policy, have fully performed and complied with all of their contractual obligations to Hartford and the conditions of the Policy, including payment of all premiums due with respect thereto and timely notification of "Claims," "Wrongful Acts" and "Interrelated Wrongful Acts."

42. The foregoing establishes the existence of covered "Loss" as a result of a "Claim" first made during the "Policy Period" for a "Wrongful Act" (or "Interrelated Wrongful Acts") that took place during or prior to the Policy Period.

43. The Outside Directors have incurred, and continue to incur, Claims Expenses in connection with their defense of the Megaler Action.

44. Hartford has wrongly failed and refused to reimburse the Outside Directors for the Claims Expenses they have incurred in connection with their defense of the Megaler Action despite due demand therefor.

45. The Outside Directors have satisfied all conditions precedent to the commencement of this action. Moreover, the Outside Directors, or CBC on their behalf, have fully performed all of their obligations under the Policy.

46. None of the exclusions contained in the policy bar coverage for the Outside Directors' "Loss" for Claims arising from the Megaler Action.

47. By virtue of its breach of its contractual obligations, Hartford is liable to the Outside Directors for the Claims Expenses they have incurred in connection with the Megaler Action, together with interest allowed by law.

### SECOND CLAIM FOR RELIEF
(Declaratory Judgment – Claim Expenses for the FDIC Action

48. Plaintiffs repeat and reallege each and every allegation in paragraphs "1" to "47" above as if set forth at length herein.

P 0029

49. The Policy provides the Outside Directors with coverage for "Loss" (including Claims Expenses) that CBC's officers and directors become legally obligated to pay as a result of a "Claim" first made during the "Policy Period" for a "Wrongful Act" (or "Interrelated Wrongful Acts") that took place during or prior to the Policy Period.

50. As demonstrated by Hartford's interpretation of the Policy in regard to providing coverage for the Megaler Action, an actual and justifiable controversy exists between the Outside Directors and Hartford regarding the obligations of Hartford to pay Claims Expenses for the FDIC Action.

51. None of the exclusions contained in the policy bar coverage for the Outside Directors' "Loss" for Claims arising from the FDIC Action.

52. By reason of the foregoing, each of the Outside Directors seeks a judicial determination by this Court that he is entitled to recover Claims Expenses incurred in the defense of the FDIC Action once there has been a determination by the CDOB and the FDIC establishing no liability on the part of such Outside Director. Such a judicial determination is necessary and appropriate at this time under the circumstances herein alleged.

P 0030

## THIRD CLAIM FOR RELIEF
(Declaratory Judgment – Claims Expenses Arising from the FDIC's Takeover as Receiver of CBC, Including the Shareholder Action

53. Plaintiffs repeat and reallege each and every allegation in paragraphs "1" to "52" above as if set forth at length herein.

54. The Policy provides the Outside Directors with coverage for "Loss" (including Claims Expenses) that CBC's officers and directors become legally obligated to pay as a result of a "Claim" first made during the "Policy Period" for a "Wrongful Act" (or "Interrelated Wrongful Acts") that took place during or prior to the Policy Period.

55. Prior to the termination of the Policy, Hartford received notice of a Wrongful Act (and Interrelated Wrongful Acts) occurring during its Policy Period. Such Wrongful Act (and Interrelated Wrongful Acts) formed the basis of the CDOB and FDIC's Dismissal Order and the appointment of the FDIC as Receiver for CBC.

56. As demonstrated by Hartford's interpretation of the Policy in regard to providing coverage for the Threatened Shareholder Action, an actual and justifiable controversy exists between the Outside Directors and Hartford regarding the obligations of Hartford to pay Claims Expenses for Claims, such as the Threatened Shareholder Action, having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes arising from the CDOB's and the FDIC's dismissal of CBC's Chairman,

19

President and CEO and the appointment of the FDIC as Receiver of CBC, including the reasons therefor.

57. None of the exclusions contained in the policy bar coverage for the Outside Directors' "Loss" for Claims arising from the Threatened Shareholder Action.

58. By reason of the foregoing, each of the Outside Directors seeks a judicial determination by this Court that he is entitled to recover Claims Expenses that he may incur in the defense of actions, such as the Threatened Shareholder Action, having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes arising from the CDOB's and the FDIC's dismissal of CBC's Chairman, President and CEO and the appointment of the FDIC as Receiver of CBC, including the reasons therefor. Such a judicial determination is necessary and appropriate at this time under the circumstances herein alleged.

