Sent By: ;                          2033803711;            Oct-31-02 12:41PM;        Page 5
JUN.-18' 02 (TUE) 10:19   CBC BANK                TEL: 212-858-3449            P. 007

Wrongful Act taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium shall be deemed to be fully earned as of such date. This extension shall not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

(C) **SPOUSAL EXTENSION**

If a Claim against a Director or Officer includes a claim against the lawful spouse of such Director or Officer solely by reason of (a) such spousal status, or (b) such spouse's ownership interest in property or assets that are sought as recovery for Wrongful Acts, any loss for which such spouse becomes legally obligated to pay on account of such Claim shall be deemed Loss which such Director or Officer of the spouse becomes legally obligated to pay as a result of such Claim.

All terms and conditions of this Policy, including the Retention, applicable to Loss sustained by such Director or Officer in the Claim shall also apply to such spousal loss.

The extension of coverage afforded by this Section II.(C) shall not apply to the extent the Claim alleges any wrongful act or omission by such spouse.

(D) **OUTSIDE POSITION LIABILITY EXTENSION**

Subject to all of its terms and conditions, this Policy covers any Director or Officer serving in an Outside Position, but such coverage shall be specifically excess of any indemnity or insurance available from or provided by the entity in which the Director or Officer serves in such Outside Position.

Payment by the Insurer or any member company of The Hartford Group of Insurance Companies under another policy as a result of a Claim against a Director or Officer in an Outside Position shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this Policy with respect to such Claim.

"Outside Position" means the position of director, officer, trustee, or other equivalent executive position held by a Director or Officer in:

(i) any Non-Profit Entity, provided Non-Profit Outside Position coverage is granted pursuant to Item I of the Declarations, or

(ii) any other entity, provided such coverage is specifically granted by endorsement to this Policy,

if service in such position is with the knowledge and consent or at the request of the Company.

"Non-Profit Entity" means any non-profit corporation, community chest, fund or foundation that (i) is not included in the definition of Company, and (ii) is exempt from federal income tax as an organization described in Section 501(c) (3) of the Internal Revenue Code of 1986, as amended.

III. **CLAIMS EXPENSES, SETTLEMENTS AND COOPERATION**

(A) No Claims Expenses shall be incurred or settlements made, contractual obligations assumed or liability admitted with respect to any Claim without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any Claims Expenses, settlement, assumed obligation or admission to which it has not consented.

(B) The Insurer shall have the right to associate itself in the defense and settlement of any Claim that appears reasonably likely to involve this Policy. The Insurer may make any investigation it deems appropriate. However, it shall be the duty of the Insureds, not the Insurer, to defend any Claim.

(C) Subject to Section VII. of this Policy, the Insurer shall advance on behalf of the Insureds Claims Expenses which Directors and Officers or, solely with respect to Insuring Agreement (C), the Company, have incurred in connection with Claims made against them, prior to disposition of such Claims, provided always that to the extent it is finally established that any such Claims Expenses are not covered under this Policy, the Insureds, as appropriate, agree to repay the Insurer such non-covered Claims Expenses.

(D) The Insurer may, with the written consent of the Insured, settle any Securities Claim for solely a monetary amount which the Insurer deems reasonable. If the Insured withholds consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Claims Expenses accrued as of the date such settlement was proposed in writing by the Insurer to the Insured.

(E) The Insureds shall, as a condition precedent to their rights under this Policy, give to the Insurer all information and cooperation as the Insurer may reasonably require and shall do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

IV. DEFINITIONS

(A) "Claim" means:

(1) a written demand for civil damages or other civil relief commenced by the Insureds' receipt of such demand,

(2) a civil proceeding commenced by the service of a complaint or similar pleading, or

(3) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against Directors or Officers or, with respect to Insuring Agreement (C), the Company, for a Wrongful Act, including any appeal therefrom.

(B) "Claims Expenses" means that portion of Loss consisting of reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses incurred in the defense or appeal of a Claim, but shall not include the wages, salaries, benefits or expenses of any Directors, Officers or employees of the Company.

(C) "Company" means any company named in Item A of the Declarations and any Subsidiary.

(D) "Director(s)" and/or "Officer(s)" means:

(1) one or more natural persons who were, now are or shall hereafter be duly elected or appointed directors or officers of the Company, or, with respect to a Subsidiary incorporated outside the United States, their functional equivalent; and

(2) with respect to a Securities Claim only, any other natural persons who were, now are or shall hereafter be employees of the Company.

(E) "Discovery Period" means the period set forth in Item G of the Declarations.

(F) "Executive Officer" means the president, chief executive officer, chief operating officer, chief financial officer, in-house general counsel, managing director, any executive vice president and any equivalent executive officer of the Company.

(G) "Financial Insolvency" means the status of the Company as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the Company, or the Company becoming a debtor in possession.

