Sent By: ;   2033803711;   Oct-31   12:47PM;   Page 25/27
** TOTAL PAGE.29 **
JUN. -18' 02(TUE) 10:26   CBC BANK   TEL:212-858-3449   P. 034

# ACORD. INSURANCE BINDER

DATE: 06/28/2001

THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.

**PRODUCER**
PHONE: (973)890-1818
FAX: (973)890-4961
FIRST UNION INSURANCE SERVICES AGENCY, INC.
PO BOX 927
WAYNE, NJ 07474-0927

**COMPANY**: Swett & Crawford - NY
**BINDER #**: B0106210M246

**EFFECTIVE DATE**: 07/01/2001   **TIME**: 12:01 AM [X] / PM
**EXPIRATION DATE**: 09/01/2001   **TIME**: 12:01 AM [X] / NOON

THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #:

**CODE**:
**SUB CODE**:
**AGENCY CUSTOMER ID**: 00012836

**INSURED**:
Connecticut Bank of Commerce
90 Broad Street, 5th Floor
New York, NY 10004

## COVERAGES

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY** — CAUSES OF LOSS: [ ] BASIC [ ] BROAD [ ] SPEC | | | | |
| **GENERAL LIABILITY** — COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [ ] OCCUR | RETRO DATE FOR CLAIMS MADE: | EACH OCCURRENCE / FIRE DAMAGE / MED EXP / PERSONAL & ADV INJURY / GENERAL AGGREGATE / PRODUCTS-COMP/OP AGG | | $ |
| **AUTOMOBILE LIABILITY** — ANY AUTO / ALL OWNED AUTOS / SCHEDULED AUTOS / HIRED AUTOS / NON-OWNED AUTOS | | COMBINED SINGLE LIMIT / BODILY INJURY (Per person) / BODILY INJURY (Per accident) / PROPERTY DAMAGE / MEDICAL PAYMENTS / PERSONAL INJURY PROT / UNINSURED MOTORIST | | $ |
| **AUTO PHYSICAL DAMAGE** — DEDUCTIBLE / COLLISION / OTHER THAN COL | [ ] ALL VEHICLES [ ] SCHEDULED VEHICLES | ACTUAL CASH VALUE / STATED AMOUNT / OTHER | | $ |
| **GARAGE LIABILITY** — ANY AUTO | | AUTO ONLY - EA ACCIDENT / OTHER THAN AUTO ONLY: EACH ACCIDENT / AGGREGATE | | $ |
| **EXCESS LIABILITY** — UMBRELLA FORM / OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE: | EACH OCCURRENCE / AGGREGATE / SELF-INSURED RETENTION | | $ |
| **WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY** | | WC STATUTORY LIMITS / E.L. EACH ACCIDENT / E.L. DISEASE-EA EMPLOYEE / E.L. DISEASE-POLICY LIMIT | | $ |
| **SPECIAL CONDITIONS/OTHER COVERAGES**: DIRECTORS & OFFICERS LIABILITY; CLAIMS MADE; $5,000,000. EACH CLAIM; SIR $0/$0/$200,000./$200,000. PREMIUM: $66,000. + $2640.tax | | FEES / TAXES / ESTIMATED TOTAL PREMIUM | | $ |

**NAME & ADDRESS**

[ ] MORTGAGEE  [ ] ADDITIONAL INSURED
[ ] LOSS PAYEE
LOAN #

AUTHORIZED REPRESENTATIVE: Richard E. Allocca   /signature/

ACORD 75-S (1/98)   NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE   © ACORD CORPORATION 1993

P 0062

JUL-23 2002 10:43 FR DBH LLC   203 377 7301 TO HARTFORD   P.29/29

Exhibit B

P 0063

02/06/2003  19:24   20322                                                                                PAGE  04

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of )<br>)<br>CONNECTICUT BANK OF COMMERCE )<br>STAMFORD, CONNECTICUT )<br>)<br>(INSURED STATE NONMEMBER BANK) )<br>)<br>) | PROMPT CORRECTIVE<br>ACTION DIRECTIVE<br>ORDERING DISMISSAL<br><br>FDIC-02-101 PCAD |

Connecticut Bank of Commerce, Stamford, Connecticut ("Bank"), is a "critically undercapitalized" insured depository institution as that term is defined in section 38(b)(1) of the Federal Deposit Insurance Act ("Act"), 12 U.S.C. § 1831o(b)(1), and section 325.103 of the Federal Deposit Insurance Corporation ("FDIC") Rules and Regulations, 12 C.F.R. § 325.103. Capital levels reflected in the Bank's Reports of Condition and Income as of March 31, 2002, which represented the Bank as "adequately capitalized," when adjusted by preliminary results of a joint examination of the Bank conducted by the FDIC and the State of Connecticut as of April 1, 2002, result in a ratio of tangible equity capital to total assets that equals negative 1.94 percent, thus rendering the Bank "critically undercapitalized" for purposes of the prompt corrective action provisions of the Act.

