[.8]9. Within 90 days of the effective date of this ORDER, the Board and management shall correct all the credit administration deficiencies noted on pages 42-43 of the March 5, 2001 Joint FDIC/State Report of Examination.

[.9]10. (a) Beginning with the effective date of this ORDER, the Insured Institution shall not extend or renew, directly or indirectly, any credit to, or for the benefit of, any borrower who has a loan or other extension of credit with the Insured Institution that has been charged off or classified, in whole or in part, "Substandard," "Doubtful," or "Loss" as of March 5, 2001 unless such extension has been approved by a majority of the Insured Institution's Board in advance and the Insured Institution's Board has detailed in the written minutes of the Board meeting how it has affirmatively determined all of the following: (i) that the extension of credit is in full compliance with the Insured Institution's loan policy; (ii) that the extension of credit is necessary to protect the Insured Institution's interest or is adequately secured; (iii) that based upon credit analysis the customer is deemed to be creditworthy; and (iv) that all necessary loan documentation is on file, including current financial and cash flow information and satisfactory appraisal, title, and lien documents. The minutes shall also include the following information about the extension of credit: (i) The amount adversely classified as of March 5, 2001; (ii) the current balance; (iii) the amount of credit requested; (iv) a description of the collateral and its value securing the credit; and (v) a full description of the documentation presented to the Board including the date of the borrower's most recent financial information and the borrower's current income or cash flow data.

(b) Beginning with the effective date of this ORDER, the Insured Institution shall not renew any loan without the full collection of interest due. The issuance of separate notes to the borrowing customer or a third party, the proceeds of which pay interest due, shall not satisfy the requirements of this paragraph {{1-31-02 p.C-5295}}

unless these separate notes receive prior Board approval in the same manner as outlined in Paragraph 10(a).

[.10]11. Beginning with the effective date of this ORDER, the Insured Institution shall initiate and implement a program to correct the technical exceptions as detailed on pages 126-128 of the March 5, 2001, Joint FDIC/State Report of Examination. For all credit extensions, the Insured Institution shall ensure that all appropriate documentation is obtained before credit is extended.

[.11]12. (a) Within 30 days of the effective date of this ORDER, the Board shall establish an effective internal loan review and grading system ("System") to periodically review the Insured Institution's loan portfolio and identify and categorize problem credits At a minimum the System shall provide for:

(i) The identification of the overall quality of the loan portfolio;

(ii) The identification and amount of each delinquent loan;

P 0102

    (iii) An identification or grouping of loans that warrant the special attention of management;

    (iv) For each loan identified, a statement of the amount and an indication of the degree of risk that the loan will not be fully repaid according to its terms and the reason(s) why the particular loan merits special attention;

    (v) An identification of credit and collateral documentation exceptions;

    (vi) The identification and status of each loan in apparent violation of law, rule or regulation;

    (vii) An identification of exceptions to the lending policy and loans not in conformance with the Insured Institution's lending policy;

    (viii) An identification of insider loan transactions;

    (ix) Guidelines for ensuring that all significant loans are reviewed by individuals who are not part of, or influenced by anyone associated with, the loan origination approval process;

    (x) Establishing the frequency of reviews;

    (xi) Determining the scope of review for significant loans and those with major credit risks; and

    (xii) A mechanism for reporting periodically, <u>no less than quarterly</u>, to the Board on the status of each loan identified and the action(s) taken by management.

    (b) Within 60 days of the effective date of this ORDER the Insured Institution shall ensure that the scope of the external loan review function is sufficient to assure independence and address the weaknesses noted in the March 5, 2001 Joint FDIC/State Report of Examination.

    (c) A copy of any internal or external loan review report submitted to the Board, as well as documentation of the action taken by the Insured Institution to collect or strengthen assets identified as problem credits, shall be kept with the minutes of the Board.

    [.12]13. (a) As of the effective date of this ORDER, the Insured Institution shall adequately monitor concentrations of credit risk. At least quarterly, concentration risks shall be reviewed, quantified, assessed, and eliminated or reduced to the extent possible. A current list of concentrations shall be reported to the Board quarterly. For the purpose of this Board reporting, concentrations shall be defined to include concentrations of 25% or more of Tier 1 Capital by individual borrower, small interrelated group of individuals or single repayment source or project.

