controversy  exceeds  Seventy  Five  Thousand  Dollars
($75,000.00) exclusive of interest and costs.

11.  Venue is proper in this district pursuant to 28
U.S.C § 1391(a)(2), because a substantial number of the
events  or  omissions  giving  rise  to  the  claims  herein
occurred within the district or had their effects in the
district or were committed here, and pursuant to 28 U.S.C. §
1391(a)(3), because  certain  defendants  are  subject  to
personal jurisdiction here.

### FACTUAL ALLEGATIONS

12.  At all relevant times defendants RANDOLPH LENZ,
MARSHALL ASCHE, STEVEN B. LEVINE, BRIAN MARKS, TIMOTHY S.
REED, MARCIAL CUEVAS and JACK WILLIAM DUNLAP were members of
the Board of Directors (hereinafter collectively referred to
as "Directors") of the Connecticut Bank of Commerce ("CBC
Bank").

13.  At all relevant times defendant EDUARDO P. MARTIN
was the Executive Vice President and Head of International
Operations of CBC Bank.

14.  Defendants RANDOLPH LENZ, MARSHALL ASCHE, STEVEN
B. LEVINE, BRIAN MARKS, TIMOTHY S. REED, MARCIAL CUEVAS and
JACK  WILLIAM  DUNLAP  each  actively  participated  in  the
business of CBC Bank and, as Directors, were familiar with
and knew the financial condition of CBC Bank and the value
of its assets and liabilities.

15.  Defendant EDUARDO P. MARTIN actively participated
in the business of CBC Bank and was a senior managing

3

**P 0122**

officer who was familiar with and knew, and represented to the plaintiff that he knew, the financial condition of CBC Bank and the value of its assets and liabilities.

16. CBC Bank was, at all relevant times herein, a banking corporation engaged in operating and conducting general banking services until it was closed by Court Order, as set forth hereinbelow, on the afternoon of June 26, 2002.

17. CBC Bank was, at all relevant times herein, licensed by the Banking Department of the State of New York to maintain its branch office at 90 Broad Street, New York, New York.

18. At all relevant times herein, plaintiff maintained a commercial deposit account with CBC Bank at its branch located at 90 Broad Street, New York, New York. Plaintiff, by account agreement, undertook all its banking with CBC Bank at its 90 Broad Street New York, New York branch office and pursuant to the laws of the State of New York.

19. On April 1, 2002 the Connecticut Department of Banking and the Federal Deposit Insurance Corporation conducted a joint examination of CBC Bank (hereinafter referred to as "joint examination"). Findings of the joint examination indicated that CBC Bank was out of compliance with several provisions of a November 28, 2001 Order to Cease and Desist issued by the examiners, including a provision therein pertaining to minimum acceptable capital levels. The joint examination revealed that CBC Bank had total equity capital of $27,732,000 as of March 31, 2002.

4

P 0123

20. The joint examination concluded that after absorbing the losses noted, as well as providing for the elevated risk in its loan portfolio, CBC Bank's "Allowance for Loan and Lease Losses" (established to absorb losses on loans and lease financing receivables) was insufficiently funded by $34,500,000.00.

21. The joint examination further concluded that CBC Bank had insufficient earnings to fund the aforementioned deficiency in the "Allowance for Loan and Lease Losses" necessitating a transfer of $34,500,000.00 from equity capital or from the capital accounts of CBC Bank, and consequently this transfer resulted in a negative "Tier 1 Capital" (as defined in 12 CFR § 325.2) of $7,461,000.00 for CBC Bank.

22. Thereafter, on April 8, 2002, one week after the joint examination, EDUARDO P. MARTIN, Executive Vice President and Head of International Operations of CBC Bank, together with Janette M. Baglietto, Account Executive and Assistant Vice President of CBC Bank, traveled to Buenos Aires, Argentina and contacted plaintiff to arrange for a meeting.

23. During the meeting of April 8, 2002, EDUARDO P. MARTIN represented to the plaintiff that the financial condition of CBC Bank was sound, and without problems, and EDUARDO P. MARTIN invited the plaintiff to make additional deposits to its CBC Bank commercial deposit account.

5

**P 0124**

24. Thereafter, in full reliance on these representations, and as fully set forth hereinbelow, the plaintiff deposited $2,693,103.18 in its CBC Bank commercial deposit account.

25. A supplemental examination of CBC Bank conducted by the Connecticut Department of Banking revealed that on Sunday, June 23, 2002, the Directors approved two loans totaling $11.5 million and that the two loans constituted exceptions to CBC Bank's credit policy.

26. The supplemental bank examination of CBC Bank further revealed that one of the two aforementioned loans was for $6.5 million and was disbursed without financial statements.

