UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
MARSHALL ASCHE, STEVEN B. LEVINE, )
TIMOTHY S. REED, MARCIAL CUEVAS and )
JACK WILLIAM DUNLAP, )
)
                       Plaintiffs, )
)
  -against- )    Case No. 303CV0416 PCD
)
HARTFORD INSURANCE COMPANY )
OF ILLINOIS, )
)
                       Defendant. )
)
---------------------------------------------------------------X

## PLAINTIFFS' LOCAL RULE 56(a)(2) STATEMENT

Plaintiffs, Marshall Asche, Steven B. Levine, Timothy S. Reed, Marcial Cuevas and Jack William Dunlap (collectively, the "CBC Outside Directors" or "Plaintiffs"), as and for their Statement pursuant to Local Rule 56(a)(2), state as follows:

### The Policy

1.    Admit.

2.    Admit.

3.    Admit.

4.    Admit that CBC has not indemnified any of the CBC Outside Directors and that CBC meets the criteria of "Financial Insolvency," as defined by

Section IV.(G), because the Federal Deposit Insurance Corporation was appointed as a receiver.

5. Admit.

6. Admit.

7. Admit.

8. Admit.

9. Admit to the extent that Section III.(B) states: "The Insurer shall have the right to associate itself in the defense and settlement of an Claim that appears reasonably likely to involve this Policy. The Insurer may make any investigation it deems appropriate. However, it shall be the duty of the Insureds, not the Insurer, to defend any Claim."

10. Admit.

11. Deny. Directors and Officers are defined in the Policy as "one or more natural persons who were, now are or shall hereinafter be duly elected or appointed directors or officers of the Company, or, with respect to a Subsidiary incorporated outside the United States, their functional counterpart." As per Endorsement No. 5, the terms "Directors" and "Officers" may also include natural persons who are full or part-time employees of the Company.

12. Admit that the Policy states, in Section I, that "as a condition precedent to coverage, the Insureds shall report such Claim (including such Securities Claim) to the Insurer as soon as practicable but in no event later than sixty (60) days after the termination of the Policy Period or Discovery Period, if applicable."

13. Admit that Plaintiffs did not purchase a Discovery Period. Plaintiffs have no knowledge as to whether the FDIC or others purchased a Discovery Period.

14. Admit.

15. Admit.

## The Dismissal Order

16. Admit that the FDIC issued a Prompt Corrective Action Directive Ordering Dismissal (the "Dismissal Order") on June 25, 2002 and respectfully refer the Court to the Dismissal Order for its terms.

17. Admit and respectfully refer the Court to the Dismissal Order for its terms.

18. Admit and respectfully refer the Court to the Dismissal Order for its terms.

19. Admit and respectfully refer the Court to the Dismissal Order for its terms.

20. Deny. The Dismissal Order states that Lenz had been previously criticized by the FDIC in its 2001 Report of Examination for causing or permitting the Bank to engage in lax, preferential and hazardous lending activities. It states that it is "evident that the volume of loans with undue risk that he [Lenz] has referred and continues to refer to the Bank has resulted in severe asset quality problems that have ultimately resulted in the Bank's insolvency." *Id.*, at ¶ 1 (a). It states that Lenz "continued to cause or permit the Bank to approve or allow renewal of loans despite the fact that prudent underwriting, effective administration, or adequate oversight appears absent." *Id.*, at ¶ 1(c). The Dismissal Order states that the Bank is in

noncompliance with numerous provisions of the November 30, 2001 Cease and Desist Order. In connection with Lenz's fraudulent lending scheme, the Dismissal Order states that the "scheme was accomplished through more than $20 million in loans that Respondent caused or permitted the Bank to make to nominee borrowers and others, including related interests of Respondent Lenz. That same money was later transferred to Respondent Lenz or his related interests, who transferred it to the Bank in the form of capital purportedly to satisfy the condition to purchase MTB."

### The Megaler Action

21.  Admit and respectfully refer the Court to the complaint in the Megaler Action for its terms.

22.  Admit and respectfully refer the Court to the complaint in the Megaler Action for its terms.

23.  Admit and respectfully refer the Court to the complaint in the Megaler Action for its terms.

24.  Admit and respectfully refer the Court to the complaint in the Megaler Action for its terms. The Megaler Action further alleges that CBC's Directors approved two loans totaling $11.5 million on Sunday, June 23, 2002 which constituted an exception to CBC's credit policy; that CBC was insolvent from June 23, 2002; that CBC's Directors knew that CBC was insolvent and negligently allowed the bank to remain open on June 24, June 25 and June 26, 2002 when Plaintiff in the Megaler Action deposited $2,693,103.18 into CBC.

