UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 JAN 31  P 4: 02

U.S. DISTRICT COURT
NEW HAVEN, CT

MARSHALL ASCHE, STEVEN B. LEVINE, )
TIMOTHY S. REED, MARCIAL CUEVAS and )
JACK WILLIAM DUNLAP, )
)
Plaintiffs, )
)
v. ) Case No. 303CV0416 PCD
)
HARTFORD INSURANCE COMPANY )
OF ILLINOIS, )
)
Defendant. )

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

Dated: January 31, 2005

Respectfully submitted,

Hartford Insurance Company of Illinois

By its attorneys
W. Joe Wilson (ct22292)
jwilson@tylercooper.com
William H. Champlin III (ct04202)
champlin@tylercooper.com
TYLER COOPER & ALCORN, LLP
185 Aslyum Street
CityPlace/35th Floor
Hartford, CT  06103-3488
(860) 725-6200
Fax (860) 278-3802

# TABLE OF CONTENTS

*RESPONSE TO PLAINTIFFS PRELIMINARY STATEMENT*......................1

*ARGUMENT*................................................................................2

I.     NO CLAIM WAS MADE DURING THE POLICY PERIOD...............3

A.     The Dismissal Order Is Not A Claim Against Directors or Officers for a Wrongful Act.................................................................................3

B.     The Dismissal Order Is Not A Claim Against CBC for a Wrongful Act.....4

II.     SUFFICIENCY OF NOTICE OF WRONGFUL ACTS.......................5

A.     Notices Provided Outside the Policy Period Are Not Material................5

B.     The June 26th Letter and the Dismissal Order Are the Only Relevant Documents..............................................................................6

III.     THE REGULATORY EXCLUSION.............................................7

A.     The Reasonable Expectations Doctrine Does Not Apply........................7

B.     Contrary to Plaintiffs' Assertions, the Exclusion Favors Settlement...........9

*CONCLUSION*............................................................................10

## RESPONSE TO PLAINTIFFS' PRELIMINARY STATEMENT

In their Opposition to Hartford's Motion for Summary Judgment ("Opp."), Plaintiffs, former directors of Connecticut Bank of Commerce ("CBC"), contend that the claims-made policy issued by Hartford covers lawsuits that were filed after the Policy Period ended.[1] The Policy provides a mechanism for preserving such coverage, but only if (a) the lawsuits are related to a Claim actually made during the Policy Period (no such Claim was made) or if (b) the Insureds complied with certain explicit notice requirements (the Insureds did not do so). Unable to launch a credible attack on the relevant provisions of the Policy, Plaintiffs introduce peripheral issues and argue without foundation that:

- *A Claim was made prior to the expiration of the Policy Period. See* Opp. p. 2.

The Opposition is the very first time that Plaintiffs have offered this contention. Even the letter at the crux of this dispute – the June 26, 2002 letter to Hartford from the Insureds – expressly limits itself to notice that CBC's directors and officers "may be subject to claims."

- *Hartford received from CBC materials that, even though they do not comply with the notice provisions of the Policy, should be deemed to comply. See* Opp. pp. 3, 5. Plaintiffs

introduce a quasi- "constructive notice" argument because CBC's agents may have sent documents to Hartford's Underwriters for reasons unrelated to preserving coverage for future claims. Even if that were established in fact, it is irrelevant, because strict compliance with notice provisions is a contractual condition that determines the extent of coverage.

- *The lawsuits for which Plaintiffs seek coverage involve Wrongful Acts that are "interrelated" with "notices and information" received by Hartford after the Policy Period*

---

[1] The lawsuits are described in detail in Defendant's Motion for Summary Judgment. They consist of the Megaler Action, the FDIC Action, the CDOB Action and "future claims" including a "Threatened Shareholder Action."

*expired.* *See* Opp. p. 2-3. The Opposition (p. 3) misquotes the Policy. For there to be coverage for claims alleging "Interrelated Wrongful Acts" a Claim must have been actually <u>made</u> or <u>deemed to be made during</u> the Policy Period. Plaintiffs cannot establish that a Claim against any Director or Officer for Wrongful Acts was actually <u>made</u> during the Policy Period, and Plaintiffs cannot establish that they complied with the conditions for <u>deeming</u> a Claim made during the Policy Period.

- *The "reasonable expectations" doctrine applies because Plaintiffs "expected" the policy to afford coverage for claims arising from the FDIC's takeover of CBC. See* Opp. p. 2. The Policy's exclusion for regulatory actions is not ambiguous. Thus, it is not reasonable for Plaintiffs to have "expected" coverage for any action brought by agencies such as the Federal Deposit Insurance Corporation and the Connecticut Department of Banking. Moreover, Plaintiffs' expectation of coverage cannot be reasonable since they failed to comply with unambiguous conditions precedent to such coverage.