### FOURTH CLAIM FOR RELIEF
(Declaratory Judgment -- Indemnity for the Megaler Action

59. Plaintiffs repeat and reallege each and every allegation in paragraphs "1" to "58" above as if set forth at length herein.

60. An actual and justiciable controversy exists between the Outside Directors and Hartford regarding the obligations of Hartford to indemnify the Outside Directors for the Megaler Action.

61.  Hartford has failed to pay in full the legal liability of the Outside Directors with respect to the Claims asserted in the Megaler Action, or have disputed, or will dispute, its obligation to do so.

62.  By refusing to provide Claims Expenses to the Outside Directors which come within the terms, conditions and provisions of the Policy, Hartford is obligated to indemnify the Outside Directors for all sums which they may pay as damages in connection with the Megaler Action.

63.  By reason of the foregoing, each of the Outside Directors seeks a judicial determination by this Court that Hartford is obligated to indemnify him for all sums paid to the plaintiff in the Megaler Action by way of judgment or settlement. Such a judicial determination is necessary and appropriate at this time under the circumstances herein alleged.

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment – Indemnity for the Shareholder Action**

64.  Plaintiffs repeat and reallege each and every allegation in paragraphs "1" to "63" above as if set forth at length herein.

65.  An actual and justiciable controversy exists between the Outside Directors and Hartford regarding the obligations of Hartford to indemnify the Outside Directors for Claims, such as the Threatened Shareholder Action, having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes arising from the CDOB's and the

FDIC's dismissal of CBC's Chairman, President and CEO and the appointment of the FDIC as Receiver of CBC, including the reasons therefor.

66. Hartford has disputed, or will dispute, its obligation to indemnify the Outside Directors for Claims having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes arising from the CDOB's and the FDIC's dismissal of CBC's Chairman, President and CEO and the appointment of the FDIC as Receiver of CBC, including the reasons therefor.

67. By reason of the foregoing, each of the Outside Directors seeks a judicial determination by this Court that Hartford is obligated to indemnify him for all sums paid with respect to Claims, such as the Threatened Shareholder Action, having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes arising from the CDOB's and the FDIC's dismissal of CBC's Chairman, President and CEO and the appointment of the FDIC as Receiver of CBC, including the reasons therefor. Such a judicial determination is necessary and appropriate at this time under the circumstances herein alleged.

22

P 0034

WHEREFORE, the Outside Directors respectfully request judgment as follows:

(1) On the First Claim for Relief, for compensatory damages arising from Hartford's breach of contract regarding its obligation to pay Claims Expenses for the Megaler Action;

(2) On the Second Claim for Relief, for an adjudication, determination and declaration that Hartford is obligated to pay each of the Outside Directors Claims Expenses incurred in the defense of the FDIC Action once there has been a determination by the CDOB and the FDIC establishing no liability on the part of such Outside Director;

(3) On the Third Claim for Relief, for an adjudication, determination and declaration that Hartford is obligated to pay each of the Outside Directors Claims Expenses associated with Claims, such as the Threatened Shareholder Action, having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes arising from the CDOB's and the FDIC's dismissal of CBC's Chairman, President and CEO and the appointment of the FDIC as Receiver of CBC, including the reasons therefor;

(4) On the Fourth Claim for Relief, for an adjudication, determination and declaration that Hartford is obligated to pay each of the Outside Directors

for amount paid to the plaintiff in the Megaler Action by such Outside Director by way of judgment or settlement;

(5) On the Fifth Claim for Relief, for an adjudication, determination and declaration that Hartford is obligated to pay each of the Outside Directors for all sums paid by such Outside Director with respect to Claims, such as the Threatened Shareholder Action, having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes arising from the CDOB's and the FDIC's dismissal of CBC's Chairman, President and CEO and the appointment of the FDIC as Receiver of CBC, including the reasons therefor;

(6) For the Outside Directors' costs of suit;

(7) For pre and post-judgment interest;

(8) For attorneys' fees incurred by the Outside Directors in connection with this action;

(9) For consequential damages incurred by the Outside Directors as a result of Hartford's wrongful disclaimer of coverage; and

(10) For such other and further relief as may be deemed just and proper.

## DEMAND FOR JURY

The plaintiffs hereby demand trial by jury.

Dated: West Hartford, Connecticut
       March 10, 2003

                                                WEINSTEIN & WISSER, P.C.