(H) "Insured(s)" means one or more Directors or Officers and, solely with respect to Insuring Agreements (B) and (C), the Company.

(I) "Interrelated Wrongful Acts" means Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

(J) "Loss" means sums which the Directors and Officers or, with respect to Insuring Agreement (C), the Company, are legally liable to pay solely as a result of any Claim insured by this Policy, including Claims Expenses, compensatory damages, settlement amounts and legal fees and costs awarded pursuant to judgments, but excluding fines, penalties, taxes, any amount allocated to uncovered Loss pursuant to Section VII. of this Policy, or matters uninsurable pursuant to any applicable law, provided this definition does not exclude punitive or exemplary damages or the multiple portion of any multiplied damage award unless such damages are uninsurable pursuant to applicable law.

(K) "Parent Company" means the Company first named in Item A of the Declarations.

(L) "Policy Period" means the period set forth in Item B of the Declarations, subject to prior termination pursuant to Section IX.(B).

(M) "Securities Claim" means any Claim brought by a Securities holder of the Company against the Directors and Officers or, with respect to Insuring Agreement (C), the Company, if such Claim:

(1) alleges a violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any similar state statute or similar common law, or any rules or regulations promulgated thereunder; or

(2) arises from the purchase or sale of, or offer to purchase or sell, any Securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market.

(N) "Subsidiary" means any corporation in which more than fifty percent (50%) of the outstanding Securities or voting rights representing the present right to vote for election of Directors or equivalent position is owned, in any combination, by one or more Companies.

(O) "Wrongful Act" means:

(1) any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, committed or attempted by the Directors and Officers, in their capacity as such, or in an Outside Position, or, with respect to Insuring Agreement (C), by the Company, or

(2) any matter claimed against the Directors and Officers solely by reason of their serving in such capacity or in an Outside Position.

V. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers or, with respect to Insuring Agreement (C), the Company:

(A) for bodily injury, sickness, disease, emotional distress, mental anguish, outrage, humiliation, death, false arrest or imprisonment, abuse of process, malicious prosecution, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction, or for damage to or destruction of any tangible property including loss of use thereof;

(B) for any actual or alleged Wrongful Act by Directors and Officers of any Subsidiary in their capacities as such or, with respect to Insuring Agreement (C), by any Subsidiary if such Wrongful Act actually or allegedly occurred when such corporation was not a Subsidiary;

(C) for, based upon, arising from, or in any way related to any claim, Wrongful Act, or circumstance if notice thereof is given under any directors and officers liability policy, the term of which incepted prior to the Inception Date of this Policy;

(D) brought or maintained by or on behalf of the Company or any Director or Officer, in any capacity, except:

   (1) a Claim that is a derivative action brought and maintained on behalf of the Company by one or more security holders who are not Directors and Officers and who bring or maintain the Claim without the solicitation, assistance or participation of any Director and Officer;

   (2) a Claim by a former Director or Officer for the actual or alleged wrongful termination, discrimination or sexual harassment of such Director or Officer;

   (3) a Claim for contribution or indemnity, if the Claim directly results from another Claim that is otherwise covered under this Policy; or

   (4) a Claim by any employee(s) of the Company described in Section IV.(D)(2) of this Policy;

(E) for, based upon, arising from, or in any way related to:

   (1) the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

   (2) any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste,

   including without limitation any Securities Claim or any other Claim by or on behalf of the Company or its shareholders in their capacity as such.

   Pollutants include, but are not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including without limitation smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed;

(F) for, based upon, arising from, or in any way related to such Directors and Officers serving as a director, officer, trustee, regent, governor or employee of any entity other than the Company even if such service is at the direction or request of the Company, provided this exclusion does not apply with respect to a Claim for a Wrongful Act by a Director or Officer while serving in an Outside Position if such Claim is brought and maintained without the solicitation, assistance or participation of the entity in which the Director or Officer serves in the Outside Position or any director, officer, trustee, regent, governor or employee of such entity;

(G) for, based upon, arising from, or in any way related to an actual or alleged violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar federal, state, local or common law;

(H) for, based upon, arising from, or in any way related to any demand, suit, or other proceeding against any Insured which was pending on or existed prior to the applicable Prior Litigation Date specified in Item H of the Declarations, or the same or substantially the same facts, circumstances or allegations which are the subject of or the basis for such demand, suit, or other proceeding;

(I) for, based upon, arising from, or in any way related to their gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled;

(J) for, based upon, arising from, or in any way related to any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by such Insured if a judgment or other final adjudication adverse to the Insured establishes such an act, omission or willful violation, provided this exclusion shall apply to Insuring Agreement (C), if granted, only if such judgment or final adjudication establishes that a Director or Executive Officer of the Company committed such an act, omission or willful violation;

(K) for an accounting of profits made from the purchase or sale by such Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any federal, state, local or common law; or

(L) for, based upon, arising from, or in any way related to the actual or proposed payment by the Company of allegedly inadequate or unfair consideration in connection with its purchase of securities issued by the Company; provided, however, that this exclusion shall not apply to Insuring Agreements (A) or (B) or to Claims Expenses under Insuring Agreement (C).