1. The FDIC has determined that the continued employment of Randolph W. Lenz ("Respondent Lenz"), would not materially strengthen the Bank's ability to become adequately capitalized. This is based upon the finding that:

P 0064

FEB 06 2003 19:45                                                                 2032222045           PAGE  04

2

(a) Since 1992, Respondent Lenz has been Chairman of the Bank's Board, the majority shareholder of the Bank, and is currently a member of the Bank's Board Compensation and Credit Committees. He has been previously criticized by the FDIC in its 2001 Report of Examination ("2001 Exam Report") for causing or permitting the Bank to engage in lax, preferential and hazardous lending activities, and it is evident that the volume of loans with undue risk he has referred and continues to refer to the Bank has resulted in severe asset quality problems that have ultimately resulted in the Bank's insolvency.

(b) The 2001 Exam Report cited loan administration weaknesses, credit underwriting deficiencies and a lack of adherence to prudent credit policy guidelines and other weaknesses in controls and procedures necessary to guard against an elevated level of loan risk. These weaknesses resulted in the Bank stipulating to the issuance by the FDIC of a Cease-and-Desist Order dated November 30, 2001, to correct such practices including addressing credit administration weaknesses, revising the Bank's Credit Policy, reducing concentrations of credit, and reducing the volume of adversely classified and criticized loans.

(c) Management of the Bank under the control of Chairman Lenz is poor. Weak risk management practices in many areas of Bank supervision are evident. Despite being warned of loan administration weaknesses, Respondent Lenz has continued to cause or permit the Bank to approve or allow renewal of loans despite the fact that prudent underwriting, effective administration, or adequate oversight appears absent. The findings of the 2002 examination of the Bank indicate that the Bank is in noncompliance with numerous provisions of the November 30, 2001 Cease and Desist Order. The amount of adversely classified loans as of the 2002 examination is $97,584,000.

P 0065

3

(d) An example of such hazardous lending is a credit relationship to finance gaming operations in Latin American countries which was referred to the Bank by Mr. Lenz. This relationship originated on November 8, 2000 as a line-of-credit in the amount of $250,000, but was amended and restated eleven times. Another line-of-credit was added on December 1, 2001, for $1,125,000 for a sale-leaseback arrangement where the Bank purchased gaming equipment (slot machines) located in Panama. Since origination this credit relationship has grown to $3,795,000. Origination and administration of the loan has been accomplished in a manner contrary to the Bank's Credit Policy. Among other things, repayment of these loans is solely dependent on the successful operation of gambling facilities in Latin America, which have yet to show a profit; the working capital line has been continually renewed with additional advances to fund accrued interest, expenses, and cover operating losses; at each renewal/extension and advance of funds Bank management has capitalized the accrued interest; collateral coverage is weak and since the activities are outside the jurisdiction of the US, collecting or liquidating this loan would be difficult.

(e) The FDIC has discovered evidence that during the period beginning the first quarter of 2000, Respondent Lenz engaged in a apparently fraudulent scheme of unlawful and unsound lending whereby he caused or permitted the Bank to purchase another financial institution, MTB Bank, New York, New York ("MTB"), with $20 million of the Bank's own existing funds instead of through the infusion of $20 million in new Tier I capital, including not less than $10 million in common stock, as was required by the FDIC as a condition to the acquisition. Respondent Lenz represented to the FDIC that he would contribute of $20 million of his own outside funds to purchase common and noncumulative perpetual preferred stock. This scheme was accomplished through more than $20 million in loans that Respondent caused or permitted

4

the Bank to make to nominee borrowers and others, including related interests of Respondent Lenz. That same money was later transferred to Respondent Lenz or his related interests, who transferred it to the Bank in the form of capital purportedly to satisfy the condition to purchase MTB. The result was that the Bank's capital was inflated by $20 million more than it actually was. Respondent Lenz subsequently concealed the scheme from FDIC examiners.