(b) During the life of this ORDER, the Insured Institution shall maintain a system of identifying all interrelated borrowing relationships. All such relationships involving Insiders, or individuals or entities that have common financial interests with one or more Insiders, shall be reported to the Board quarterly. For purposes of this ORDER, the term "Insider" shall have the meaning ascribed to it in section 215.2 of Regulation O, 12 C.F.R. §215.2, and shall also include relationships established by blood or marriage.

(c) Within 30 days of the effective date of this ORDER, the Insured Institution shall establish prudent limits on extensions of credit to, and asset purchases through, any single obligor, or related parties, subject to the following limits:

(i) Direct obligations, combined with obligations extended under lease purchase facilities, shall be limited to 25% of Tier 1 Capital;

(ii) Accounts Receivable purchased from one seller (or the related interests of one
{{1-31-02 p.C-5296}}

seller) shall be limited to 100% of Tier 1 Capital; and

(iii) Combination relationships (relationships which involve direct obligations and/or lease purchases, and accounts receivable purchases) with one obligor shall be limited to 100% of Tier 1 Capital, provided that any direct obligation and/or lease purchase facility portion shall be limited to 25% of Tier 1 Capital.

(d) Notwithstanding the foregoing, the Insured Institution shall, with respect to its financial transactions, comply with any and all relevant State statutes regarding legal lending limitations. Further, the Insured Institution shall continue to limit its aggregate exposure in accounts receivable purchase facility financing to no greater than 30% of net loans, in accordance with the provisions of the current loan policy.

[.13]14. (a) Within 30 days of the effective date of this Order, the Insured Institution shall adopt and implement policies and procedures to ensure that all extensions of credit and/or renewals comply with the Insured Institution's loan policies including, but not limited to, current financial statements and current appraisals. Any exceptions to, or deviations from, the Insured Institution's established direct or indirect lending policies, shall be noted in writing along with the name of the loan's originating officer. Documentation of the Insured Institution's review shall be made a part of the Insured Institution's loan file. A written report shall be submitted monthly to the Board concerning the Insured Institution's adherence to the loan policies, noting any exceptions to or deviations from the loan policies established by the Insured Institution's Board, the loan officer responsible for the exception or deviation, and the date the exception or deviation received the Insured Institution Board's approval. The report shall be made a part of the minutes of the Board meeting.

P 0104

(b) Evidence of the review and establishment of procedures to ensure compliance with the loan policy shall be reduced to writing. The policy and its implementation shall be in a form and manner acceptable to the Regional Director and the Commissioner as determined at subsequent examinations and/or visitations.

[.14]15. (a) Within 60 days from the effective date of this ORDER, and annually thereafter, the Board of the Insured Institution shall develop a written budget that corresponds to the strategic plan referenced in paragraph 16 of this ORDER. The budget shall include, at a minimum:

(i) Realistic and comprehensive budget assumptions;

(ii) A description of the operating assumptions that form the basis for, and adequately support, major projected income and expense components; and

(iii) A budget review process to monitor the income and expenses of the Insured Institution to compare actual figures with budgetary projections on not less than a quarterly basis.

(b) Such written budget and any subsequent modifications thereto shall be submitted to the Regional Director and the Commissioner for review and comment. Within 30 days from the receipt of any comment, the Board shall approve the written budget and such approval shall be recorded in the minutes of the Board. Thereafter, the Insured Institution, its directors, officers, and employees shall follow the written budget and any subsequent modifications thereto.

[.15]16. Within 90 days from the effective date of this ORDER, the Insured Institution shall formulate and submit to the Regional Director and Commissioner for review and comment a realistic and comprehensive written strategic plan that corresponds to the written budget referenced in paragraph 15 of this ORDER. The plan required by this paragraph shall include, but not be limited to, an assessment of the Insured Institution's current financial condition and market area, and a description of the operating assumptions that form the basis for major projected income and expense components. Within 30 days following the receipt of any comment, and after consideration of such comment, the Board shall approve the strategic plan, and such approval shall be recorded in the minutes of the Board. Thereafter, the Insured Institution, its directors, officers, and employees shall follow the strategic plan and any subsequent modifications thereto.