27. The supplemental bank examination of CBC Bank concluded that permitting and approving the said loan without financial statements was an unsafe and unsound loan practice that resulted in the dissipation of CBC Bank's assets.

28. As a result of these actions by the Directors, CBC Bank was rendered insolvent, precipitating the Order of the Connecticut Superior Court, Judicial District of Hartford, closing CBC Bank on the afternoon of June 26, 2002.

## COUNT I

29. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "28" as if fully stated herein.

6

P 0125

30.  CBC Bank was insolvent, at a minimum, from June 23, 2002 and prior to the discovery of its actual financial condition by the Connecticut Superior Court on June 26, 2002.

31.  The Directors were aware and had knowledge of CBC Bank's insolvency, at a minimum, from June 23, 2002.

32.  The Directors fraudulently and knowingly participated in permitting CBC Bank to remain open for business while insolvent and failed to take appropriate and timely action to close CBC Bank, but instead invited the plaintiff to make deposits.

33.  False and misleading representations were also made by the Directors either directly or through CBC Bank employees with regard to the solvency of CBC Bank, and were calculated to induce the plaintiff to deposit funds with a banking operation already known to the Directors to be insolvent.

34.  Until the closing of CBC Bank on June 26, 2002 plaintiff was unaware of either the insolvency of CBC Bank or its unsound financial condition prior to insolvency.

35.  On June 24, 2002, June 25, 2002 and June 26, 2002, and at other times, and in reliance upon the fraudulent representations made by the Directors, and in reliance upon the Directors' willful failure to close CBC Bank despite its insolvency, while instead making it appear that CBC Bank was financially sound, the plaintiff deposited $2,693,103.18 in its CBC Bank commercial deposit account, which plaintiff

7

P 0126

would not otherwise have done had it known of CBC Bank's insolvency or its unsound financial condition prior to insolvency.

36. On the afternoon of June 26, 2002, a receiver was appointed and took possession of the assets and business of CBC Bank in proceedings brought before the Superior Court of Connecticut, District of Hartford.

37. On the basis of the foregoing, and as a direct and proximate cause of the acts of each of the Directors, plaintiff has been damaged in the sum of $2,693,103.18.

### COUNT II

38. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "37" as if fully stated herein.

39. The Directors, and each of them, knew of CBC Bank's insolvency, and prior to such time, CBC Bank's unsound financial condition at all relevant times.

40. The Directors, and each of them, had a duty to advise and disclose to plaintiff that CBC Bank was insolvent and, prior to such time, financially unsound.

41. The Directors, and each of them, breached their duty in not disclosing to the plaintiff that CBC Bank was insolvent, and prior to such time, financially unsound.

42. Plaintiff, justifiably relied upon the false representations made by the Directors that CBC Bank was financially sound, and to its detriment, plaintiff made deposits in its commercial deposit account, which it

8

otherwise would not have undertaken if it were aware of CBC Bank's unsound financial condition and insolvency.

43.  As a direct and proximate result of the fraudulent and deceitful misrepresentations of each of the defendant Directors, plaintiff has been damaged in the sum of $2,693,103.18.

### COUNT III

44.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "43" as if fully stated herein.

45.  During the April 8, 2002 meeting with the plaintiff in Buenos Aires, Argentina, held one week after the April 1, 2002 joint examination of CBC Bank, defendant EDUARDO P. MARTIN represented to plaintiff that CBC Bank was financially sound and had no problems, and that plaintiff's deposits were safe.

46.  EDUARDO P. MARTIN further represented to plaintiff that if any problem with CBC Bank were to arise or existed, EDUARDO P. MARTIN would personally be the first to know and would immediately and personally inform plaintiff.

47.  Defendant EDUARDO P. MARTIN knew and was aware of the lengthy and numerous regulatory violations and unsafe and unsound financial condition of CBC Bank prior to his meeting of April 8, 2002 with the plaintiff.

48.  Defendant EDUARDO P. MARTIN purposefully and knowingly, and with the fraudulent and deceitful intent of inviting deposits by plaintiff, did not disclose to the

9

P 0128

plaintiff on April 8, 2002, or anytime thereafter, the unsound and unsafe financial condition of CBC Bank or its regulatory violations, including CBC Bank's insufficient "Tier 1 Capital".

49. Plaintiff was induced to make deposits into its CBC Bank commercial deposit account by the false and misleading and deceitful representations made by defendant EDUARDO P. MARTIN as to the financial condition of CBC Bank.

50. Plaintiff made deposits into its CBC Bank commercial deposit account in reliance upon the false and misleading representations made by defendant EDUARDO P. MARTIN during the April 8, 2002 meeting, which plaintiff would not have otherwise made had it known of CBC Bank's unsound financial condition.