25.  Admit.

## The FDIC Proceeding

26. Admit and respectfully refer the Court to the Notice of Assessment of Civil Money Penalties (the "FDIC Notice") for its terms.

27. Admit and respectfully refer the Court to the FDIC Notice for its terms.

28. Admit and respectfully refer the Court to the FDIC Notice for its terms.

## The Connecticut Department of Banking Proceeding

29. Admit and respectfully refer the Court to the Intent to Impose Civil Penalties (the "CDOB Notice") for its terms.

30. Admit.

## The Shareholder Threat

31. Admit.

32. Admit and respectfully refer the Court to the January 3, 2003 letter (the "Shareholder Letter") for its terms.

33. Admit and respectfully refer the Court to the Shareholder Letter for its terms.

## The Insureds' Correspondence with Hartford

34. Admit that Darren Schulman sent a letter dated June 26, 2002 to Hartford and respectfully refer the Court to such letter for its terms. Deny knowledge or information as to whether additional documents were included with the June 26, 2002 letter and Dismissal Order.

35. Deny knowledge or information regarding the July 1, 2002 letter sent to Swett & Crawford. The first time the CBC Outside Directors learned of the existence of this letter and attachment was when Hartford filed its motion for summary judgment.

36. Admit that the Accord form included with Hartford's summary judgment papers describes the occurrence as "D&O – insured bank shut down and seized by Dept of Banking. FDIC named as receiver. See New Articles, Action Directive from FDIC."

37. Admit that that news articles included in Hartford's summary judgment papers state that CBC had been "shut down and seized" by the CDOB. The Court is respectfully referred to the news articles for the information contained therein.

38. Deny knowledge or information regarding the July 26, 2002 letter from Hartford, the existence of which the CBC Outside Directors first learned of in Hartford's summary judgment papers. The Court is respectfully referred to the July 26, 2002 letter for the terms thereof.

39. Admit that the CBC Outside Directors did not respond to the July 26, 2002 letter. Deny knowledge or information as to whether the FDIC or any other person or entity responded to the July 26, 2002 letter.

40. Deny. Information from the files of CBC's insurance agent demonstrates that Hartford received the November 30, 2001 Cease and Desist Order on June 17, 2002. Deny knowledge or information as to what other information was received by Hartford in connection with underwriting, claims or otherwise.

## DISPUTED ISSUES OF MATERIAL FACTS

1. In June, 2002, Hartford was participating in the decision as to whether or not to renew the Policy and knew of various problems at CBC. *See* Stewart Exh. "G" (Documents received from CBC's insurance agent).

2. A copy of the November 30, 2001 Cease and Desist Order was sent to Hartford on June 17, 2001. *Id.*

3. On June 20, 2002, a Hartford executive notified Wachovia Insurance Services, Inc., a company affiliated with CBC's insurance agent, that he wanted to set up a conference call with CBC to discuss the November 30, 2001 Cease and Desist Order, including "current compliance with C+D order and corrective actions to meet obligations of the C+D order." *Id.* On June 20, 2002, Mr. Iorio of Hartford stated: "[B]asically, I need the full story from the bank on what happened and why, and then what they are doing to correct it and what has happened so far this year to show a positive direction." *Id.*

4. Hartford did not respond directly to Darren Schulman's June 26, 2002 notice letter (drafted with guidance from CBC's outside counsel, Day, Berry & Howard, LLP), or request additional information. Instead, four (4) days before the last date by which an Insured could make a written request to extend coverage (*see* Policy, Section II.(B), Discovery Period), Hartford issued a reservation of rights letter to CBC's insurance agent, as part of its effort to avoid coverage for claims arising from the collapse of CBC. *See* Palermini Exh. 8. The CBC Outside Directors do not know whether Hartford's July 26, 2002 letter was received by anyone prior to the last date an Insured could make a written request to extend the Policy.

5. Hartford's D&O policy contains a provision stating that all Claims having a common nexus "any fact, circumstance, situation, event, transaction, cause or series of casually connected facts, circumstances, situations, events, transactions or causes" are a single Claim "deemed to be first made on the date the first such Claim is made or deemed to be made pursuant to Section VIII.(A) of this Policy, regardless of whether such date is before or after the Policy Period." *See* Policy, Section VI.(D).