## ARGUMENT

Hartford's declination of coverage in this matter is mandated by the Policy because the Claims at issue were made after the Policy Period expired and because the Insureds failed to comply with conditions that are expressly precedent to preserving coverage for such Claims. Plaintiffs contend that it is "disingenuous" for Hartford to expect the Plaintiffs to bear the risks of claims resulting from the takeover of CBC by the FDIC. *See* Opp. p. 4. But the unambiguous provisions of the Policy – the specific regulatory exclusion, the specific definition of Claims and the specific requirements for sufficient notice of potential claims – all conspicuously and unambiguously put the Insureds on notice that coverage for those risks does not exist under the Policy unless and <u>only</u> unless all terms and conditions of the Policy have been met.

I. **NO CLAIM WAS MADE DURING THE POLICY PERIOD**

For the first time in this coverage dispute, Plaintiffs assert that the FDIC's Prompt Corrective Action Directive Ordering Dismissal (the "Dismissal Order"), issued on June 25, 2002, constitutes a Claim first made during the Policy Period. *See* Opp. p. 20. Their conclusion is inconsistent with the Policy definition and prevailing case law.

   A. **The Dismissal Order Is Not A Claim Against Directors or Officers for a Wrongful Act**

The Policy definition upon which Plaintiffs rely states that "Claim" means

> a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,
>
> against Directors or Officers or, with respect to Insuring Agreement (C) and (D), the Company, for a Wrongful Act, including any appeal therefrom.

*See* Policy at Exhibit A to Complaint, Section IV(A), as amended by Endorsement No. 7, p. 3. Plaintiffs' half-hearted argument that the Dismissal Order is a claim begins and ends in a single unsupported footnote. *See* Opp. fn 3. The footnote states that the Dismissal Order "does not identify a party," thereby conceding that it was not brought "against Directors or Officers." Plaintiffs also concede that the Dismissal Order was not "for" a Wrongful Act, but merely "concerned" Wrongful Acts of two Insureds (Lenz and Weand, who are not parties to this coverage litigation). *See* Opp. p. 20.[2]

A document that neither identifies "any party" nor seeks any relief "for" Wrongful Acts is not a Claim. *See, e.g., Wyndham Solid Waste Management Dist. v. National Cas. Co.*, 146

---

[2] No Insured ever sought coverage for the Dismissal Order. The notice the Insureds gave to Hartford during the Policy Period was expressly presented as notice that the directors "may be subject to claims." Moreover, Hartford does not agree that the Dismissal Order constitutes a "notice of charges, formal investigative order or similar document" against a Director or Officer.

- 3 -

F.3d 131, 133-134 (2d Cir. 1998), in which the Court exhaustively surveyed case law from a number of jurisdictions and concluded that the plain and ordinary meaning of claim is "a demand for specific relief owed because of alleged wrongdoing." Nowhere in their Opposition do Plaintiffs contend that the Dismissal Order makes a demand for relief upon any Director or Officer, named or unnamed.[3] According to the Second Circuit, "an accusation that wrongdoing occurred is not by itself a claim." Id. at 134.[4]

### B. The Dismissal Order Is Not A Claim Against CBC for a Wrongful Act

The Dismissal Order's only "demand" – if it can be characterized as such – is a directive to the Bank to dismiss Lenz and Weand from office. See Defendant's Motion for Summary Judgment, Palermini Aff., Ex. 6. This directive is not a Claim against CBC. The Policy specifies certain Claims for which CBC itself is covered: Securities Claims, ERISA Claims, IRA Claims, or Employment Practices Claims. See Policy, Insuring Agreements C and D, as amended by Endorsements 2, 3 and 7. The Dismissal Order does not meet any of those definitions.

For the reasons set forth above, the Dismissal Order is not a Claim.

---

[3] In *Harbor Insurance Co. v. Continental Bank Corp.*, 922 F.2d 357, 367-8 (7th Cir. 1990), the Court held that a complaint is not a claim against insureds until they are identified by name: "Granted, the twenty-five "John Does" named as defendants along with Continental in the first suit included directors and officers, but it is unclear whether until a John Doe is given his real name a claim has been made against him within the meaning of the policy; certainly a judgment could not be executed against an unnamed defendant."