                                                By: _____
                                                Richard P. Weinstein (CT 06215)
                                                29 South Main Street, Suite 207
                                                West Hartford, CT 06107
                                                (860) 561-2628

**OF COUNSEL:**

STEWART OCCHIPINTI & MAKOW, LLP
Charles A. Stewart, III
Frank S. Occhipinti
1350 Broadway, Suite 2200
New York, NY 10018
(212) 239-5500

Exhibit A

P 0038

Sent By: ;                          2033803711;          Oct-31-__ 12:40PM;        Page 3

JUN.-18' 02 (TUE) 10:18   CBC BANK
                                                TEL:212-858-3449                   P. 004

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

GU 207
(6-78)

# ENDORSEMENT

This endorsement, effective on   7/01/01                           at 12:01 A.M. standard time, forms a part of
Policy No. NDA0200230-01              of the    HARTFORD INSURANCE CO. OF IL.

Issued to   CBC

*Ramani Ayer*
Authorized Representative

|   | Form No. | Date | SCHEDULE |
|---|---|---|---|
|   | HG00S00200 | 6/00 | IN WITNESS PAGE |
| 1 | D000R30200 | 6/96 | GENERAL PROFESSIONAL E&O EXCLUSION |
| 2 | D000R33000 | 6/96 | FIDUCIARY EXTENSION |
| 3 | D000R33100 | 6/96 | IRA EXTENSION |
| 4 | D000R33300 | 6/96 | REGULATORY COVERAGE ENDORSEMENT (SUCCESSFUL DEFENSE) |
| 5 | D000R33600 | 6/96 | EMPLOYEE AS CO-DEFENDANTS |
| 6 | D000R34200 | 6/96 | SECURITIES OFFERING ENDORSEMENT |
| 7 | D000R49200 | 5/98 | EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT WITH ENTITY COVERAGE |

GU 207 (6-78)

P 0040

Sent By: ;                              2033803711;            Oct-31-02 12:40PM;          Page 4
JUN.-18' 02(TUE) 10:18   CBC BANK
                                                               TEL:212-858-3449            P.006

# THE HARTFORD

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of, and subject to, the payment of the premium, and in reliance upon the particulars, statements, attachments and exhibits contained in and submitted with the Proposal and which shall be the basis of this Policy and shall be deemed to be incorporated herein, and subject to all the terms and conditions of this Policy, the Insurer and the Insureds agree as follows:

I. **INSURING AGREEMENTS**

This Policy affords the following coverages:

(A) **DIRECTORS' AND OFFICERS' LIABILITY**

Except for Loss which the Insurer pays pursuant to Insuring Agreement (B) of this Policy, the Insurer will pay on behalf of the Directors and Officers Loss which the Directors and Officers shall become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period;

(B) **COMPANY REIMBURSEMENT**

The Insurer will pay on behalf of the Company Loss for which the Company has, to the extent permitted or required by law, indemnified the Directors and Officers, and which the Directors and Officers have become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period;

(C) **COMPANY SECURITIES CLAIM LIABILITY**

If Insuring Agreement (C) coverage is granted pursuant to Item F of the Declarations, the Insurer will pay on behalf of the Company Loss which the Company shall become legally obligated to pay as a result of a Securities Claim first made during the Policy Period or Discovery Period, if applicable, against the Company for a Wrongful Act which takes place during or prior to the Policy Period;

provided, however, as a condition precedent to any such coverage, the Insureds shall report such Claim (including such Securities Claim) to the Insurer as soon as practicable but in no event later than sixty (60) days after the termination of the Policy Period or Discovery Period, if applicable.

II. **EXTENSIONS**

(A) **DEATH, INCAPACITY OR BANKRUPTCY**

In the event of the death, incapacity or bankruptcy of a Director or Officer, any Claim made against the estate, legal representatives, heirs or the assigns of such Director or Officer for a Wrongful Act of such Director or Officer shall be deemed to be a Claim against such Director or Officer.

(B) **DISCOVERY PERIOD**

If the Insurer or the Parent Company fails or refuses to renew this Policy or if the Parent Company cancels this Policy, any Insured shall have the right, upon payment of the Discovery Period Premium set forth in Item G of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item G of the Declarations following the effective date of such cancellation or non-renewal but only with respect to any

DO 00 R292 00 0696
NDA0200230-01    7/01/01                                                          Page 1 of 10

P 0041