The Wrongful Act of any Director or Officer shall not be imputed to any other Director or Officer for purposes of applying the exclusions set forth in this Section V.

## VI. LIMITS OF LIABILITY, RETENTION AND COINSURANCE

(A) The Insurer's aggregate Limit of Liability for all Loss otherwise covered under this Policy shall be the amount shown under Item C of the Declarations whether such Loss is covered under one or more Insuring Agreements. The Limit of Liability in the Discovery Period shall be a part of, and not in addition to, the Limit of Liability shown under Item C of the Declarations.

(B) Except as provided in paragraph (C) below, the Insurer's liability in respect of Loss arising from each Claim shall apply only to that part of Loss which is excess of the applicable Retention set forth in Item D of the Declarations.

(C) If in a Securities Claim all defendant Insureds obtain by reason of a motion to dismiss, motion for summary judgment or trial a final non-appealable judgment of no liability in their favor, there shall be no Retention or coinsurance percentage applicable to any Claims Expenses resulting from such Securities Claim.

(D) All Claims arising out of the same Wrongful Act or Interrelated Wrongful Acts of one or more of the Insureds shall be considered a single Claim. Such Claims shall be deemed to be first made on the date the first such Claim is made or deemed to be made pursuant to Section VIII.(A) of this Policy, regardless of whether such date is before or during the Policy Period.

(E) If Loss arising from a single Claim is covered in whole or in part under more than one Insuring Agreement, the applicable Retention shall be applied separately to that part of the Loss covered by each Insuring Agreement and the sum of the Retentions so applied shall constitute the Retention applicable to such Claim; provided, however, the largest Retention amount set forth in Item D of the Declarations shall be the maximum Retention applicable to such Claim.

(F) If the Company is permitted or required by law to ultimately indemnify the Directors and Officers, or to advance Claims Expenses on their behalf, and does not in fact do so other than for reasons of Financial Insolvency, then the Insurer's liability under Insuring Agreement (A) shall be subject to the Insuring Agreement (B) Retention amount set forth in Item D of the Declarations and the coinsurance percentage set forth in Item E of the Declarations (if such Loss results from a Securities Claim). For purposes of this paragraph, the shareholder and board of directors resolutions of the Company shall be deemed to provide indemnification for such Loss to the fullest extent permitted or required by law.

(G) The Limit of Liability available to pay judgments or settlements shall be reduced by Claims Expenses.

(H) With respect to all Loss covered under Insuring Agreements (B) or (C) which arises from a Securities Claim and is in excess of the applicable Retention, the Company shall bear uninsured the coinsurance percentage of all such Loss specified in Item E of the Declarations. The Insurer's liability shall apply only to the remaining percentage of all such Loss.

## VII. ALLOCATION

If both **Loss** covered under this Policy and loss not covered under this Policy are incurred, either because a **Claim** against an **Insured** includes both covered and uncovered matters or because a **Claim** not covered under Insuring Agreement (C) is made against both a **Director and Officer** and others, including the **Company**, the **Insureds** and the **Insurer** shall fairly and reasonably allocate such amount between covered **Loss** and uncovered loss.

If there can be an agreement on an allocation of **Claims Expenses**, the **Insurer** shall advance on a current basis **Claims Expenses** allocated to covered **Loss**. If there can be no agreement on an allocation of **Loss**:

(A) in any arbitration, suit or other proceeding, no presumption shall exist concerning what is a fair and reasonable allocation;

(B) the **Insurer** shall advance on a current basis **Claims Expenses** which the **Insurer** believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined; and

(C) the **Insurer**, solely if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Insurer** and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of **Claims Expenses** on account of a **Claim** shall be applied retroactively to all **Claims Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Claims Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

## VIII. NOTICE

(A) If during the **Policy Period** the **Insureds** become aware of a specific **Wrongful Act** that may reasonably be expected to give rise to a **Claim** against any **Director or Officer** or, with respect to Insuring Agreement (C), the **Company**, and if such **Wrongful Act** is reported to the **Insurer** during the **Policy Period** in writing with particulars as to the reasons for anticipating such a **Claim**, the nature and dates of the alleged **Wrongful Act**, the alleged damages sustained, the names of potential claimants, any **Director or Officer** involved in the alleged **Wrongful Act** and the manner in which the **Insureds** first became aware of the specific **Wrongful Act**, then any **Claim** subsequently arising from such duly reported **Wrongful Act** shall be deemed under this Policy to be a **Claim** made during the **Policy Period** in which the **Wrongful Act** is first duly reported to the **Insurer**.

(B) Notice of any **Claim** or specific **Wrongful Act** shall be given in writing to The Hartford, Hartford Plaza, Hartford, CT. 06115 Attention: D&O Claims. All other notices under this Policy shall be given to the same addressee but to the attention of Financial Products Underwriters.