(f) While he has provided capital contributions in the past, the apparent fraudulent activities described above that resulted in at least $20,000,000 of such contributions being obtained through loans by the Bank itself, rather than independently from Respondent Lenz, draws into serious question his ability to provide future capital contributions in a quantity sufficient to assure the future viability of the Bank.

2. The FDIC has also determined that the continued employment of J. Donald Weand, Jr. ("Respondent Weand") would not materially strengthen the Bank's ability to become adequately capitalized. This is based upon the finding that:

(a) Respondent Weand has been President and Chief Executive Officer of the Bank since May 1999. He also served at various times as Senior Vice President, Chief Lending Officer and Chief Operating Officer at the Bank since 1996, and currently serves as a member of the Bank's Management, Risk Management, and Asset and Liability Committees. Respondent Weand has demonstrated no ability to restore a troubled institution to a safe and sound condition and the financial condition of the Bank has deteriorated under Mr. Weand's management, falling from a "3" rated composite bank to a currently insolvent "5" rated institution.

(b) Respondent Weand was responsible for and was the originating officer for many of the loans that were involved in the scheme described in paragraph 1(e) above, the proceeds of which were used to purchase MTB. He has caused or permitted the Bank to engage in lax

P 0067

5

underwriting and preferential and hazardous lending activities described in paragraph 1(b) through (d), above. As President and Chief Executive Officer, Mr. Weand has also been responsible for allowing poor underwriting practices to continue.

(c) Respondent Weand's direction of the Bank has also strongly contributed to weak risk management practices in many areas of Bank supervision which will result in noncompliance with numerous provisions of the November 30, 2001 Cease and Desist Order, as determined in the FDIC/State 2002 Joint examination.

Furthermore, the FDIC has reason to believe that at present, Respondents Lenz and Weand continue to cause the Bank to originate risky loans and that, unless Respondents are dismissed, such transactions could be similarly repeated, and could further weaken the condition of the Bank, and/or otherwise prejudice the interests of the depositors. The FDIC also has reason to believe that based upon Respondents' participation in apparent fraudulent and hazardous lending described above, and their previous concealment to examiners, there is a strong potential asset dissipation and the possibility of document destruction.

Therefore, the FDIC finds it necessary, in order to carry out the purposes of section 38 of the Act, to issue this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL without providing notice as set forth in section 308.201(a)(1) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.201(a)(1), and hereby issues the PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL pursuant to section 38 of the Act, 12 U.S.C. §1831o, and section 308.201(a)(2) of the FDIC's Rules of Practice and Procedure.

PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL

IT IS HEREBY DIRECTED that the Bank shall dismiss from office Randolph W. Lenz,

P 0068

6

Chairman of the Board and J. Donald Weand, Jr., President and Chief Executive Officer of the Bank. IT IS FURTHER DIRECTED that this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall become effective and enforceable immediately upon its receipt by the Bank.

Each provision of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall be binding upon the Bank, its directors, officers, employees, agents, successors, assigns, and other institution-affiliated parties of the Bank.

The Bank may file a written appeal of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL within fourteen (14) calendar days from the date of issuance of this directive as provided in section 308.201(a)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.201(a)(2

Within ten (10) calendar days from receipt of a copy of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL as required by section 38(n) of the Act, 12 U.S.C. § 1831o(n), and 308.203(a) of the FDIC's Rules of Practice and Procedures, 12 C.F.R. § 308.203(a), Respondents Lenz and Weand may each file a written request for reinstatement pursuant to section 308.203(b) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.203(b). Within such written response each Respondent may request an informal hearing before the FDIC under section 308.203(b)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.203(b)(2). If either Respondent desires to present oral testimony or witnesses at

P 0069

7

the hearing, he shall include a request to do so with the request for an informal hearing, and such request shall specify the names of the witnesses and the general nature of their expected testimony.

The appeal and any request for reinstatement shall be filed with Patrick J. Rohan, Regional Director, or his successor, Federal Deposit Insurance Corporation, 15 Braintree Hill Office Park, Suite 100 Braintree, Massachusetts 02184. Copies of all papers filed in this proceeding shall be served upon the Office of the Executive Secretary, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington, D.C. 20429, Michael J. Zamorski, Director, Division of Supervision, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington, D. C. 20429, A.T. Dill, III, Senior Counsel, Legal Division, Compliance and Enforcement Section, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington, D. C. 20429, and upon David Schecker, Regional Counsel (Supervision), Federal Deposit Insurance Corporation, 15 Braintree Hill Office Park, Suite 100 Braintree, Massachusetts 02184.