[.16]17. Within 60 days from the effective date of this ORDER, the Insured Institution shall develop, adopt, and implement written policies and procedures designed to bring to the attention of each member of the Board potential conflicts of interest in approving loans or other transactions in which Insiders are involved. Such policies and procedures shall, at a minimum, require the disclosure of the nature of the Insider's relationship to the borrower, such as family relationship, common ownership of real or personal property, and business association(s) with the borrower or any entity in which the borrower has an ownership interest. Such policies and procedures shall also, at a minimum, require the

disclosure
{{1-31-02 p.C-5297}}

of the nature of the Insider's relationship to parties involved in participations or purchase and sale transactions of Insured Institution assets. In addition, the policies and procedures shall ensure that each member of the Board has been apprised of any potential conflict prior to making a decision, and shall ensure that underwriting standards, the level of due diligence, and credit risk monitoring applied to loans or other transactions in which Insiders and/or their business associates are, directly or indirectly, involved are at a minimum consistent with non-Insider credit relationships. The results of Board deliberations as to potential conflicts shall be reflected in the minutes of the Board meeting. If the loan or transaction in question is one that may be approved by a committee of the Board or of the Insured Institution rather than the Board, the policies and procedures shall require the disclosure of the foregoing information not only to the Board but also to the members of any applicable committees prior to the approval of the loan or transaction, and the minutes of each applicable committee shall reflect deliberations of all potential conflicts.

[.17]18. (a) (i) Within 90 days from the effective date of this ORDER, the Insured Institution shall have Tier 1 capital at or in excess of seven and one-half (7 1/2) percent of the Insured Institution's Part 325 total assets ("Tier 1 leverage capital ratio") and shall continue to maintain its Tier 1 leverage capital ratio at or in excess of such level as calculated herein while this ORDER is in effect. Toward this end, the Insured Institution shall develop a Capital Plan which shall be submitted to the Regional Director and the Commissioner for approval within 30 days from the effective date of this ORDER. The Capital Plan should address both internal and external sources of capital augmentation, including capital infusions, retention of earnings, restrictions of asset growth and asset sales.

(ii) For purpose of this ORDER, the terms "Tier 1 capital" and "Part 325 total assets" shall have the meanings ascribed to them in Part 325 of the FDIC's Rules and Regulations, 12 C.F.R. Part 325. The "Capital Calculations" page in the March 5, 2001 Joint FDIC/State Report of Examination provides the method for determining the ratio of Tier 1 capital to adjusted Part 325 total assets as required by this ORDER.

(b) Any increase in Tier 1 capital necessary to meet the ratio required by Paragraph 18(a) of this ORDER may be accomplished by the following:

    (i) The sale of new securities in the form of common stock; or

    (ii) The direct contribution of cash by the directors, shareholders, or parent Insured Institution holding company of the Insured Institution; or

    (iii) Any other method acceptable to the FDIC and the Commissioner.

P 0106

(c) If, after having achieved the Tier 1 leverage capital ratio specified in paragraph 18(a), such ratio declines below seven and one-half (7 1/2) percent, the Insured Institution, within thirty (30) days after the date on which said ratio so declined, shall submit a written plan to the Regional Director and the Commissioner for increasing such ratio up to or in excess of seven and one-half (7 1/2) percent within sixty (60) days after the written plan is implemented. Thereafter, the Insured Institution shall continue to maintain its Tier 1 leverage capital ratio at or in excess of such level while this ORDER is in effect. Upon approval by the Regional Director and the Commissioner, the Insured Institution shall immediately implement the written plan.

(d) In addition to the requirements of paragraphs 18(a)-(c), the Insured Institution shall comply with the FDIC's Statement of Policy on Risk-Based Capital found in Appendix A to Part 325 of the FDIC Rules and Regulations, 12 C.F.R. Part 325, App. A.