51. As a direct and proximate result of the fraudulent and deceitful acts and representations of defendant EDUARDO P. MARTIN, plaintiff has been damaged in the sum of $2,693,103.18.

## COUNT IV

52. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "51" as if fully stated herein.

53. The Directors, and each of them, had a duty to properly supervise and inquire and prevent CBC Bank's agents and employees, including EDUARDO P. MARTIN, from making false and misleading representations to plaintiff as a

P 0129

depositor of CBC Bank that CBC Bank was financially sound and inviting deposits from the plaintiff.

54.   EDUARDO P. MARTIN misrepresented the financial condition of CBC Bank to the plaintiff during his April 8, 2002 meeting with plaintiff and thereafter.

55.   The Directors, and each of them, breached their duty in not supervising and managing the affairs of CBC Bank and EDUARDO P. MARTIN.

56.   As a direct and proximate result, the plaintiff made deposits into its CBC Bank commercial deposit account which it otherwise would not have undertaken if it were aware of CBC Bank's financial unsoundness and, thereafter, its insolvency.

57.   As a direct and proximate result of the negligence of each of the Directors, plaintiff has been damaged in the sum of $2,693,103.18.

WHEREFORE, the plaintiff, MEGALER, S.A., respectfully demands judgment against the defendants as follows:

(a)   on the First Count damages against each Director in the sum of $2,693,103.18 plus punitive damages in an amount to be determined by the Court together with attorney's fees, interest, costs and disbursements;

(b)   on the Second Count damages against each Director in the sum of $2,693,103.18 plus punitive damages in an amount to be determined by the Court together with attorney's fees, interest, costs and disbursements;

11

P 0130

(c) on the Third Count damages against EDUARDO P. MARTIN in the sum of $2,693,103.18 plus punitive damages in an amount to be determined by the Court together with attorney's fees, interest, costs and disbursements;

(d) on the Fourth Count damages against each Director in the sum of $2,693,103.18 plus punitive damages in an amount to be determined by the Court together with attorney's fees, interest, costs and disbursements; and

(e) such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable as of right by a jury.

Dated: New York, New York
       October 3, 2002

LAW OFFICES OF
DOUGLAS E. SZULMAN, ESQ.

by: _____
Douglas E. Szulman, Esq.
(DS-6055)
Attorney for Plaintiff
c/o Bigham Englar Jones
 & Houston
40 Wall Street, 24th Floor
New York, New York 10005
Tel: 212-269-5500
Fax: 212-269-4030

12

P 0131

OCT 31 2002 10:24

Exhibit H

P 0132

FROM DB&R LLP 202-842-8465                    (MON)12. 9' 02 18:30/ST. 18:28/NO. 4060129603 P  2

# DrinkerBiddle&Reath
### LLP

Alan J. Josquin
202-842-8832
alan.josquin@dbr.com

Law Offices

1500 K Street N.W.
Suite 1100
Washington, DC
20005-1209

202-842-8800
202 842-8465 fax
www.dbr.com

PHILADELPHIA
WASHINGTON
BERWYN
NEW YORK
LOS ANGELES
SAN FRANCISCO

DrinkerBiddle&Shanley LLP
PRINCETON
FLORHAM PARK

December 9, 2002

VIA FACSIMILE

David J. Elliott, Esq.
Day, Berry & Howard, LLP
CityPlace I
Hartford, CT 06103

RE:    Insurer:     Hartford Insurance Company of Illinois
       Insured:     CBC
       Claim:       Megaler v. Lenz, et al.,
       Policy No.:  NDA 0200230-01

Dear Mr. Elliott:

We represent The Hartford Insurance Company of Illinois ("Hartford") in connection
with the above-referenced claim presented under the Directors and Officers Liability
Policy No. NDA 0200230-01 issued to CBC (the "Policy"). We have reviewed your
correspondence dated November 8 and 13, 2002 and attachments thereto, including the
complaint filed in the above-referenced claim.

The purpose of this letter is to provide you with Hartford's initial views of the allegations
set forth in the complaint in light of the terms of the Policy. Please appreciate that these
views are preliminary. No definitive coverage analysis can be completed until the issues
raised in the litigation have been resolved. Hartford's views are necessarily based upon
the unsubstantiated allegations of the complaint and do not reflect an independent
assessment of the merits of the claim. We do not intend to suggest that there is any merit
to such allegations.

We direct this letter to you as the authorized representative of the persons and entities
covered under Policy. If you are not acting on behalf of these individuals and entities
with respect to insurance matters, please forward a copy of this letter to those individuals
and entities or to their insurance representative.