6. All of the allegations of corporate misgovernance lodged against the CBC Outside Directors arise from a common nexus of causally related facts and circumstances, and which formed the basis for the FDIC's and CDOB's initial proceedings in June, 2002. *See* Plaintiffs' Br. at pp. 19-24.

7. No insurance company would sell insurance to a bank that has been taken over by government authorities that would afford coverage for claims like those asserted against the CBC Outside Directors.

8. Hartford did not offer to renew the Policy.

9. The CBC Outside Directors reasonably believed that the Policy would afford protection for "corporate misgovernance" claims, like those asserted against them in the Megaler Action, the Bazinet Action and the Federal and State Regulatory Actions. Levine Aff. ¶ 13. Their outside counsel assured them that proper notice to Hartford had been sent. *Id.*, at 14.

10. On January 23, 2004, an attorney, Samuel Reiser, commenced a third-party action against the CBC Outside Directors in the New York Supreme Court, County of New York, entitled *Bazinet v. Kluge*, Index No. 110143/01 (the "Bazinet Action"). Reiser's third-party complaint against the CBC Outside Directors seeks

contribution and indemnification arising from <u>precisely</u> the same allegations included in the FDIC Proceeding filed on November 22, 2002. Notice of the Bazinet Action has been provided to Hartford. *See* Stewart Exh. "C."

11. The CBC Outside Directors' construction of the Policy as affording coverage for the Megaler Action, the Bazinet Action and the Federal and State Regulatory Actions is more reasonable than Hartford's construction that the Policy affords no coverage. *See* Plaintiffs' Br. at pp. 24-29.

12. Hartford's coverage position affected the CBC Outside Directors' litigation strategy of vigorously contesting the FDIC and CDOB proceedings. Faced with mounting legal bills and Hartford's refusal to advance defense costs, the CBC Outside Directors had no choice but to take advantage of a settlement offered by the CDOB and FDIC. Levine Aff., ¶¶ 17-26.

13. The settlements and defense costs paid by the CBC Outside Directors in the FDIC and CDOB proceedings were less than what Hartford would have been obligated to pay if the CBC Outside Directors had been vindicated at trial. Levine Aff., ¶¶ 21, 23-24.

Plaintiffs reserve the right to amend this Local Rule 56(a)(2) Statement in the event the Court grants their cross-motion to compel and for a continuance.

Dated: January 10, 2005

Respectfully submitted,

By: _____
Charles A. Stewart, III (CT 17452)
cstewart@somlaw.com
STEWART OCCHIPINTI, LLP
1350 Broadway, Suite 2200
New York, New York 10018
(212) 239-5500

and

WEINSTEIN & WISSER, P.C.
Richard P. Weinstein (CT 06215)
29 South Main Street, Suite 207
West Hartford, CT 06107
(860) 561-2628

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
MARSHALL ASCHE, STEVEN B. LEVINE,
TIMOTHY S. REED, MARCIAL CUEVAS and
JACK WILLIAM DUNLAP,

                 Plaintiffs.

-against-                               Dkt. No. 3:03cv416 (PCD)

HARTFORD INSURANCE COMPANY
OF ILLINOIS,                              **CERTIFICATE OF SERVICE**

                 Defendant.

------------------------------------------------------------X

      Charles A. Stewart, III, an attorney admitted to practice in the United States District Court for the Southern District of New York and admitted pro hac in the United States District Court for the District of Connecticut in the above action, certifies, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that on January 10, 2005, in addition to service by email, I served the attached ***Plaintiffs' Cross-Motion to Compel and for a Continuance, accompanying Memorandum of Law and Local Rule 56(a)(2) Statement*** upon all counsel of record in this action by depositing true copies of the same, each enclosed in a pre-paid envelope, in a depository maintained by the Federal Express, addressed to the following at the address provided by each for that purpose, to wit:

                            Alan J. Joaquin, Esq.
                            Drinker Biddle & Reath, LLP
                            1500 K Street N.W.
                            Suite 1100
                            Washington, D.C. 20005-1208

                            W. Joe Wilson
                            Tyler Cooper & Alcorn, LLP
                            185 Asylum Street
                            Hartford, CT 06103-3488

Dated: January 10, 2005

                                                      _____
                                                      Charles A. Stewart, III