[4] See also *FDIC v. Continental Casualty Co.*, 796 F. Supp. 1344, 1351-52 (D.Or.1991) (cease and desist order was not a "claim" because "it fell short of holding the directors and officers personally liable for the misconduct "); *California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271, 1276 (9th Cir.1990) (notices from regulatory agencies are not claims unless they threaten formal proceedings for failure to comply or propose to hold directors personally liable for the deficiencies), cert. denied, 498 U.S. 1088, 111 S. Ct. 966 (1991).

## II. SUFFICIENCY OF NOTICE OF WRONGFUL ACTS

### A. Notices Provided Outside the Policy Period Are Not Material

Prior to their recent assertion that the Dismissal Order is a Claim, Plaintiffs sought coverage solely on the basis of Section VIII(A) of the Policy, which permits the Insureds to preserve coverage for claims that may be brought after the Policy Period by giving Hartford requisite notice of specific Wrongful Acts that may give rise to such claims. Here, the Insureds gave to Hartford the June 26th letter and the Dismissal Order as notice of specific Wrongful Acts. Hartford respectfully refers the Court to Defendant's Motion for Summary Judgment as to why the Dismissal Order does not provide notice with the requisite particularity.[5]

Plaintiffs refuse to acknowledge the strict notice requirements of Section VIII(A) and instead, seek an end-run around them by incorrectly invoking the Policy's Interrelated Wrongful Acts provision. *See* Opp. pp. 20-24. That provision, however, does not negate the Insureds' express notice obligations. Pursuant to the Policy, notice of an actual Claim must be given Hartford within the Policy Period or within sixty days thereafter (Section I), but notice of specific Wrongful Acts must be given "during the Policy Period" in order to preserve coverage for future claims (Section VIII(A)). There is no sixty day grace period for notice of specific Wrongful Acts. Therefore, all the "notices and information provided to Hartford within sixty (60) days of the expiration of the Policy" are irrelevant. Opp. p. 24. Plaintiffs' case turns on the sufficiency of the notice of specific Wrongful Acts provided to Hartford before 12:01 a.m. on July 1, 2002.[6]

---

[5] *See, e.g., FDIC v. Mijalis*, 15 F.3d 1314, 1330, 1334-1337 (5th Cir. 1994).

[6] Contrary to Plaintiffs' contention, the Policy makes any notice that directors "may be subject to claims" untimely if it is received at any time after the Policy Period expired, be it 8 hours or 8 months after.

### B. The June 26th Letter and the Dismissal Order Are the Only Relevant Documents

Plaintiffs describe to the Court in great detail the information they themselves had prior to the expiration of the Policy Period. *See* Opp. pp. 7-11. Unfortunately, neither Plaintiffs nor their agent in the June 26th letter successfully conveyed their detailed knowledge to Hartford as required by Section VIII of the Policy. They imply, however, that if Hartford required additional information it should have requested it by contacting CBC. Id. p. 10. There are two problems with this proposition: (1) the burden of complying with the contractual requirement of written notice of a specific Wrongful Act described with particularity is imposed upon the Insureds, not upon Hartford (Policy Section VIII(A)); and (2) in any event, Hartford had been advised in the June 26th letter that its contents constituted the sum of the "information the Insured has obtained at this point in time." *See* June 26th letter, Palermini Aff., Ex. 6.

Plaintiffs' Opposition to Hartford's Motion for Summary Judgment indicates that the Court should find that the November 30, 2001 Cease and Desist Order, which Hartford's Underwriters may or may not have received in late June 2002,[7] satisfies the Policy's required particularity of notice of Wrongful Acts. But the Opposition does not discuss the very next section of the Policy, which negates the implication that any materials provided to Hartford's Underwriters are sufficient to comply with the Policy's notice requirements:

> Notice of any **Claim** or specific **Wrongful Act** shall be given in writing to **The Hartford, Hartford Plaza, Hartford, CT. 06115 Attention: D&O Claims.** All other notices under this Policy shall be given to the same addressee but to the attention of Financial Products Underwriters.

---

[7] The Opposition states flatly that "Hartford had received a copy of the November 30, 2001 Cease and Desist Order from First Union Insurance Services Agency on or about June 17, 2002." However, the exhibits attached to the Opposition indicate only that Hartford Underwriters requested "the full story" from the bank; they do not reflect Underwriters' receipt of any such materials.

Policy Section VIII(B). The June 26, 2002 letter to Hartford, advising it that the directors "may be subject to claims," was addressed to **Attention: D&O Claims**. Based on the express language of Section VIII(B), Plaintiffs cannot reasonably expect that materials provided to Hartford's Underwriters would suffice. Moreover, case law does not support their contention.