(C) All notices under this Policy shall refer to the Policy Number, shall be in writing, shall be given by mail, prepaid express courier or facsimile properly addressed and shall be effective upon receipt.

## IX. GENERAL CONDITIONS

(A) TERRITORY

This Policy extends to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

(B) CANCELLATION OF POLICY

The **Insurer** may cancel this Policy for non-payment of premium by sending not less than ten (10) days notice to the **Parent Company** at its last known address. The **Insurer** may not otherwise cancel this Policy. The **Parent Company** may cancel this Policy by sending contemporaneous notice to the **Insurer**, provided the **Parent Company** may not cancel this Policy after the effective date of the acquisition of the **Parent Company** as

DO 00 R292 00 0686
NDA0200230.01      7/01/01                                                Page 7 of 10

P 0047

Sent By:
JUN.-18'02(TUE) 10:21   CBC BANK
2033803711;
TEL:212-858-3449
Oct-31-02 12:43PM;   Page 11/27
P.013

described in Section IX.(H)(2) of this Policy. In the event the Parent Company cancels this Policy, the Insurer shall retain the customary short rate premium. Payment of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

### (C) SUBROGATION

In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all rights of recovery thereof, and the Insureds shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Insureds. The obligations of the Insureds pursuant to this Section IX.(C) survive the termination of the Policy Period.

### (D) COMPANY AUTHORIZATION

By acceptance of this Policy, the Insureds agree that the Parent Company may act on behalf of all Insureds with respect to the giving and receiving of notice of Claim or cancellation, the payment of premiums and the receiving of any return premium, the negotiation, agreement to and acceptance of any endorsements to this Policy, and the exercising of the Discovery Period option.

### (E) OTHER INSURANCE

If any Loss arising from any Claim is insured by another valid policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to this Policy's Policy Number.

### (F) ALTERATION, ASSIGNMENT AND TITLES LIMITATION

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement signed by an authorized representative of the Insurer.

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

### (G) ACTION AGAINST INSURER

No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial, or by written agreement of the Insureds, the claimant and the Insurer.

No person or organization shall have the right under this Policy to join the Insurer as a party to any action against the Insureds to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or their legal representative. Bankruptcy or insolvency of an Insured or of an Insured's estate shall not relieve the Insurer of any of its obligations hereunder.

### (H) CHANGES IN EXPOSURE

(1) Acquisition or Creation of Corporation; Assets Acquisition; Assumption of Liabilities

If before or during the Policy Period the Company:

(a) acquires securities or voting rights in another corporation or creates another corporation, which as a result of such acquisition or creation becomes a Subsidiary, or

(b) acquires any corporation by merger into or consolidation with the Company,

such corporation and its Directors and Officers shall be Insureds under this Policy but only with respect to Wrongful Acts taking place after such acquisition or creation.

However, if during the Policy Period the fair value of (i) all cash, securities, assumed liabilities and other consideration paid by the Company for any such acquisition, or (ii) all assets acquired or liabilities assumed by the Company in any single transaction or series of related transactions, exceeds 20% of the total consolidated assets or liabilities, respectively, of all Companies as reflected in the Parent Company's last audited consolidated financial statements prior to such acquisition, the Parent Company as a condition precedent to coverage with respect to such new Insureds or to coverage for Wrongful Acts relating to such acquired assets or assumed liabilities and occurring subsequent to such acquisition or assumption, shall give written notice of such acquisition or assumption to the Insurer as soon as practicable but in no event more than ninety (90) days after the effective date of such acquisition or assumption, together with such information as the Insurer may require, and shall pay any additional premium so required by the Insurer. If the Parent Company fails to comply with such condition precedent, coverage otherwise afforded by this Section (H)(1) shall terminate as of ninety (90) days after the effective date of such acquisition or assumption.

(2) Acquisition of Parent Company

If during the Policy Period (i) the Parent Company merges into or consolidates with another entity such that the Parent Company is not the surviving entity, or (ii) another entity, or person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the Parent Company, then coverage under this Policy shall continue until the later of:

(a) termination of the Policy Period, or

(b) any subsequent date to which the Insurer may agree by endorsement,

but only with respect to Claims for Wrongful Acts taking place prior to such merger, consolidation or acquisition. Any coverage extension pursuant to (b), above, shall be conditioned upon any premium paid or to be paid under this Policy being deemed fully earned upon inception of such coverage extension. Any Claim made during such coverage extension shall be deemed to have been made during the Policy Period in which such merger, consolidation or acquisition occurred.

The Parent Company shall give written notice of such merger, consolidation or acquisition to the Insurer as soon as practicable, together with such information as the Insurer may reasonably require.