Each provision of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall remain effective and enforceable except to the extent that, and until such time as, any provision shall be modified, terminated, suspended, or set aside by the FDIC.

Pursuant to delegated authority.

Dated at Washington, D.C., this 25th day of June, 2002.

_____
Michael J. Zamorski, Director
Division of Supervision
Federal Deposit Insurance Corporation

P 0070

**FDIC**
Federal Deposit Insurance Corporation
15 Braintree Hill Office Park, Suite 100, Braintree, MA 02184

Division of Supervision

June 25, 2002

Board of Directors
Connecticut Bank of Commerce
612 Bedford Street
Stamford, Connecticut 06901

  RE: Prompt Corrective Action ("PCA")
     Notification of Capital Category

Board Members:

  This letter is to notify you of Connecticut Bank of Commerce's (CBC) capital category for purposes of the prompt corrective action provisions of section 38 of the Federal Deposit Insurance Act, 12 U.S.C. § 1831o and the FDIC's implementing regulations at 12 C.F.R. § 325 subpart B.

  Based upon the findings of the April 1, 2002 joint examination conducted by the FDIC and the State of Connecticut, we calculate your key capital ratios as follows:

| | |
|---|---|
| Total Risk-Based Capital Ratio | (1.21%) |
| Tier 1 Risk-Based Capital Ratio | (2.53%) |
| Tier 1 Leverage Ratio | (2.09%) |
| Tangible Equity Capital Ratio | (1.94%) |

Based on the above, it is has been determined that your bank falls within the **Critically Undercapitalized** category.

  Section 38 requires or permits the FDIC to take certain mandatory and discretionary actions when an institution becomes critically undercapitalized for PCA purposes. We recommend that you carefully review the mandatory restrictions in section 38 that apply to undercapitalized, significantly undercapitalized, and critically undercapitalized institutions and develop policies and procedures to ensure compliance.

P 0071

-2-                                                                June 25, 2002

As of June 25, 2002, CBC is subject to the mandatory requirements of section 38 including submission of a capital restoration plan and restrictions on asset growth, acquisitions, new activities, new branches, payment of dividends or making any other capital distribution, management fees, or senior executive compensation. (See 12 U.S.C. § 1831o (d), (e), (f), and (h).) The FDIC will be required to place CBC in receivership on September 23, 2002 unless it is determined that a different action would better carry out the purposes of section 38.

Further, at a minimum, immediately upon receiving notice or being deemed to have notice as provided in 12 C.F.R. § 325.102, CBC must obtain the FDIC's prior written approval before engaging in any of the activities set forth in section 38 (i), 12 U.S.C. § 1831o and 12 C.F.R. § 325.105(a). Those activities include:

- Entering into any material transaction other than in the usual course of business, including any investment, expansion, acquisition, sale of assets, or other similar action with respect to which the depository institution is required to provide notice to the appropriate Federal banking agency.

- Extending any credit for any highly leveraged transaction as defined in part 325 of the FDIC's regulations.

- Amending the institution's charter or bylaws, except to the extent necessary to carry out any other requirement of any law, regulation, or order.

- Making any material change in accounting methods.

- Engaging in any covered transaction (as defined in section 23A(b) of the Federal Reserve Act (12 U.S.C. § 371c(b)).

- Paying excessive compensation or bonuses.

- Paying interest on new or renewed liabilities at a rate that would increase the institution's weighted average cost of funds to a level significantly exceeding the prevailing rates of interest on insured deposits in the institution's normal market areas.

- Making any principal or interest payment on subordinated debt beginning 60 days after becoming critically undercapitalized.

Pursuant to the FDIC's regulations at 12 C.F.R. § 325.102(b) (3), this letter constitutes written notice of CBC's capital category for purposes of the prompt corrective action provisions

P 0072

- 3 -                                                                                                June 25, 2002

of section 38. Therefore, in accordance with the FDIC's regulations at 12 C.F.R. § 325.104(a), CBC is required to file a written capital restoration plan with this office by July 5, 2002. The filing of this capital restoration plan in no way limits the FDIC's responsibility to place CBC into receivership within 90 days.