(e) If all or part of the increase in the Tier 1 leverage capital ratio required by Paragraph 18(a) of this ORDER is accomplished by the sale of new securities, the Board of the Insured Institution shall adopt and implement a plan for the sale of such additional securities, including the voting of any shares owned or proxies held or controlled by them in favor of the plan. Should the implementation of the plan involve a public distribution of the Insured Institution's securities (including
{{1-31-02 p.C-5298}}

a distribution limited only to the Insured Institution's existing shareholders), the Insured Institution shall prepare offering materials fully describing the securities being offered, including an accurate description of the financial condition of the Insured Institution and the circumstances giving rise to the offering, and any other material disclosures necessary to comply with the Federal securities laws. Prior to the implementation of the plan and, in any event, not less than 20 days prior to the dissemination of such materials, the plan and any materials used in the sale of the securities shall be submitted to the FDIC, Registration, Disclosure, and Securities Operations Unit, 550 17th Street, N.W., Room 1-6043, Washington, D.C. 20429, and to the Commissioner, for review. Any changes requested to be made in the plan or materials by the FDIC shall be made prior to their dissemination. If the Regional Director and the Commissioner allow any part of the increase in the Tier 1 leverage capital ratio to be provided by the sale of noncumulative perpetual preferred stock, then all terms and conditions of the issue, including but not limited to those terms and conditions relative to the interest rate and any convertibility factor, shall be presented to the Regional Director and the Commissioner for prior approval.

(f) In complying with the provisions of Paragraph 18 of this ORDER, the Insured Institution shall provide to any subscriber and/or purchaser of the Insured Institution's securities written notice of any planned or existing development or other changes which are materially different from the information reflected in any offering materials used in connection with the sale of Insured Institution securities. The written notice required by this paragraph shall be furnished within 10 days from the date such material development or change was planned or occurred, whichever is earlier, and shall be furnished to every

P 0107

subscriber and/or purchaser of the Insured Institution's securities who received or was tendered the information contained in the Insured Institution's original offering materials.

(g) The Insured Institution shall not lend funds directly or indirectly, whether secured or unsecured, to any purchaser of Insured Institution stock or to any investor by any other means for any portion of any increase in the Tier 1 leverage capital ratio required herein.

(h) The Insured Institution's Board shall maintain in its minutes a written record of all actions taken by the Insured Institution to comply with the capital requirements of paragraphs 18(a) through 18(g) of this ORDER.

[.18]19. Within 60 days from the effective date of this ORDER, the Insured Institution shall eliminate and/or correct all apparent violations of law and regulations as described in the March 5, 2001 Joint FDIC/State Report of Examination. In addition, the Insured Institution shall henceforth comply with all applicable laws and regulations.

[.19]20. (a) Beginning with the effective date of this ORDER, minutes of Board and committee meetings shall contain sufficient detail to reflect the substance of significant discussions and the rationale to support significant decisions.

(b) Beginning with the effective date of this ORDER, the Board shall review the appropriateness and use of quorum guidelines and enforce compliance with the guidelines.

[.20]21. Within 60 days from the effective date of this ORDER, the Insured Institution shall eliminate and/or correct all internal routine and control deficiencies as described in the March 5, 2001 Joint FDIC/State Report of Examination.

[.21]22. Within 60 days from the effective date of this ORDER, the Insured Institution shall ensure full compliance with the Joint Interagency Policy Statement on Interest Rate Risk.

[.22]23.(a) Within 30 days from the effective date of this ORDER, the Insured Institution shall review all Consolidated Reports of Condition and Income filed with the FDIC on and after March 31, 2001, and shall amend and file with the FDIC and the Commissioner amended Consolidated Reports of Condition and Income which accurately reflect the financial condition of the Insured Institution as of the date of each such Report

(b) In addition to the above and during the life of this ORDER, the Insured Institution shall file with the FDIC Consolidated Reports of Condition and Income that accurately reflect the financial condition of the Insured Institution as of the reporting period. In particular such Reports shall include any adjustment in the Insured Institution's books made necessary or appropriate as a consequence of any State or FDIC examination {{6-30-02 p.C-5299}}

of the Insured Institution during that reporting period.

[.23]24. The Insured Institution shall not declare and pay cash dividends in any amount without the prior written consent of the Regional Director and the Commissioner.

[.24]25. (a) Within 60 days from the effective date of this ORDER, the Insured Institution shall develop a plan with a timetable ("IT Plan") to correct the following deficiencies noted in the Information Technology Report of Examination dated March 31, 2001 ("IT Exam"):

    (i) Correct outstanding audit exceptions from prior audits and the exceptions noted in the IT Exam;

    (ii) Correct segregation of duty weaknesses;

    (iii) Implement a comprehensive security policy;

    (iv) Provide for an ongoing security assessment program and a network penetration program to include a formalized incident response plan; and

    (v) Address other deficiencies noted in the IT Exam.