## THE POLICY

Hartford issued the Policy to CBC with a Policy Period of July 1, 2001 to July 1, 2002.
The Policy has a Limit of Liability of $5,000,000, subject to a $200,000 Retention under
Insuring Agreements B and C. The Policy does not provide for a duty to defend any
Director or Officer. Rather, the Policy provides that it is the duty of the Insureds to
defend any Claim.

Established
1849

DC:080404\1

DEC 10 2002 10:00                              860 275 0343        PAGE.03

12/10/2002 09:48 FAX 860 275 0343    DBH    → DB... STAMFORD 2    ☒004

FROM DB&R LLP 202-842-8465    (MON)12. 9' 02 18:30/ST. 18:28/NO. 4860129603 P  3

## DrinkerBiddle&Reath
LLP

David J. Elliott, Esq.
December 9, 2002
Page 2

## SUMMARY OF THE CLAIM

On October 3, 2002, a complaint was filed in the U.S. District Court for the Southern District of New York, captioned *Megaler, S.A. v. Randolph Lenz, Marshall Asche, Steven Levine, Brian Marks, Timothy S. Reed, Marcial Cuevas, Jack William Dunlap and Eduardo P. Martin*, Case No. 02cv7925 (the "Megaler Action").

According to the complaint, plaintiff Megaler is a foreign business corporation in Uruguay that maintained a commercial deposit account with CBC. It is alleged that all the defendants with the exception of Eduardo P. Martin were CBC directors. Martin was its Executive Vice President and Head of International Operations.

The complaint alleges that on April 1, 2002, the Connecticut Department of Banking and the FDIC conducted a joint examination of CBC (the "Joint Examination"), which resulted in the following findings:

1) CBC had total equity capital of $27,732,000 as of March 2002;
2) after "absorbing the losses noted [in the Joint Examination] as well as providing for the elevated risk in its loan portfolio, CBC . . . was insufficiently funded by $34,500,000"; and
3) CBC had insufficient earnings to fund the aforementioned deficiency, necessitating a transfer of $34,500,000 from equity capital or from the capital accounts of CBC.

According to the complaint, on April 8, 2002, one week after the Joint Examination, defendant Martin traveled to Buenos Aires to meet with plaintiff in order to induce Megaler to make additional deposits to its deposit account. During those meetings, Martin allegedly misrepresented to plaintiff that "the financial condition of CBC Bank was sound, and without problems." According to the complaint, plaintiff acted in reliance on Martin's alleged misrepresentations and on some unspecified date or dates thereafter deposited $2,693,103.18 into its CBC account.

Plaintiff also alleges that on June 26, 2002, following a supplemental examination of CBC by the Connecticut Department of Banking, it was revealed that on June 23, 2002, the directors of CBC approved two loans totaling $11.5 million that rendered CBC insolvent. According to the complaint, at least one of those loans was disbursed without financial statements, and both loans "constituted exceptions to CBC Bank's credit policy." According to the complaint, the supplemental examination concluded that approval by the directors was an "unsafe and unsound loan practice" that dissipated CBC's assets. It is alleged that as a result of the directors' actions, the Connecticut Superior Court ordered the bank closed.

DC\3480401

12/10/2002 09:49 FAX 860 275 0343        DBH              → DBH STAMFORD 2    ☑005

FROM DB&R LLP 202-842-8465                    (MON) 12. 9' 02 18:30/ST. 18:28/NO. 4860129603 P  4

DrinkerBiddle&Reath
L L P

David J. Elliott, Esq.
December 9, 2002
Page 3

Based on the foregoing, the complaint contains three counts:

**Count 1.** It is alleged that the CBC was insolvent "at a minimum" from June 23, 2002, when the aforementioned loans were issued, through June 26, 2002, when the court ordered the bank closed. Plaintiff alleges that the directors "fraudulently and knowingly participated in permitting CBC Bank to remain open for business while insolvent and failed to take appropriate and timely action to close CBC Bank." Count 1 also alleges that the directors made false and misleading representations to the plaintiff directly or through bank employees about the solvency of the bank, and that such representations were made to induce it to deposit funds with the CBC.

**Count 2.** It is alleged that the directors breached their duty to disclose CBC's "unsound financial condition" to plaintiff both prior to its deposit of funds and thereafter. Count 2 repeats the allegation that the directors made "fraudulent and deceitful misrepresentations" as to the bank's solvency.

**Count 3.** It is alleged that during various meetings, Martin "purposefully and knowingly, and with the fraudulent and deceitful intent of inviting deposits by plaintiff" failed to disclose CBC's unsound financial condition or regulatory violations. Plaintiff further alleges that Martin did not inform it at any time after April 8, 2002 of the bank's unsound financial condition or insolvency. Plaintiff alleges that "[a]s a direct and proximate result, the plaintiff made deposits into its CBC Bank commercial deposit account which it otherwise would not have undertaken."