Notice provisions in claims-made policies are strictly construed because they define the scope of coverage; proper notice becomes a condition precedent to coverage. Home Ins. Co. v. Adco Oil Co., 154 F.3d 739, 742 (7th Cir. 1998). Even if CBC had provided Hartford's Underwriters with the Cease-and-Desist Order, it is irrelevant. It is well settled that materials provided to an insurer for underwriting purposes do not satisfy a policy's specific notice provisions regarding Claims or potential claims. See, e.g., LaForge v. American Casualty Co., 37 F.3d 580 (10th Cir. 1994), in which the Court surveyed case law from many jurisdictions and held that "there is a difference between investigating circumstances to determine whether to extend coverage in the future and investigating possible liabilities under a present policy."[8] Any "information and notices" that Hartford received other than the June 26th letter and the Dismissal Order are simply not relevant.

### III. THE REGULATORY EXCLUSION

#### A. The Reasonable Expectations Doctrine Does Not Apply

Plaintiffs ask the Court to find coverage because the Insureds expected it. *See* Opp. p. 2-3. In Jurrius v. Maccabees Mutual Life Ins. Co., 587 F. Supp. 1301, 1305 (D. Conn. 1984), the Court held that under Connecticut law, an insured's purported "reasonable expectations" can be

---

[8] At least two of the cases upon which the Court relied involved banks that provided information to their insurance underwriters about cease and desist orders. *FDIC. v. Mijalis*, 15 F.3d 1314, 1330, 1334-1337 (5th Cir. 1994) and *American Casualty Co. of Reading, Pa. v. FDIC.*, 944 F.2d 455, 460 (8th Cir. 1991).

considered only if "the policy language at issue, taken either on its face or in the context of the entire policy, is ambiguous" and even then "only if such expectations are 'objectively reasonable from a layman's point of view.'" When the policy language is plain and unambiguous, a court's obligation to enforce the contract in accordance with their terms remains intact. Id.

In seeking coverage for the FDIC and CDOB Actions, therefore, Plaintiffs assert that the "regulatory exclusion" is ambiguous, but it is not. Endorsement No. 4 of the Policy excludes from coverage all Loss in connection with any Claim brought by or on behalf of the FDIC "or similar state supervisory or regulatory authority." The Endorsement clearly excludes all Loss incurred in both the FDIC and CDOB Actions, whether that Loss consists of settlements, judgments or Claims Expenses. However, if a specific triggering event occurs, Endorsement No. 4 provides for limited reimbursement of Claims Expenses:

> In the event, however, of a judgment or other final adjudication establishing no liability on the part of any Insureds for any Claim(s) which would otherwise be excluded by the terms of this Endorsement, the Insurer hereby agrees that the Claims Expenses with regard to any such Claim(s) shall not be excluded . . .[9]

Unless and until the triggering event of a judgment or final adjudication of no liability by any Insureds occurs, there is no coverage for the FDIC and CDOB Actions. There is nothing ambiguous about Endorsement No. 4. See, e.g., St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695 (8th Cir. 1992) (collecting cases and finding that a similar regulatory exclusion was both unambiguous and enforceable).

---

[9] The regulatory settlement agreements Plaintiffs entered into, which imposed actual monetary liability upon each Plaintiff, mean that the express condition cannot take place. Nevertheless, Plaintiffs imply that "no liability" should be interpreted to mean "modest" liability. Opp. p. 27. Plaintiffs would have the Court "indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *Schultz v. Hartford Fire Ins. Co.*, 569 A.2d 1131, 1134 (Conn. 1990).

- 8 -

Plaintiffs allege ambiguity by reference to Section III(C) of the Policy, arguing that it imposes a duty to advance Claims Expenses "even if such fees are potentially not ultimately covered under the Policy." *See* Opp. pp. 24-29. That is true for certain exclusions. For example, Exclusion J of the Policy excludes Claims alleging a "willful violation of law," if a final adjudication establishing the willful violation occurs. Prior to that event, Claims Expenses are advanced. But as to the regulatory exclusion, Plaintiffs have it backward: the FDIC and CDOB Actions are entirely excluded, unless and until a final adjudication of no liability occurs.

Plaintiffs ignore the meaning of the phrase "In the event, however . . ." and contend that the only way to reconcile the duty to advance Claims Expenses with the regulatory exclusion is to write the express condition right out of the Endorsement. *See* Opp. p. 26-27. But courts give operative effect to all provisions of the policy. Here, that is accomplished by looking to the phrase in Section III(C) that Plaintiffs overlook: "Subject to Section VII of this Policy . . ."