(3) Cessation of Subsidiaries

If before or during the Policy Period a corporation ceases to be a Subsidiary, coverage with respect to such Subsidiary and its Directors and Officers shall continue until termination of this Policy but only with respect to Claims for Wrongful Acts taking place prior to the date such corporation ceased to be a Subsidiary.

(I) REPRESENTATIONS AND SEVERABILITY

The Insureds represent that the particulars and statements contained in the Proposal are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.

The Insureds agree that in the event that the particulars and statements contained in the Proposal are untrue, this Policy shall not afford any coverage with respect to any of the following Insureds:

(1) any Director or Officer who knew as of the Inception Date of this Policy the facts that were not truthfully disclosed in the Proposal,

(2) the Company, under Insuring Agreement (B), to the extent it indemnifies any Director or Officer referenced in (1), above, and

(3) the Company, under Insuring Agreement (C), if a Director or any Executive Officer knew as of the Inception Date of this Policy the facts that were not truthfully disclosed in the Proposal,

whether or not such Director, Officer or Executive Officer knew of such untruthful disclosure in the Proposal.



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

HARTFORD INSURANCE COMPANY OF ILLINOIS
HOME OFFICE – NAPERVILLE, ILLINOIS
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

*C. M. O'Halloran*  
Secretary

*Ramani Ayer*  
President

HG 00 S002 00 0600

NDA0200230-01   7/01/01

P 0051

ENDORSEMENT NO:   1

This endorsement, effective 12:01 am,   7/01/01
of policy number   NDA0200230-01                                                  forms part

issued to:        CBC

by:               HARTFORD INSURANCE CO. OF IL.


# GENERAL PROFESSIONAL E&O EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that Section V., EXCLUSIONS, is amended by adding the following:

M. for, based upon, arising from, or in any way related to the rendering of or failure to render professional services in connection with the Company's business.


All other terms and conditions of this Policy remain unchanged.


CO 00 R302 00 0595

Sent By: ;                                2033803711;           Oct-31-.. 12:45PM;        Page 16/27
JUN. -18 02(TUE) 10:23    CBC BANK
                                                    TEL:212-858-3449                    P. 020

This endorsement, effective 12:01 am,  7/01/01.                      ENDORSEMENT NO:   2
of policy number   NDA0200230-01                                                    forms part
Issued to:    CBC
by:           HARTFORD INSURANCE CO. OF IL.

## FIDUCIARY EXTENSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that notwithstanding the provisions of Exclusion (G) in Section V., EXCLUSIONS, and without limiting or restricting in any way the coverage otherwise afforded under this Policy for the Directors and Officers under INSURING AGREEMENT A. and the Company under INSURING AGREEMENTS B. and C., the insurance afforded under this Policy is extended as follows:

1. The Insurer will pay on behalf of the Insureds Loss (excess of the Retention amount shown in Clause 5 of this Endorsement) which the Insureds shall become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against any Insureds for a Wrongful Act which takes place during or prior to the Policy Period.

2. Solely with respect to the extension of coverage afforded by this Endorsement, Section IV., DEFINITIONS, is amended as follows:

    H. "Insureds" means the Directors and Officers as defined under Section IV., DEFINITIONS, (D) of this Policy, the Company as defined under Section IV., DEFINITIONS, (C) of this Policy, the Covered Plan as defined under Clause 6 of this Endorsement, all regular salaried or hourly employees of the Company, and any other natural person acting as a past, present or future fiduciary of any Covered Plan, including the estates, heirs or legal representatives of any deceased or legally incompetent Insureds.

    O. "Wrongful Act" means:

        1. any actual or alleged breach of the responsibilities, obligations or duties imposed upon fiduciaries of a Covered Plan by the Employment Retirement Income Security Act of 1974, as amended, by the common or statutory law of the United States, or any state or other jurisdiction;

        2. any other matter claimed against any Insureds solely because of the Insureds' service as a fiduciary of any Covered Plan; or

        3. any negligent act, error or omission in the administration of any Covered Plan.

3. Solely with respect to the extension of coverage afforded by this Endorsement, the term "Directors" and "Officers" wherever it appears in this Policy is deleted and replaced with the term "Insureds".

DO 00 R330 00 0698

P 0053                                                                                  Page 1

Sent By: ;                              2033803711;              Oct-31-   12:45PM;           Page 17/27
JUN.-18' 02(TUE) 10:23   CBC BANK                        TEL:212-858-3449                    P.021

ENDORSEMENT NO:   2

4. Section V., EXCLUSIONS, is amended to include the following:

   N. for, based upon, arising from, or in any way related to the liability of others assumed by the Insureds under any contract or agreement, either oral or written, except to the extent that the Insureds would have been liable in the absence of the contract or agreement;

   O. for the actual or alleged failure by the Insured to comply with any law concerning Worker's Compensation, Unemployment Insurance, Social Security, Disability Benefits or any similar law;

   P. for benefits paid or payable to a beneficiary of a Covered Plan if such benefits may lawfully be paid from the funds of the Covered Plan.