In addition to the capital restoration plan, please provide to this office by July 5, 2002, a summary of the specific steps taken by management to comply with the mandatory restrictions required under section 38, including the above-noted restrictions as set forth in section 325.105 of the FDIC's regulations, as well as a written acknowledgement that this letter has been considered by the Board of Directors.

This written notice remains in effect until such time as it is modified or rescinded by the FDIC.

If you have any questions, please contact Assistant Regional Director Mary A. Fischer or Case Manager Helen D. Rokas at (781) 794-5500.

Sincerely,

*Patrick J. Rohan*

Patrick J. Rohan
Regional Director
Division of Supervision

cc:   Honorable John P. Burke
      Banking Commissioner
      Department of Banking
      260 Constitution Plaza
      Hartford, Connecticut 06103

P 0073

STATE OF CONNECTICUT

DEPARTMENT OF BANKING

260 CONSTITUTION PLAZA • HARTFORD, CT 06103-1800



John P. Burke
Commissioner

June 25, 2002

**HAND DELIVERED**

Board of Directors
Connecticut Bank of Commerce
612 Bedford Street
Stamford, CT 06901

Dear Director:

The results of the joint examination conducted by the Connecticut Department of Banking and the Federal Deposit Insurance Corporation as of April 1, 2002, indicate that the overall financial condition of Connecticut Bank of Commerce has deteriorated to the point where the bank is no longer viable. The allowance for loan and lease losses reserve, after absorbing losses noted at this examination, as well as providing for the remaining risk in the loan portfolio, is underfunded by $34,500,000. The underfunding will necessitate a transfer from equity capital in the amount of $34,500,000, and will result in a negative position of ($7,461,000).

In view of the negative capital position, Connecticut Bank of Commerce is critically undercapitalized and it is necessary for the Board of Directors to arrange a capital infusion of at least $35,000,000 into the bank immediately. The capital infusion will bring Connecticut Bank of Commerce into compliance with the capital requirements of the existing Cease and Desist Order that went into effect against the bank on December 10, 2001. I am ordering the Board of Directors to take all necessary steps to recapitalize the bank by July 8, 2002.

Please notify me on or before July 8, 2002 as to whether your capital raising efforts have been successful. If you wish to discuss this matter further, please contact me at (860) 240-8100.

Very truly yours,

John P. Burke
Commissioner

/jmc

TEL: (860) 240-8299
FAX: (860) 240-8178
*An Equal Opportunity Employer*
website: http://www.state.ct.us/doh/

P 0074



**Federal Deposit Insurance Corporation**
550 17th St. NW Washington DC, 20429                      Division of Supervision

June 25, 2002

HAND DELIVERED

Board of Directors
Connecticut Bank of Commerce
612 Bedford Street
Stamford, Connecticut 06901

Subject:  Prompt Corrective Action Directive Ordering Dismissal of
          Mr. Randolph W. Lenz and Mr. J. Donald Weand, Jr.
          Connecticut Bank of Commerce, Stamford, Connecticut

Dear Board Members:

Pursuant to Section 38 of the Federal Deposit Insurance Act, the Federal Deposit Insurance Corporation ("FDIC") has today issued a Prompt Corrective Action Directive Ordering Dismissal ("Order") to Connecticut Bank of Commerce ("Bank"). The Order requires the Board to dismiss Randolph W. Lenz and J. Donald Weand, Jr. from their current positions at the Bank. The Bank may file a written appeal within fourteen (14) calendar days from receipt of the Order.

Messrs. Lenz and Weand ("Respondents") may file a written request for reinstatement and informal hearing before the FDIC; this must be received within ten (10) calendar days from receipt of the Order. If the Respondents desire to present oral testimony or witnesses at the hearing, the Respondents shall include a request to do so with the request for an informal hearing. The request to present oral testimony shall specify the names of the witnesses and the general nature of their expected testimony. Failure to request a hearing shall constitute a waiver of any right to a hearing and failure to request the opportunity to present oral testimony or witnesses shall constitute a waiver of any right or opportunity to present oral testimony or witnesses.