(b) The IT Plan and any subsequent modification thereto shall be submitted to the Regional Director and Commissioner for review and comment. Within 30 days from receipt of any comment, and after consideration of such comment, the Board shall approve the IT Plan, and such approval shall be recorded in the minutes of the Board. Thereafter, the Insured Institution, its directors, officers, and employees shall implement and follow the IT Plan and any subsequent modifications thereto.

[.25]26. Within 30 days from the effective date of this ORDER, the Insured Institution shall establish an adequate plan to comply in all material respects with the Bank Secrecy Act and section 326.8 of the FDIC Rules and Regulations, 12 C.F.R. §326.8. Thereafter, the Insured Institution shall comply in all material respects with the plan.

[.26]27. Within 90 days from the effective date of this ORDER, the Insured Institution's Board shall adopt and implement a comprehensive written audit program for internal and external audits. A copy of the audit program shall be submitted to the Regional Director and Commissioner for review and comment. Within 30 days from the receipt of any comment, and after consideration of such comments, the Board shall approve the audit program, and such approval shall be recorded in the minutes of the Board. The Insured Institution shall thereafter implement and enforce the audit program and any subsequent modifications thereto. The internal auditor shall make written monthly reports of audit findings directly to the Insured Institution's Board or Board Audit Committee.

The minutes of the meetings of the Board and Board Audit Committee shall reflect consideration of these reports and describe any action taken as a result thereof.

[.27]28. During the life of this ORDER, the Insured Institution shall not accept, renew, or roll over brokered deposits other than to the extent permitted pursuant to section 29 of the Act, 12 U.S.C. §1831f, as amended, and the FDIC's Rules and Regulations, including section 337.6, 12 C.F.R. §337.6, as amended and supplemented. For the purposes of this ORDER, the term "brokered deposit" shall have the same meaning as is found in section 337.6(a)(2) of the FDIC's Rules and Regulations, as amended, 12 C.F.R. §337.6(a)(2).

[.28]29. (a) During the life of this ORDER, the Insured Institution shall notify the Regional Director and Commissioner of any new lines of business under consideration by the Insured Institution. For purposes of this paragraph "new lines of business" means any activity not conducted by the Insured Institution as of March 31, 2001.

(b) The notification required by subsection (a) shall be in writing not less than 30 days prior to the proposed commencement date of the new line of business. The notification shall include prospective operating policies and procedures to be adopted as part of the new line of business.

(c) Subsequent to the regulatory notification provided in this paragraph, the Insured Institution shall not commence any new line of business without Board approval and notation in the official Board minutes.

(d) Nothing in this paragraph shall be deemed to relieve the Insured Institution from compliance with all other applicable statutes and regulations, including but not limited t section 24 of the Federal Deposit Insurance Act, 12 U.S.C. §1831a, and Part 362 of the FDIC Rules and Regulations, 12 C.F.R. Part 362.
{{6-30-02 p.C-5300}}

[.29]30. During the life of this ORDER, the Insured Institution shall establish and implement security controls with respect to tenants occupying the premises of the Insured Institution. At a minimum, such security controls shall ensure that the computer systems, paper files, and other information systems of the Insured Institution are protected from tampering by such tenants, their agents, employees, and visitors. Such controls and their implementation shall be in the form and manner acceptable to the Regional Director and the Commissioner as determined at subsequent examinations and/or visitations.

31. Within 30 days from the end of each calendar quarter, the Board shall furnish written progress reports to the Regional Director and the Commissioner detailing the form and manner of any actions taken to secure compliance with this ORDER and the results thereof. Such reports may be discontinued when the corrections required by this ORDER have been accomplished and the Regional Director and the Commissioner have released the Insured Institution in writing from making further reports. All progress reports and other written responses to this ORDER shall be reviewed by the Board and consideration thereof shall be included in the official Board minutes.

P 0110

The provisions of this ORDER shall be binding upon the Insured Institution, its directors, officers, employees, agents, successors, assigns, and other institution-affiliated parties of the Insured Institution.