**Count 4.** Plaintiff alleges that the directors had a duty to supervise, inquire and prevent the bank's employees, including Martin, from making false and misleading representations as to CBC's solvency, and the directors negligently breached this duty.

Plaintiff seeks damages in the amount of its deposit(s) totaling $2,693,103.18, plus punitive damages, attorney fees, interest and costs.

## COVERAGE ISSUES[1]

As noted above, the Policy does not provide for any duty or obligation on the part of Hartford to defend the Directors and Officers. Insuring Clause A provides coverage for

---

[1]    As the Sections and Endorsements of the Policy referred to in this letter are merely summarized, and because other Sections and Endorsements may apply, we recommend that you read the Policy in its entirety.

DC0 080401

FROM DB&R LLP 202-842-8465                    (MON)12. 9' 02 18:30/ST. 18:28/NO. 4860129603 P  5

## DrinkerBiddle&Reath

David J. Elliott, Esq.
December 9, 2002
Page 4

Loss that the Directors and Officers become legally obligated to pay as a result of a
Claim first made during the Policy Period for a Wrongful Act that took place during or
prior to the Policy Period. Insuring Clause B provides coverage to CBC for loss to the
extent it has indemnified the Directors and Officers for an otherwise covered Loss.
Because the Megaler complaint names individuals only, and because CBC appears to be
Financially Insolvent,[2] coverage, if any, would fall under Insuring Clause A.

Section IV(A) of the Policy defines "Claim" as including a civil proceeding commenced
by the service of a complaint or similar pleading. Although the Megaler complaint meets
the definition of Claim, the action was not commenced until after the Policy Period
expired. Accordingly, any loss resulting from the complaint would not be covered by the
Policy, unless Hartford received notice consistent with Section VIII(A). That section
provides:

> If during the Policy Period the Insureds become aware of a specific
> Wrongful Act that may reasonably be expected to give rise to a Claim
> against any Director or Officer . . . and if such Wrongful Act is reported to
> the Insurer during the Policy Period in writing with particulars as to the
> reasons for anticipating such a Claim, the nature and dates of the alleged
> Wrongful Act, the alleged damages sustained, the names of potential
> claimants, any Director or Officer involved in the alleged Wrongful Act
> and the manner in which the Insureds first became aware of the specific
> Wrongful Act, then any Claim subsequently arising from such duly
> reported Wrongful Act shall be deemed under this Policy to be a Claim
> made during the Policy Period in which the Wrongful Act is first duly
> reported to the insurer.

Because the Policy expired at 12:01 a.m. on July 1, 2002, the only purported notice given
to Hartford during the Policy Period was a letter from Darren Schulman of CBC on or
about June 26, 2002. The Schulman letter, however, does not provide notice of Wrongful
Acts with sufficient detail to meet the requirements of Section VIII(A). The letter states
only that CBC's directors and officers "may be subject to claims for wrongful acts." The
letter refers to Lenz and Weand but does not name any other potential defendant. It does
not describe any specific wrongful acts, their nature or dates, the identities of any
potential claimants, or any alleged damages. We attach the Schulman letter hereto for
your convenience.

---

[2]  Section IV.G defines Financial Insolvency as including the status of CBC resulting
from the appointment of a receiver (in this case, the FDIC).

DC368804(1)

FROM DB&R LLP 202-842-8465                    (MON)12. 9'02 18:30/ST.18:28/NO.4860129603 P  6

DrinkerBiddle&Reath

David J. Elliott, Esq.
December 9, 2002
Page 5

The Schulman letter also refers Hartford to the FDIC Dismissal Order for "the information that the Insured has obtained at this point in time." The Dismissal Order describes wrongful conduct by Lenz and Weand in the form of "hazardous lending activities" and a "fraudulent lending scheme" involving CBC's purchase of MTB Bank. The Megaler complaint, on the other hand, alleges misrepresentations made by another CBC officer – Martin – in order to induce deposits. The Megaler complaint also alleges negligence by CBC's directors in failing to prevent bank employees from making such misrepresentations. Finally, the complaint alleges that CBC's directors breached their duty to plaintiff as a depositor to disclose the bank's financial condition.

Based on our review of the Dismissal Order and the Megaler complaint, it appears that the Dismissal Order did not set forth either the name of the potential claimant (Megaler), the nature and dates of the alleged misrepresentations by Martin and the directors to Megaler, the alleged damages of $2.7 million in deposits, or the names of any defendants other than Lenz. Accordingly, because the Dismissal Order does not encompass the particulars of the specific Wrongful Act upon which the Megaler Action is based, that action appears to be outside the scope of coverage.