Section VII provides for allocation between Loss and uncovered loss expressly with regard to Claims Expenses. Moreover, Section VII gives the Insurer the discretion to advance "Claims Expenses which <u>the Insurer believes to be covered</u> under the Policy . . ." In this case, the Insurer properly advised the Insureds of its belief that all loss, including Claims Expenses, from the FDIC and CDOB Actions is uncovered because of the regulatory exclusion.[10]

### B.   Contrary to Plaintiffs' Assertions, the Exclusion Favors Settlement

Plaintiffs argue that, despite the plain meaning of the advancement and allocation provisions, and despite the unambiguous regulatory exclusion, and despite the fact that the terms

---

[10] Plaintiffs' reliance on case law applying the duty to defend is inapposite. As the Opposition admits, the Policy expressly states that the Insurer does not have a duty to defend any Claims. When the duty to advance is subject to allocation between covered and uncovered loss, and such allocation is at the Insurer's discretion, there is no contractual basis to convert the duty to advance to a duty to defend.

of the FDIC and CDOB settlement agreements preclude a "final adjudication of no liability on the part of any Insureds," the Court should find coverage for the FDIC and CDOB Actions because enforcing these Policy provisions disfavors settlements. *See* Opp. p. 28.

In fact, the opposite is true. Many regulatory exclusions are absolute, with no exception for Claims Expenses at all. Those exclusions – and Endorsement No. 4 – encourage early settlement because the Insureds cannot look to insurance for any of their personal liability (including defense costs), no matter the outcome.[11] If insurance were to fund Claims Expenses prior to an adjudication of no liability, the Insureds' incentive would not be to settle with their own money but to litigate using the insurer's money in the hope (however slim) of obtaining an adjudication of no liability. Here, however, the exclusion is absolute except for those Insureds who are so firmly convinced that the regulatory action is baseless that they are willing to utilize their own resources to prove it, confident that they will have their Claims Expenses reimbursed following a final adjudication of no liability.

## CONCLUSION

Plaintiffs failed to provide Hartford with notice of specific Wrongful Acts with sufficient particularity to preserve coverage for any Claims that have been or may be made against them after the Policy Period expired. Moreover, the FDIC and CDOB Actions are entirely excluded from coverage by the regulatory exclusion. Accordingly, Hartford respectfully requests that this Court grant summary judgment in Hartford's favor either in whole or, alternatively, in part as to the FDIC and CDOB Actions on the basis that any Loss from those proceedings is excluded from coverage under the terms of Endorsement No. 4.

---

[11] Plaintiffs themselves argue that because Hartford interpreted the regulatory exclusion to preclude coverage for Plaintiffs' defense of the FDIC and CDOB Actions, it "effectively left the CBC Directors no choice but to settle with the FDIC and CDOB." Opp at p. 30.

Dated: January 31, 2005

Respectfully submitted,

/s/ W. Joe Wilson

W. Joe Wilson (ct22292)
jwilson@tylercooper.com
William H. Champlin III (ct04202)
champlin@tylercooper.com
TYLER COOPER & ALCORN, LLP
185 Aslyum Street
CityPlace/35th Floor
Hartford, CT  06103-3488
(860) 725-6200
Fax (860) 278-3802
*Attorneys for Defendant
Hartford Insurance Company of Illinois*

Of Counsel:   Alan J. Joaquin
Alison M. Jarandeh
DRINKER BIDDLE & REATH
1500 K Street N.W.
Suite 1100
Washington, D.C. 20005
(202) 842-8800
Fax (202) 842-8465

- 11 -

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL ASCHE, STEVEN B. LEVINE, TIMOTHY S. REED, MARCIAL CUEVAS and JACK WILLIAM DUNLAP,<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD INSURANCE COMPANY OF ILLINOIS,<br><br>Defendant. | Case No. 303CV0416 PCD<br><br>**CERTIFICATE OF SERVICE** |

     W. Joe Wilson, an attorney admitted to practice in the United States District Court for the District of Connecticut certifies, pursuant to 28 U.S.C. §1746, under penalty of perjury, that on January 31, 2005, I served the attached Memorandum of Law Supporting Motion for Summary Judgment upon all counsel of record in this action by depositing true copies of the same, each enclosed in a pre-paid envelope, in a depository maintained by the United States Postal Service in the City and State of Connecticut, addressed to the following at the address provided by each for that purpose, to wit:

                       Charles A. Stewart, III
                       Stewart Occhipinti LLP
                       1350 Broadway, Ste. 2200
                       New York, NY 10018

                       Richard P. Weinstein
                       Weinstein & Wisser P.C.
                       29 South Main Street, Suite 207
                       West Hartford, CT 06107

Dated: January 31, 2005

                                                    W. Joe Wilson