5. Solely with respect to the extension of coverage afforded by this Endorsement, ITEM D of the DECLARATIONS of this Policy is amended to read as follows:

   RETENTION: $ __5,000_____ each Claim, including Claims Expenses.

6. The term "Covered Plan" shall mean only those Trusts or Employee Benefit Plan(s) (as that term is defined by the Employee Retirement Income Security Act of 1974, as amended) listed below:

   - CBC 401K PLAN

7. The extension of coverage afforded by this Endorsement shall in no way serve to increase the Insurer's maximum aggregate LIMIT OF LIABILITY as shown under ITEM C of the DECLARATIONS.

All other terms and conditions of this Policy remain unchanged.

DO 00 R330 00 0695

P 0054                    Page 2

JUN 20 2002 10:42 FR DBH LLC       203 977 7301 TO HARTFORD                       P.21/29

Sent By: ;                          2033803711;         Oct-31    12:45PM;        Page 18/27
JUN.-18' 02 (TUE) 10:23   CBC BANK                   TEL:212-858-3449                P.022

ENDORSEMENT NO: 3

This endorsement, effective 12:01 am,   7/01/01
of policy number  NDA0300230-01                                              forms part

issued to:    CBC

by:    HARTFORD INSURANCE CO. OF IL.


## IRA EXTENSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that notwithstanding the provisions of Exclusion (G) in Section V., EXCLUSIONS, and without limiting or restricting in any way the coverage otherwise afforded under this Policy for the Directors and Officers under INSURING AGREEMENT A. and the Company under INSURING AGREEMENTS B. and C., the insurance afforded under this Policy is extended as follows:

1. The Insurer will pay on behalf of the Insureds Loss (excess of the Retention amount shown in Clause 4 of this Endorsement) which the Insureds shall become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against any Insureds for a Wrongful Act which takes place during or prior to the Policy Period.

2. Solely with respect to the extension of coverage afforded by this Endorsement, Section IV., DEFINITIONS, is amended as follows:

    H. "Insureds" means any Directors and Officers as defined in Section IV., DEFINITIONS, (D), the Company as defined in Section IV., DEFINITIONS, (C) and all regular salaried or part-time employees of the Company.

    O. "Wrongful Act" means any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Insureds in their administration of Individual Retirement Accounts (IRA's) and/or HR-10 Plans (Keogh Plans).

3. Solely with respect to the extension of coverage afforded by this Endorsement, the term "Directors" and "Officers" wherever it appears in this Policy is deleted and replaced with the term "Insureds".

4. Solely with respect to the extension of coverage afforded by this Endorsement, ITEM D of the DECLARATIONS of this Policy is amended to read as follows:

    RETENTION: $ 1,000 _____ each Claim, including Claims Expenses.

5. The extension of coverage afforded by this Endorsement shall in no way serve to increase the Insurer's maximum aggregate LIMIT OF LIABILITY as shown under ITEM C of the DECLARATIONS.


All other terms and conditions of this Policy remain unchanged.


DO 00 R331 00 0896

P 0055

Sent By: ;                                    2033803711;              Oct-31   12:45PM;         Page 19/27

JUN. -18' 02(TUE) 10:24   CBC BANK                        TEL:212-858-3449                P. 024

ENDORSEMENT NO:   4

This endorsement, effective 12:01 am,   7/01/01
of policy number  NDA0200230-01                                                   forms part

issued to:       CBC

by:              HARTFORD INSURANCE CO. OF IL.


## REGULATORY COVERAGE ENDORSEMENT (SUCCESSFUL DEFENSE)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers or, with respect to Insuring Agreement C, the Company brought or maintained by or on behalf of the Resolution Trust Corporation, Office of Thrift Supervision, Federal Deposit Insurance Corporation, the Comptroller of the Currency, or similar federal or state supervisory or regulatory authority or any director, commissioner or similar administrator thereof (collectively referred to herein as "Agencies"), regardless of whether such Agencies are acting in the capacity of a depository insurance organization, regulatory agency, receiver, conservator or liquidator of any institution or otherwise, and further without regard to whether such Claim is brought in the name of such Agencies, by or on behalf of such Agencies in the name of the Company, another entity or individual, or otherwise.

In the event, however, of a judgment or other final adjudication establishing no liability on the part of any Insureds for any Claim(s) which would otherwise be excluded by the terms of this Endorsement, the Insurer hereby agrees that the Claims Expenses with regard to any such Claim(s) shall not be excluded from coverage by reason of this Endorsement, provided any coverage afforded for such Claims Expenses shall be subject to a $ 2,500,000 Limit of Liability (excess of the amount of the applicable RETENTION shown in ITEM D of the DECLARATIONS), provided always that such Limit of Liability shall be part of and not in addition to the LIMIT OF LIABILITY provided for in ITEM C of the DECLARATIONS.


All other terms and conditions of this Policy remain unchanged.