P 0075

Any appeal of the Order or requests for reinstatement shall be filed with Patrick J. Rohan, Regional Director, Federal Deposit Insurance Corporation, Boston Regional Office, 15 Braintree Hill Office Park, Suite 100, Braintree, Massachusetts 02184 with copies to Pamela Shea, Associate General Counsel, Legal Division, Compliance and Enforcement Section, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington D.C. 20429, Michael J. Zamorski, Director, Division of Supervision, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington D.C. 20429, and David A. Schecker, Regional Counsel, Federal Deposit Insurance Corporation, Boston Regional Office, 15 Braintree Hill Office Park, Suite 100, Braintree, Massachusetts 02184.

Any questions regarding this matter should be directed to our Boston Regional Office.

Sincerely,

Michael J. Zamorski
Director

Enclosure

cc: Honorable John P. Burke
Banking Commissioner
Department of Banking
260 Constitution Plaza
Hartford, Connecticut 06103

Exhibit C

RECYCLED

P 0077

# SUMMONS - CIVIL
(Except Family Actions)
JD-CV-1 Rev. 1-2000
C.G.S. § 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs 3-1 thru 3-21, 8-1

## STATE OF CONNECTICUT
## SUPERIOR COURT
www.jud.state.ct.us

**INSTRUCTIONS**
1. Type or print legibly; sign original summons and conform all copies of the summons.
2. Prepare or photocopy conformed summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. The party recognized to pay costs must appear personally before the authority taking the recognizance.
6. Do not use this form for actions in which an attachment, garnishment or replevy is being sought. See Practice Book Section 8-1 for other exceptions.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

"X" ONE OF THE FOLLOWING:
Amount, legal interest or property in demand, exclusive of interest and costs is:
- [ ] less than $2,500
- [ ] $2,500 through $14,999.99
- [ ] $15,000 or more

("X" if applicable)
- [X] Claiming other relief in addition to or in lieu of money or damages.

| | | | | | RETURN DATE (Mo., day, yr.) (Must be a Tuesday) 7/23/02 |
|---|---|---|---|---|---|
| [XX] JUDICIAL DISTRICT [ ] HOUSING SESSION | [ ] G.A. NO. | AT (Town in which writ is returnable) (C.G.S. 51-346, 51-349) Hartford | | | CASE TYPE (See JD-CV-1c) Major **M** Minor **10** |
| ADDRESS OF COURT CLERK WHERE WRIT AND OTHER PAPERS SHALL BE FILED (No., street, town and zip code) (C.G.S. 51-346, 51-350) | | | | | TELEPHONE NO. (with area code) |

| PARTIES | NAME AND ADDRESS OF EACH PARTY (No., street, town and zip code) | NOTE: Individuals' Names: Last, First, Middle Initial | | | PTY NO. |
|---|---|---|---|---|---|
| FIRST NAMED PLAINTIFF | Burke, John P., Commissioner of Banking, 260 Constitution Plaza, Hartford CT | | | [ ] Form JD-CV-2 attached | 01 |
| Additional Plaintiff | 06103 | | | | 02 |
| FIRST NAMED DEFENDANT | Connecticut Bank of Commerce, 612 Bedford Street, Stamford, CT 06901 | | | | 50 |
| Additional Defendant | | | | | 51 |
| Additional Defendant | | | | | 52 |
| Additional Defendant | | | | | 53 |

### NOTICE TO EACH DEFENDANT
1. YOU ARE BEING SUED.
2. This paper is a Summons in a lawsuit.
3. The Complaint attached to these papers states the claims that each Plaintiff is making against you in this lawsuit.
4. To respond to this Summons, or to be informed of further proceedings, you or your attorney must file a form called an "Appearance" with the Clerk of the above-named Court at the above Court address on or before the second day after the above Return Date.
5. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default.
6. The "Appearance" form may be obtained at the above Court address.
7. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately take the Summons and Complaint to your insurance representative.
8. If you have questions about the Summons and Complaint, you should consult an attorney promptly. The Clerk of Court is not permitted to give advice on legal questions.

| DATE 5/26/02 | SIGNED (Sign and "X" proper box) [signature] | [X] Comm. of Superior Court [ ] Assistant Clerk | TYPE IN NAME OF PERSON SIGNING AT LEFT William J. Prensky |
|---|---|---|---|

FOR THE PLAINTIFF(S) PLEASE ENTER THE APPEARANCE OF:
NAME AND ADDRESS OF ATTORNEY, LAW FIRM OR PLAINTIFF IF PRO SE (No., street, town and zip code)
Richard Blumenthal, Attorney General, 55 Elm Street PO Box 120 Hartford, CT 06141-0120

| TELEPHONE NUMBER 860 808-5270 | JURIS NO. (if atty. or law firm) 85294 |
|---|---|