This ORDER shall become effective 10 days from the date of its issuance.

The provisions of this ORDER shall remain effective and enforceable except to the extent that, and until such time as, any provisions of this ORDER shall have been modified, terminated, suspended, or set aside by the FDIC.

Pursuant to delegated authority.

Dated: November 30th, 2001.

Exhibit E

RECYCLED

Ret. July 23, 2002

| | | |
|---|---|---|
| JOHN P. BURKE, COMMISSIONER OF BANKING | : | SUPERIOR COURT |
| | : | JUDICIAL DISTRICT OF HARTFORD |
| v. | : | |
| CONNECTICUT BANK OF COMMERCE | : | JUNE 26, 2002 |

### ORDER

WHEREAS, the Court has examined the <u>Ex Parte</u> Application of the Commissioner of Banking for Appointment of the Federal Deposit Insurance Corporation as Receiver of Connecticut Bank of Commerce and considered the supporting documents, statements, and testimony and it appears that an order should enter <u>ex parte</u> as prayed for in the Application;

NOW, THEREFORE, BY AUTHORITY OF THE STATE OF CONNECTICUT, IT IS HEREBY ORDERED:

1. There is reasonable likelihood that an unsafe or unsound condition exists which is likely to have an adverse effect upon the depositors and creditors of Connecticut Bank of Commerce.

2. At the request of the Commissioner of Banking, the Federal Deposit Insurance Corporation is hereby appointed Temporary Receiver of Connecticut Bank of Commerce without bond.

3. Copies of the Ex Parte Application for Appointment of Receiver, the affidavit accompanying such Application, Order to Show Cause, this Order and Certification Into Court shall be personally served upon a proper officer of Connecticut Bank of Commerce by 5 p.m. on June 27, 2002, and the Commissioner of Banking shall cause notice of the appointment of the Federal Deposit Insurance Corporation as Temporary Receiver of Connecticut Bank of Commerce to be placed at the main entrance to Connecticut Bank of Commerce and each of its branch banks.

4. In accordance with section 36a-223(b) of the Connecticut General Statutes, possession of and title to all assets, business, and property of Connecticut Bank of Commerce shall pass to and vest in the Federal Deposit Insurance Corporation may exercise any and all powers granted to receivers by Chapter 664c of the Connecticut General Statutes, and any authority granted to it by the laws of the United States until further order of this Court or until a permanent receiver is appointed.

5. This cause shall remain open for such other relief as may be equitable and as the Receiver may from time to time seek.

Issued at Hartford, Connecticut, this 26th day of June, 2002.

BY THE COURT

_____
J.

Exhibit F

Sent By: ;   06/01/2002 11:04 FAX 860 275 0343   2033803711;   Oct-31   12:47PM;   Page 26/27
DBH
@002

June 26, 2002

The Hartford
Hartford Plaza
Hartford, CT 06115

Attention:   D&O Claims

Re:   Connecticut Bank of Commerce/Policy # NDA0200230-01

Ladies and Gentlemen

I write to provide you with notice in connection with the above-referenced policy.

It has come to the attention of Connecticut Bank of Commerce (the "Insured") that its directors and officers, including but not limited to its Chairman Randolph W. Lenz and its President and CEO J. Donald Weand, Jr., may be subject to claims for wrongful acts. The Insured learned about this matter on Tuesday, June 25, 2002, when it directors and senior management met with representatives of the Federal Deposit Insurance Corporation ("FDIC") and the State of Connecticut Banking Department. Attached to this letter is the Prompt Corrective Action Directive Ordering Dismissal issued by the FDIC on June 25, 2002, which describes the information that the Insured has obtained at this point in time.

Please do not hesitate to contact me if you have any questions or need additional information. I can be reached at (212) 858-3389.

Very truly yours,

Darren Schulman

Enclosure

41341893_1.DOC 99998-44444
June 26, 2002 2:14 PM

Exhibit G

P 0117

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____SOUTHERN_____ DISTRICT OF _____NEW YORK_____

MEGALER. S.A.

JUDGE PRESKA
V.