To the extent that you disagree with this analysis, please promptly advise us of your views in writing together with any information that you believe we should consider.

Please appreciate that Hartford's continuing attention to this matter is not intended as an admission of coverage. Accordingly, Hartford respectfully reserves all of its rights and defenses under the Policy, in equity and at law. Those rights and defenses include, but are not limited to, those Policy provisions to which we refer above as well as to Exclusions V(I) (the improper gain exclusion), V(J) (fraud and dishonesty exclusion) and Endorsement No. 4 (regulatory exclusion) of the Policy. Hartford also reserves its right to decline coverage of Claims Expenses incurred as a result of the Insureds having retained multiple counsel. Finally, Hartford reserves its right to raise additional Policy terms and conditions, if and when it may be appropriate to do so.

Sincerely yours,

Alan J. Joaquin

AJJ

Cc: Swett & Crawford

DC\S6404(1)

RECYCLED

Exhibit I

# STEWART OCCHIPINTI & MAKOW, LLP
### ATTORNEYS AND COUNSELLORS AT LAW

CHARLES A. STEWART, III
FRANK S. OCCHIPINTI*

OF COUNSEL
TRACY E. MAKOW*+
EDWARD G. WILLIAMS

1350 BROADWAY
SUITE 2200
NEW YORK, NEW YORK 10018
(212) 239-5500
FACSIMILE: (212) 239-7030
som@somlaw.com

85 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068
(973) 716-0707
FACSIMILE (973) 716-0887

*ADMITTED IN NEW YORK AND NEW JERSEY
+ADMITTED IN DISTRICT OF COLUMBIA

January 10, 2003

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

The Hartford
Hartford Plaza
Hartford, CT 06115
Attention: D&O Claims

      Re:    Connecticut National Bank of Commerce
              Policy Number NDAC0200230-01

Dear Sir or Madam:

      The undersigned represents Steven B. Levine, Marshall Asche, Timothy Reed, Marcial Cuevas and Jack William Dunlop, former directors of Connecticut Bank of Commerce ("CBC"). I am writing to advise you that by letter dated January 3, 2003, Mr. Levine has received notice of a claim or potential claim by or on behalf of certain unnamed stockholders of CBC and against CBC, its officers and directors arising from alleged wrongful acts and conduct of CBC during the policy period. A copy of a the January 3, 2003 letter from the unnamed stockholder's counsel, Robt. A. Slavitt of Slavitt, Connery and Vardamis, constituting such notice to Mr. Levine is attached hereto.

              Very truly yours,

              Charles A. Stewart, III

cc:    Steven B. Levine, M.D.
        Alan J. Joaquin, Esq.

**P 0139**

LAW OFFICES

ABRAHAM D. SLAVITT (1943)
PAUL R. CONNERY (1953)
ROBERT A. SLAVITT
GEORGE A. VARDAMIS (2001)
STEPHEN A. HABETZ
S. ANTOINETTE MORTON
TRICIA L. PINTO*
TODD G. HAASE

\* ALSO ADMITTED IN D.C.
\*\* ALSO ADMITTED IN NEW YORK
\*\*\* ALSO ADMITTED IN MICHIGAN
† ALSO ADMITTED IN MASSACHUSETTS

## SLAVITT, CONNERY & VARDAMIS

618 WEST AVENUE

P. O. BOX 2129

NORWALK, CONNECTICUT 06852-2129

(203) 838-7585

FRANCIS M. BOSZE
GEORGE R. CIAMPA† †
HARRY M. LESSIN (1990)
R. E. VAN NORSTRAND (1965)

OF COUNSEL

TELECOPIER (203) 866-0724

January 3, 2003

Steven B. Levine
17 Sachem Road
Weston, CT 06883

Re:   *Connecticut Bank of Commerce - Determination of Insolvency and Appointment of Receivers - Stockholder Loss Claims*

Dear Sir:

Please be advised that we represent stockholders of Connecticut Bank of Commerce, who were stockholders prior to January 1, 2002, and remain stockholders as and of June 26 and June 27, 2002, and continue to own and hold stock certificates issued by said bank.

As a result of your participation in unsafe and unsound practices in connection with Connecticut Bank of Commerce, and by reason of your using your official position in a manner contrary to the interests of Connecticut Bank of Commerce, said shareholders lost all value in their shares by reason of the conduct of the Connecticut Bank Commissioner and the FDIC on or about June 26 and June 27, 2002. The average value of said shares as traded in the three month period prior to June 26 and June 27 was $2.57 per share, which represents the loss per share of our clients resultant from your conduct as above described and as determined by the Banking Department of the State of Connecticut.