DO 00 R333 00 0696

**P 0056**

JUN 28 2002 10:42 FR DBH LLC          203 977 7301 TO HARTFORD                P.23/29

Sent By: ;                          2033803711;          Oct-31   12:46PM;         Page 20/27

JUN.-18'02(TUE) 10:24   CBC BANK                    TEL:212-858-3449                 P.026

ENDORSEMENT NO: 5

This endorsement, effective 12:01 am,  7/01/01
of policy number  NDA0200230-01                                        forms part

Issued to:   CBC

by:          HARTFORD INSURANCE CO. OF IL.


## EMPLOYEES AS CO-DEFENDANTS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that the term "Directors" and "Officers", as defined in Section IV.(D), shall also include any other natural person who is at the time of the alleged Wrongful Act a full or part-time employee of the Company; provided that coverage is not afforded under this Policy with respect to any such employee to the extent the Claim against the employee alleges the employee rendered or failed to render professional service to persons or entities other than the Company, and provided further that coverage is afforded under this Policy with respect to any Loss on account of a Claim against such employee only if at the time such Loss is incurred such Claim is also made against one or more other Insureds.

It is further agreed that Exclusion (D) in Section V. shall not apply to any Claim brought or maintained by or on behalf of any employee described in this Endorsement.


All other terms and conditions of this Policy remain unchanged.

DO 00 R335 00 0698

P 0057

JUN 20 2002 10:43 FR DBH LLC           203 977 7301 TO HARTFORD              P.24/29

Sent By: ;                             2033803711;           Oct-31    12:46PM;        Page 21/27

JUN.-18' 02(TUE) 10:24   CBC BANK                     TEL:212-858-3449                P. 028

ENDORSEMENT NO:    5

This endorsement, effective 12:01 am,   7/01/01
of policy number    NDA0200230-01                                              forms part

issued to:    CBC

by:           HARTFORD INSURANCE CO. OF IL.


## SECURITIES OFFERING ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that Section IX., GENERAL CONDITIONS, is amended by adding the following:

J.   SECURITIES OFFERING PROVISION

If during the Policy Period the Company announces or agrees to sell, offer to sell or solicit offers to purchase any type of security representing equity interest in or debt obligation of the Company on either a public or private placement basis, whether or not a prospectus has been or will be issued, written notice of such announcement or agreement shall be given to the Insurer c/o The Hartford, Hartford Plaza, Hartford, Connecticut 06115 ATTN: Financial Institutions, Financial Products Division, as soon as practicable, but in no event later than SIXTY _____ (60) days after the effective date of the announcement or agreement, together with such information as the Insurer may request. The Insurer, at its sole option, may make a premium adjustment or coverage revisions as it deems necessary. If the Parent Company fails to give such notice, provide such information, pay such additional premium or agree to such coverage revisions, any Claim for, based upon, arising from, or in any way related to such sale, offer to sell, solicitation of offers to purchase or any other subsequent purchase, sale or offer to purchase or sell such securities shall not be covered under this Policy.


All other terms and conditions of this Policy remain unchanged.


DO 00 R342 00 0896

P 0058

P.25/29          203 977 7301 TO HARTFORD          JUN 28 2002 18:43 FR DBH LLC

Sent By: ;    2033803711;    Oct-31    12:46PM;    Page 22/27
JUN. -18' 02(TUE) 10:25    CBC BANK    TEL:212-858-3449    P. 030

ENDORSEMENT NO:    7

This endorsement, effective 12:01 am,    7/01/01
of policy number    NDA0200230-01

forms part

issued to:    CBC

by:    HARTFORD INSURANCE CO. OF IL.

## EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT
## WITH ENTITY COVERAGE

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that this Policy shall be amended as follows:

I. The following additional Insuring Agreement shall be included in Section I., INSURING AGREEMENTS:

   (D) EMPLOYMENT PRACTICES LIABILITY

   The Insurer will pay on behalf of the Insured(s) Loss which the Insured(s) shall become legally obligated to pay as a result of an Employment Practices Claim first made during the Policy Period or Discovery Period, if applicable, against the Insured(s) for a Wrongful Act which takes place during or prior to the Policy Period.

II. Solely for purposes of the extension of coverage under this Endorsement, the following definitions shall apply:

   (1) "Employment Practices Claim" means a Claim by or on behalf of a past, present or prospective employee of the Company which, in whole or in part, is based upon or arises from any actual or alleged wrongful dismissal, discharge or termination (either actual or constructive) of employment, sexual or workplace harassment, unlawful employment discrimination, wrongful failure to hire or promote, wrongful discipline, failure to grant tenure, negligent employment evaluation, invasion of privacy, employment-related defamation, or employment-related wrongful infliction of emotional distress.

   (2) Section IV.(D), "Directors" and/or "Officers", subsection (2) shall be deleted and replaced with the following:

      (2) with respect to an Employment Practices Claim or a Securities Claim only, any other natural persons who were, now are or shall hereafter be employees of the Company.