NAME AND ADDRESS OF PERSON RECOGNIZED TO PROSECUTE IN THE AMOUNT OF $250 (No., street, town and zip code)
Not applicable to State of Connecticut

SIGNATURE OF PLAINTIFF IF PRO SE

| # PLFS. 1 | # DEFS. 1 | # CNTS. 1 | SIGNED (Official taking recognizance; "X" proper box) | [ ] Comm. of Superior Court [ ] Assistant Clerk | For Court Use Only FILE DATE |
|---|---|---|---|---|---|

IF THIS SUMMONS IS SIGNED BY A CLERK:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service thereof.

| I hereby certify I have read and understand the above: | SIGNED (Pro Se Plaintiff) | DATE SIGNED | DOCKET NO. 81 77 10 |
|---|---|---|---|

P 0078

Ret. July 23, 2002

| | |
|---|---|
| JOHN P. BURKE, COMMISSIONER OF BANKING | SUPERIOR COURT |
| v. | JUDICIAL DISTRICT OF HARTFORD |
| CONNECTICUT BANK OF COMMERCE | JUNE 26, 2002 |

### EX PARTE APPLICATION OF THE COMMISSIONER OF BANKING FOR APPOINTMENT OF THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF CONNECTICUT BANK OF COMMERCE

TO THE SUPERIOR COURT TO BE HELD IN HARTFORD, within and for the Judicial District of Hartford, comes JOHN P. BURKE, COMMISSIONER OF BANKING OF THE STATE OF CONNECTICUT, applying, pursuant to Sections 36a-220 and 36a-223 of the Connecticut General Statutes, for an order appointing the FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of CONNECTICUT BANK OF COMMERCE, and in support thereof the Applicant represents as follows:

1. The Applicant, John P. Burke, is the duly appointed Commissioner of Banking of the State of Connecticut and, as such, is the primary regulator of Connecticut Bank of Commerce.

2. Connecticut Bank of Commerce is a state-chartered bank and trust company existing and doing business under Chapter 664b of the Connecticut General Statutes, with its principal place of business at 612 Bedford Street, Stamford, Connecticut.

3. Connecticut Bank of Commerce operates branch offices at the following Connecticut locations: 620 West Main Street, Branford, Connecticut and 128 Amity Road, Woodbridge, Connecticut. It also operates two branch offices in New York City at 90 Broad Street and 75 Rockefeller Plaza.

4. Connecticut Bank of Commerce is insolvent and in such condition that it is unsafe and unsound for such institution to continue business in that its liabilities exceed its assets and it is in an unsafe or unsound condition pursuant to section 8(b) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(b). The affidavit of Howard Pitkin, Administrator of Depository Institutions for the Connecticut Department of Banking, attesting to the financial condition of Connecticut Bank of Commerce, is attached hereto as Exhibit A and incorporated herein.

5. Authority for this Application exists pursuant to §§ 36a-220 and 36a-223 of the Connecticut General Statutes, which provide that the Superior Court shall appoint the Commissioner of Banking, or at his request the Federal Deposit Insurance Corporation, to be receiver of a state bank and trust company without bond if it is insolvent or if it is unsafe for such institution to continue business.

6. The Superior Court may appoint the receiver on an ex parte basis upon a sufficient affidavit of the Commissioner or his authorized representative indicating reasonable likelihood that an unsafe or unsound condition exists which is likely to have an adverse effect upon depositors or creditors.

7. The Federal Deposit Insurance Corporation is authorized to accept appointment as Receiver in this case by 12 U.S.C. § 1821.

WHEREFORE, the Applicant, Commissioner of Banking of the State of Connecticut, prays that this Court appoint, on an ex parte basis, the Federal Deposit Insurance Corporation as Receiver of the Connecticut Bank of Commerce without bond and to grant such other relief as the nature of this case and the interests of the depositors and creditors or the public may require.

Dated at Hartford, Connecticut, this 26th day of June, 2002.

PETITIONER
JOHN P. BURKE, COMMISSIONER
OF BANKING OF THE STATE OF
CONNECTICUT

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
William J. Prensky
Assistant Attorney General
Juris No. 85294
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5270

Please enter the appearance of:
RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
William J. Prensky
Assistant Attorney General

3

P 0081