RANDOLPH LENZ, MARSHALL ASCHE,
STEVEN B. LEVINE, BRIAN MARKS,
TIMOTHY S. REED, MARCIAL CUEVAS,
JACK WILLIAM DUNLAP and
EDUARDO P. MARTIN

SUMMONS IN A CIVIL CASE

CASE NUMBER:

# 02 CV 7925

TO: (Name and address of defendant)

EDUARDO P. MARTIN, 401 E.65TH ST., NY, NY; RANDOLPH LENZ, 30 COMPASS PT., FT. LAUDERDALE, FL; MARSHALL ASCHE, 215 RONBRU DRIVE., NEW ROCHELLE, NY; STEVEN B. LEVINE, 17 SACHEM RD., WESTON, CT; BRIAN MARKS, 33 WINOCA RD., FAIRFIELD, CT; TIMOTHY S. REED, 435 BIANCA AVE., CORAL GABLES, FL; MARCIAL CUEVAS, 57 STEVENSON RD., NEW HAVEN, CT; JACK WILLIAM DUNLAP, 125 OCEAN DRIVE WEST, STAMFORD, CT

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

LAW OFFICE OF DOUGLAS E. SZULMAN
Attn: DOUGLAS E. SZULMAN
c/o BIGHAM ENGLAR JONES & HOUSTON
40 WALL STREET, 24TH FLOOR
NEW YORK, NEW YORK 10005

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. Michael McMahon                              OCT - 4 2002
Acting CLERK                                    DATE

_Mailory Lim_
(BY) DEPUTY CLERK

P 0118

OCT 31 2002 10:21

AO 440 (Rev. 10/93) Summons in a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                Date                          Signature of Server

                                             _____
                                             Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

P 0119

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

MEGALER, S.A.

                           Plaintiff,

      -against-                       COMPLAINT AND
                                       DEMAND FOR JURY
                                       TRIAL

                                       CASE NO.:
                                       02 CV 7925

RANDOLPH LENZ, MARSHALL ASCHE,
STEVEN B. LEVINE, BRIAN MARKS,
TIMOTHY S. REED, MARCIAL CUEVAS,
JACK WILLIAM DUNLAP, and
EDUARDO P. MARTIN

                           Defendants.

------------------------------------------X

       Plaintiff, Megaler, S.A. ("Megaler"), by its attorney Douglas E. Szulman, Esq., as and for its Complaint, respectfully alleges, upon information and belief, as follows:

### PARTIES AND JURISDICTION

       1. Plaintiff, MEGALER, S.A., is a foreign business corporation organized and existing under the laws of the Republic of Uruguay with its principal place of business located at 1381 Missiones, 7th Floor, Office 701, Montevideo, Republic of Uruguay.

       2. Defendant EDUARDO P. MARTIN is, and at all material times has been, a citizen of the State of New York residing at 401 East 65th Street, New York, New York 10021.

1

P 0120

3. Defendant MARSHALL ASCHE is, and at all material times has been, a citizen of the State of New York residing at 215 Ronbru Drive, New Rochelle, New York 10804.

4. Defendant RANDOLPH LENZ is, and at all material times has been, a citizen of the State of Florida residing at 30 Compass Point, Fort Lauderdale, Florida 33308.

5. Defendant STEVEN B. LEVINE is, and at all material times has been, a citizen of the State of Connecticut residing at 17 Sachem Road, Weston, Connecticut 06430.

6. Defendant BRIAN MARKS is, and at all material times has been, a citizen of the State of Connecticut residing at 33 Winoca Road, Fairfield, Connecticut 06432.

7. Defendant TIMOTHY S. REED is, and at all material times has been, a citizen of the State of Florida residing at 435 Bianca Avenue, Coral Gables, Florida 33146.

8. Defendant MARCIAL CUEVAS is, and at all material times has been, a citizen of the State of Connecticut residing at 57 Stevenson Road, New Haven, Connecticut 06515.

9. Defendant JACK WILLIAM DUNLAP is, and at all material times has been, a citizen of the State of Connecticut residing at 125 Ocean Drive West, Stamford, Connecticut 06902.

10. Diversity jurisdiction of this Court is founded upon 28 U.S.C. § 1332 in that the defendants are citizens of the States of New York, Connecticut and Florida and the plaintiff's principal and sole place of business is located in Montevideo, Republic of Uruguay and the matter in