We assume that Connecticut Bank of Commerce maintained directors and liability insurance for the bank and its officers and directors, and that your conduct as above described is covered by said policies, and that you will deliver this letter to said carrier or its agent. If, in fact, such policy did not exist, please notify the writer immediately.

If we do not hear from you or the carrier within thirty (30) days from the date of this letter, we will have to take whatever actions are necessary to protect our client's rights and to recover for their losses. We believe that you, individually, are both jointly and severally responsible for our client's loss.

Very truly yours,

SLAVITT, CONNERY & VARDAMIS

Robert A. Slavitt

RAS:gko

106-D:\personal\cbc.010303\.wpd

**P 0140**

RECYCLED

Exhibit J

**P 0141**

**DrinkerBiddle&Reath**
L L P

Alan J. Joaquin
202-842-8832
alan.joaquin@dbr.com

*Law Offices*

1500 K Street N.W.

Suite 1100

Washington, DC

20005-1209

202-842-8800

202-842-8465 fax

www.dbr.com

PHILADELPHIA

WASHINGTON

BERWYN

NEW YORK

LOS ANGELES

SAN FRANCISCO

Drinker Biddle & Shanley LLP

PRINCETON

FLORHAM PARK

February 10, 2003

Via Facsimile

Charles A. Stewart, III
Stewart Occhipinti & Makow, LLP
1350 Broadway
Suite 2200
New York, NY  10018

RE:   Insurer:      Hartford Insurance Company of Illinois
      Insured:      Connecticut National Bank of Commerce
      Matter:       Stockholder Letter
      Policy No.:   NDA 0200230-01
      Our File No:  35280-181220
      _____

Dear Mr. Stewart:

We represent the Hartford Insurance Company of Illinois ("Hartford") in connection with the above-referenced matter presented under the Directors and Officers Liability Policy No. NDA 0200230-01 (the "Policy") issued to Connecticut Bank of Commerce ("CBC"). We have reviewed your letter dated January 10, 2003, advising Hartford that your client, Mr. Levine, received "notice of a claim or potential claim by or on behalf of certain unnamed stockholders of Connecticut Bank of Commerce." Attached to your letter was the correspondence Mr. Levine received from the stockholders (the "stockholder letter").

The purpose of this letter is to provide you with Hartford's initial views of the allegations set forth in the stockholder letter in light of the terms of the Policy. Please appreciate that these views are preliminary and are necessarily based upon the unsubstantiated allegations of the stockholder letters and do not reflect an independent assessment of the merits of the claim. We do not intend to suggest that there is any merit to such allegations.

## THE POLICY

Hartford issued the Policy to CBC with a Policy Period of July 1, 2001 to July 1, 2002. The Policy has a Limit of Liability of $5,000,000, subject to a $200,000 Retention under Insuring Agreements B and C. The Policy **does not provide for a duty to defend any Director or Officer.** Rather, the Policy provides that it is the duty of the Insureds to defend any Claim.

*Established*
*1849*

DC\371382\1

**P 0142**

DrinkerBiddle&Reath
L L P

Charles A. Stewart, III
February 10, 2003
Page 2

## SUMMARY OF THE MATTER

From the information received to date, it appears that Mr. Levine received the stockholder letter from those stockholders of Connecticut Bank of Commerce ("CBC"), "who were stockholders prior to January 1, 2002 and remain stockholders as of June 26 and June 27, 2002 and continue to own and hold stock certificates issued by CBC." According to the stockholder letter, as a result of Mr. Levine's

> participation in unsafe and unsound practices in connection with Connecticut Bank of Commerce, and by reason of your [Mr. Levine] using your official position in a manner contrary to the interests of Connecticut Bank of Commerce, said shareholders lost all value in their shares by reason of the conduct of the Connecticut Bank Commissioner and the FDIC on or about June 26 and June 27, 2002.

No further detail concerning Mr. Levine's alleged "wrongful conduct" is provided. The stockholder letter does suggest, however, that Mr. Levine's conduct resulted in a loss of $2.57 per share and that Mr. Levine is jointly and severally responsible for such loss. It is not clear from the letter who, besides Mr. Levine, may have responsibility for such loss.

In any event, no demand for reimbursement of the alleged loss is asserted in the stockholder letter. Rather, the stockholder letter simply concludes by requesting that Mr. Levine notify the insurers, if any, who may have issued to the Connecticut Bank of Commerce "directors and liability insurance."

## COVERAGE ISSUES[1]

As noted above, the Policy does not provide for any duty or obligation on the part of Hartford to defend the Directors and Officers.