   (3) Section IV.(J) shall be amended such that "Loss" shall not include: (i) damages awarded or settlement amounts in the form of or in lieu of compensation or severance benefits, paid or payable pursuant to a contract of employment, other than an employee handbook, or (ii) damages, costs or expenses incurred by an Insured in making physical changes, modifications, alterations or improvements as part of an accommodation of any disabled person pursuant to the Americans with Disabilities Act of 1990 or any similar, federal, state or local law.

III. Solely with respect to an Employment Practices Claim, Section V., EXCLUSIONS, shall be amended as follows:

   (1) Exclusion (A) shall be deleted and replaced with the following:

P 0059

DO 00 R482 00 0598    Page

Sent By: ;                          2033803711;            Oct-31-  12:46PM;         Page 23/27

JUN. -18' 02 (TUE) 10:25   CBC BANK                      TEL:212-858-3449              P. 031

**ENDORSEMENT NO:   7**

   (A)  for bodily injury, sickness, disease, death, false arrest or imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, or for damage to or destruction of any tangible property, including the loss of use thereof;

(2) Exclusion (D) shall be amended such that subparagraph (2) shall be deleted and replaced with the following:

   (2)  an **Employment Practices Claim**;

(3) Exclusion (G) shall be deleted and replaced with the following:

   (G)  based upon, arising from, or in any manner relating to: (i) any natural person Insured's actual or alleged entitlement to insurance benefits, including, but not limited to, benefits provided under workers' compensation, unemployment compensation, disability, or social security laws or regulations; or (ii) the violation of the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Fair Labor Standards Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Employee Retirement Income Security Act of 1974, or similar federal, state, local, or common laws or regulations;

   provided, however, this exclusion shall not apply to any Claim based upon or arising from: (i) any actual or alleged retaliatory discharge based upon a natural person Insured's exercise of right to any such insurance benefits or under such laws or regulations, or (ii) any violation of the Equal Pay Act;

(4) Exclusion (J) shall be deleted and replaced with the following:

   (J)  for, based upon, arising from, or in any way related to a Wrongful Act committed by an Insured with the intent to cause the harm alleged to have resulted from such Wrongful Act. However, the Insurer will advance Claims Expenses in connection with such Claim on behalf of the Insureds until such time as it is established in fact that the Insured intentionally caused such harm.

(5) The following additional exclusions shall be added to the Policy:

   Q.  based upon, arising from, or in any manner relating to any Wrongful Act for which an Insured has assumed another's liability pursuant to a contract or agreement. This exclusion shall not apply to liability which the Insured would have otherwise incurred notwithstanding the contract or agreement.

   R.  based upon, arising from, or in any manner relating to any request for injunctive relief, declaratory relief, disgorgement, job reinstatement, or any other equitable remedy, unless such relief is sought as part of an Employment Practices Claim in which the claimant also seeks damages for a Wrongful Act.

   S.  based upon, arising from, or in any way related to any actual or alleged Wrongful Act taking place prior to ___7/01/00___ if any Insured(s), as of such date, knew or could have reasonably foreseen that such Wrongful Act could lead to an Employment Practices Claim.

IV. Solely for purposes of an Employment Practices Claim, the following additional provisions shall apply:

(1) Item D of the Declarations shall be amended to add the following:

   INSURING AGREEMENT D $ __200,000__ in the aggregate each Employment Practices Claim, including Claims Expenses.

(2) Item H. of the Declarations is amended to read as follows:

   PRIOR LITIGATION DATE:

      INSURING AGREEMENT D: ___7/01/00___

**P 0060**

DO DO R.492 00 0598                                                                      Page 2

P.27/29   203 977 7301 TO HARTFORD   JUN 28 2002 10:43 FR DBH LLC

Sent By: ;                               2033803711;           Oct-31   12:47PM;        Page 24/27

JUN.-18'02(TUE) 10:26   CBC BANK                    TEL:212-858-3449                P. 032

ENDORSEMENT NO:   7

(3) Except for Sections V., EXCLUSIONS, (L) and VI., LIMITS OF LIABILITY, RETENTION AND COINSURANCE, (H), wherever this Policy refers to "INSURING AGREEMENT (C)" or "INSURING AGREEMENTS (B) and (C)", such references shall be deleted and replaced with "INSURING AGREEMENTS (C) and (D)" or "INSURING AGREEMENTS (B), (C) and (D)", as appropriate.

(4) The last paragraph of Section I., INSURING AGREEMENTS and Section III., CLAIMS EXPENSES, SETTLEMENTS AND COOPERATION, (D), shall be amended such that "Securities Claim" shall be deleted and replaced with "Securities Claim and/or Employment Practices Claim".

All other terms and conditions of this Policy remain unchanged.

P 0061

DO DD R492 00 0598                                                                   Page 3