Insuring Clause A provides coverage for Loss that the Directors and Officers become legally obligated to pay as a result of a Claim first made during the Policy Period for a Wrongful Act that took place during or prior to the Policy Period. Insuring Clause B

---

[1]  As the Sections and Endorsements of the Policy referred to in this letter are merely summarized, and because other Sections and Endorsements may apply, we recommend that you read the Policy in its entirety.

DC03713921\1

**P 0143**

**DrinkerBiddle&Reath**
L L P

Charles A. Stewart, III
February 10, 2003
Page 3

provides coverage to CBC for loss to the extent it has indemnified the Directors and
Officers for an otherwise covered Loss.

Section IV(A) of the Policy defines "Claim" as including a written demand for civil
damages or other civil relief commenced by the Insurer's receipt of such demand.
Because there appears to be no demand expressly made in the stockholder letter, it does
not appear to constitute a claim.

In any event, even if the stockholder letter did constitute a claim, it is clear that it was not
commenced until after the Policy Period expired. Accordingly, any loss resulting from
the stockholder letter would not be covered by the Policy, unless Hartford received notice
consistent with Section VIII(A). That section provides:

> If during the Policy Period the Insureds become aware of a specific
> Wrongful Act that may reasonably be expected to give rise to a Claim
> against any Director or Officer . . . and if such Wrongful Act is reported to
> the Insurer during the Policy Period in writing with particulars as to the
> reasons for anticipating such a Claim, the nature and dates of the alleged
> Wrongful Act, the alleged damages sustained, the names of potential
> claimants, any Director or Officer involved in the alleged Wrongful Act
> and the manner in which the Insureds first became aware of the specific
> Wrongful Act, then any Claim subsequently arising from such duly
> reported Wrongful Act shall be deemed under this Policy to be a Claim
> made during the Policy Period in which the Wrongful Act is first duly
> reported to the insurer.

The Policy expired at 12:01 a.m. on July 1, 2002. The only purported notice given to
Hartford during the Policy Period was a letter from Darren Schulman of CBC on or about
June 26, 2002 (the "Schulman letter"). The Schulman letter, however, does not provide
notice of Wrongful Acts with sufficient detail to meet the requirements of Section
VIII(A). The letter simply states that CBC's directors and officers "may be subject to
claims for wrongful acts."

The Schulman letter does refer to Randolph Lenz, Chairman of CBC's Board, and J.
Donald Weand, Jr., CBC's President and Chief Executive Officer, but does not name
Mr. Levine or any other officer or director as potential targets of any potential claim. The
letter also fails to describe any specific wrongful acts, their nature or dates, the identities
of any potential claimants, or any alleged damages. We attach the Schulman letter hereto
for your convenience.

DC01/13824

**P 0144**

DrinkerBiddle&Reath
L L P

Charles A. Stewart, III
February 10, 2003
Page 4

The Schulman letter also refers Hartford to the FDIC Dismissal Order for "the
information that the Insured has obtained at this point in time." The Dismissal Order
describes wrongful conduct by Lenz and Weand in the form of "hazardous lending
activities" and a "fraudulent lending scheme" involving CBC's purchase of MTB Bank.
In no way, however, does the Dismissal Order refer to Mr. Levine and any alleged
wrongful act which he may have committed. Similarly, the stockholder letter fails to
describe what, if any, wrongful acts Mr. Levine is alleged to have engaged in.

Based on our review of the Schulman letter and the stockholder letter, it does not appear
that that the Dismissal Order set forth either the name of the stockholders as potential
claimants or the nature and dates of any wrongful acts which Mr. Levine may have
committed. Accordingly, any potential claim that the stockholders may bring would
likely appear to be outside the scope of coverage under the Policy.[2]

To the extent that you disagree with this analysis, please promptly advise us of your
views in writing together with any information that you believe we should consider.

Please appreciate that Hartford's continuing attention to this matter is not intended as an
admission of coverage. Accordingly, Hartford respectfully reserves all of its rights and
defenses under the Policy, in equity and at law. Those rights and defenses include, but
are not limited to, those Policy provisions to which we refer above as well as to
Exclusions V(I) (the improper gain exclusion), V(J) (fraud and dishonesty exclusion) and
Endorsement No. 4 (regulatory exclusion) of the Policy. Finally, Hartford reserves its
right to raise additional Policy terms and conditions, if and when it may be appropriate to
do so.

Sincerely yours,

Alan J. Joaquin

AJJ

cc: Swett & Crawford

_____

[2] We further note that if the stockholders were to bring a claim, it would appear to be a
derivative claim. Typically, only the FDIC in its capacity as Receiver can bring such
claims.

DC\371382\1

**P 0145**