UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
MARSHALL ASCHE, STEVEN B. LEVINE, )
TIMOTHY S. REED, MARCIAL CUEVAS and )
JACK WILLIAM DUNLAP, )
)
              Plaintiffs, )
)
  -against- )   Case No. 303CV0416 PCD
)
HARTFORD INSURANCE COMPANY )
OF ILLINOIS, )
)
             Defendant. )
)
---------------------------------------------------------------X

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO HARTFORD'S MOTION FOR SUMMARY JUDGMENT

Dated: October 20, 2004

                                            Respectfully submitted,

                                            By: _____
                                                Charles A. Stewart, III (CT 17452)
                                            cstewart@somlaw.com
                                            STEWART OCCHIPINTI, LLP
                                            1350 Broadway, Suite 2200
                                            New York, New York 10018
                                            (212) 239-5500

                                            and

                                            WEINSTEIN & WISSER, P.C.
                                            Richard P. Weinstein (CT 06215)
                                            29 South Main Street, Suite 207
                                            West Hartford, CT 06107
                                            (860) 561-2628

# **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | |
|   | A. Hartford Received Notice of "Wrongful Acts" By CBC Officers and Directors During the Policy Period | 3 |
|   | B. All Claims Arising From Duly Reported Wrongful Acts Are Deemed to be Claims Made During the Policy Period | 5 |
|   | C. Hartford Received Notice of a "Claim" During the Policy Period | 5 |
|   | D. Within the 60-Day Grace Period Following the Expiration of the Policy, Hartford Received Notice of a "Claim" | 6 |
|   | E. Hartford Has Acknowledged that the FDIC and CDOB Regulatory Proceedings Are Potentially Covered Claims | 8 |
|   | F. Hartford Never Gave the CBC Outside Directors Any "Confidence" That It Would Reimburse Them For Claims Expenses Incurred in any CBC-Related Action | 10 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page

*California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271
(9th Cir. 1990) .................................................................................. 6

*Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162 (2d Cir. 1991) ........ 1

*FDIC v. Continental Casualty Co.*, 796 F. Supp. 1344 (D. Ore. 1991) ............ 6

*Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 U.S. Dist. LEXIS 9159
(S.D.N.Y. May 20, 2004), *aff'd*, 2005 U.S. App. LEXIS 9841
(2d Cir. May 27, 2005) ..................................................................... 10

*Windham Solid Waste Mgmt. v. Nat'l Casualty Co.*,
146 F.3d 131 (2d Cir. 1998) .............................................................. 6

Plaintiffs, Marshall Asche, Steven B. Levine, Timothy S. Reed, Marcial Cuevas and Jack William Dunlap (collectively, the "CBC Outside Directors" or "Plaintiffs"), pursuant to the Court's Ruling on Plaintiffs' Motion to Compel and for a Continuance (the "Decision"), dated September 30, 2005, respectfully submit this supplemental memorandum of law in opposition to the motion of Defendant Hartford Insurance Company of Illinois ("Hartford" or "Defendant") which seeks summary judgment.[1]

## I.  PRELIMINARY STATEMENT

Hartford has pinned its denial of coverage on the false assertion that it was not timely notified of either a "Wrongful Act" or a "Claim," as those terms are defined in the D&O Policy. Not only is Hartford's construction of the Policy a tortured and obvious ploy to evade coverage, it is contradicted by documents in Hartford's own files that Hartford produced to Plaintiffs after Hartford moved for summary judgment. As Plaintiffs previously demonstrated in their papers in opposition to Hartford's motion, on June 26, 2002, five days prior to the expiration of the D&O Policy, Hartford was notified that the Federal Deposit Insurance Corporation ("FDIC") had ordered the immediate dismissal of both CBC's Chairman and President because the FDIC's investigation had revealed, among other things, they there was good reason to conclude that they had committed fraudulent acts involving a $20 million loan. Thereafter, the CBC Outside Directors were named in various lawsuits based on facts comprising the wrongful

---

[1]   The Decision expressly authorized Plaintiffs to "file a cross-motion for summary judgment or any supplemental memoranda in opposition to Defendant's Motion for Summary Judgment." Decision, at 1-2. Plaintiffs note that this Court may sua sponte grant a motion for summary judgment in favor of the non-moving party, just as if a cross-motion for summary judgment had been filed, where, as here, the record is sufficiently developed that the moving party suffers no prejudice as a result of the decision. *See Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

1

conduct noted in the initial notice letter sent to Hartford. Hartford, the insurance company whose D&O Policy was in effect during the relevant period, continuously has declined to provide the CBC Outside Directors with any assurance that its insurance policy may afford coverage for any of the lawsuits arising from the collapse of CBC.

The coverage provided under the D&O Policy that Hartford sold to CBC extends to claims, like those against the CBC Outside Directors, that arise from a common nexus of facts, circumstances, events, transactions, or causes. As previously demonstrated, all of the lawsuits against the CBC Outside Directors stem from the very same allegations of fraudulent conduct, improper loan activities and corporate misgovernance described in papers filed by the FDIC and the Connecticut Department of Banking ("CDOB"), and which Hartford received prior to the expiration of Hartford's D&O Policy. Indeed, one of the civil lawsuits filed against the CBC Outside Directors literally copied verbatim the factual allegations first made by the federal and state regulatory authorities. Moreover, as made clear in documents produced by Hartford that were unavailable when Plaintiffs filed their opposition papers, both within the 60-day reporting period following the expiration of the D&O Policy and thereafter, Hartford received notifications and additional facts demonstrating that its D&O Policy had been triggered to afford coverage for claims against the CBC Outside Directors and others arising from the collapse of CBC. Yet, to date Hartford apparently has not paid a single insurance claim arising from CBC's collapse.

Rather than belabor the Court with a rehearsal of the arguments and facts set forth in Plaintiffs' opposition papers, this supplemental brief is intended to supplement the factual record and briefly address legal authorities cited by the parties.

II. **ARGUMENT**

A. **Hartford Received Notice Of "Wrongful Acts" By CBC Officers And Directors During The Policy Period**

Although Hartford now concedes that persons insured under the D&O Policy had 60 days after the termination of such policy to report a Claim (a fact that Hartford conspicuously chose not to highlight when it responded to CBC's broker on July 26, 2002), it argues: "Plaintiffs' case turns on the sufficiency of the notice of specific Wrongful Acts provided to Hartford before 12:01 a.m. on July 1, 2002." Hartford Reply Br. at p. 5. The significance of Hartford's statement is that it would like the Court to wholly disregard the fact that, on Monday morning, July 1, 2002 at 8:21 a.m., Hartford received a faxed Accord Form from CBC's insurance broker along with newspaper articles providing further details of the Wrongful Acts that precipitated the FDIC's and CDOB's takeover of CBC. Hartford may have received copies of the Accord Form by mail or express courier, other prescribed methods for providing notice, *see* D&O Policy, Section VIII.(C), "Notice," and such notices may have been sent prior to the weekend of June 29-30, 2002. In fact, the two newspaper articles attached to the Accord Form are each dated June 27, 2002.

However, even assuming *arguendo* that the only written notice that Hartford received prior to the termination of the D&O Policy was Mr. Schulman's June 26, 2002 letter attaching the Dismissal Order, a notice letter prepared by CBC's counsel, the law firm of Day, Berry & Howard, LLP, this letter and the attached document gave Hartford

3

adequate notice of a Wrongful Act, as that term is defined in Hartford's D&O Policy.[2] In ordering the immediate dismissal of Randolph Lenz, Chairman of the Board of CBC, and J. Donald Weand, Jr., CBC's President and CEO, the Dismissal Order stated that the FDIC had discovered evidence that Lenz had "engaged in an apparently fraudulent scheme of unlawful and unsound lending whereby he caused or permitted the Bank to purchase another financial institution, MTB Bank, New York, New York ("MTB") ..." Dismissal Order, at ¶ 1(e). The Dismissal Notice further stated:

  a) CBC was a "'critically undercapitalized' insured depository institution as that term is defined in section 38(b)(1) of the Federal Deposit Insurance Act [12 U.S.C. § 1831o(b)(1)]";

  b) Lenz had been previously criticized by the FDIC in its 2001 Report of Examination <u>for causing or permitting CBC to engage in lax, preferential and hazardous lending activities</u> and the FDIC had issued a Cease and Desist Order dated November 30, 2001 against CBC respecting such practices;

  c) Management of CBC under the control of Lenz was "poor" and <u>CBC was in noncompliance with numerous provisions of the November 11, 2001 Cease and Desist Order</u>;

  d) <u>Lenz had accomplished his "scheme" of purchasing MTB "though more than $20 million in loans that [Lenz] caused or permitted [CBC] to make to nominee borrowers and others, including related interests of [Lenz]</u>. That same money was later

---

2   Section IV(O) of the Policy defines "Wrongful Act" as:

> any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, committed or attempted by the Directors and Officers, in their capacity as such, or in an Outside position ...

4

transferred to [Lenz] or his related interests, who transferred it to [CBC] in the form of capital purportedly to satisfy the condition to purchase MTB. The result was that <u>the Bank's capital was inflated by $20 million more than it actually was. [Lenz] subsequently concealed the scheme from FDIC examiners</u>";

e)   The FDIC believed that based on Lenz's and Weand's participation in "fraudulent and hazardous" lending and their previous concealment of such activities from FDIC examiners, there was a "strong potential asset dissipation and the possibility of document destruction."

Simply stated, the Dismissal Order listed specific misrepresentations, omissions, breaches of duties, and unlawful activities on the part of Lenz and Weand, and identified the periods when these acts and omissions occurred. At a minimum, the "Wrongful Acts" listed by the FDIC in the Dismissal Order could be expected to "give rise to a Claim against any Director or Officer." *See* D&O Policy, Section VIII.(A), "Notice."

### B.   All Claims Arising From Duly Reported Wrongful Acts Are Deemed To Be Claims Made During The Policy

Section VIII.(A) of the D&O Policy states that all Claims subsequently arising from a duly reported Wrongful Act (i.e., one that may reasonably be expected to rise to a Claim against an Officer or Director) are deemed to be Claims made during the policy period.

### C.   Hartford Received Notice Of A "Claim" During The Policy Period

Hartford erroneously argues that the Dismissal Order is not a Claim against CBC Officers and Directors for a Wrongful Act reported during the policy period. Section

5

IV(A) of the Policy defines "Claim" as, among other things, a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document" against "Directors and Officers" for a "Wrongful Act." Stewart Exh., "A," Complaint, at P 0043. The June 26, 2002 Dismissal Order – an FDIC order dismissing CBC's Chairman and President because the FDIC had concluded that Lenz and Weand had engaged in fraudulent conduct involving the $20 million purchase of MTB and made misrepresentations to FDIC examiners regarding CBC's loan practices and compliance with the November 30, 2001 Cease and Desist Order – meets the definition of a "Claim" under Hartford's D&O Policy. The cases upon which Hartford relies in its reply papers (Hartford Reply Br. at pp. 3-4) are inapposite because none of them involved an insurance policy in which "claim" was a defined term. In *Windham Solid Waste Management District v. National Casualty Company*, 146 F.3d 131, 134 (2d Cir. 1998), for example, the Second Circuit stated that "the policy contains no formal definition of the term 'claim.'" *See also FDIC v. Continental Casualty Co.*, 796 F. Supp. 1344 (D. Ore. 1991); *California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271, (9th Cir. 1990).

**D.   Within The 60-Day Grace Period Following The Expiration Of The Policy, Hartford Received Notice Of A "Claim"**

The documents produced by Hartford in this action reflect that the following documents (among others) were provided to Hartford prior to or within sixty days of the termination of the D&O Policy:

6

| Document | Description of Document | Location in the Record |
|---|---|---|
| Letter dated June 26, 2002 from Shulman to Hartford | Advising Hartford that members of CBC's Board had met with representatives of the FDIC and CDOB and learned that CBC's directors and officers may be subject to claims for wrongful acts, and attaching a copy of the Dismissal Order. | Exhibit "H" to the Supplemental Affidavit of Charles A. Stewart, III ("Stewart Supp. Exh. "A") |
| Accord notice form dated July 1, 2002 | CBC broker advises Hartford that "D&O-INSURED BANK SHUT DOWN AND SEIZED BY DEPT OF BANKING. FDIC NAMED AS RECEIVER. SEE NEWS ARTICLES, ACTION DIRECTIVE FROM FDIC." CBC broker attaches newspaper articles providing additional facts respecting the occurrence. | Palermini Exh. "7" |
| Letter dated July 11, 2002 from FDIC to Hartford | Notifying Hartford that CBC was closed on June 26, 2002 and that the FDIC had been appointed receiver, and seeking "all documents concerning director and officer liability ("D&O") policies issued to or contemplated for the above-named institution for the last five years." The FDIC specifically requested copies of notices of claims, wrongful acts and potential claims, as well as policies issued to MTB. | Stewart Supp. Exh. "I." |
| Letter dated July 26, 2002 from Hartford to CBC's broker | Acknowledging receipt of Accord form and Schulman letter, reserving Hartford's rights and defenses, and deferring "determination whether the notification letters constitute a Claim and/or otherwise comply with Paragraph VIII of the Policy until such time as additional information is received or action by third parties develops." | Palermini Exh. "8" |

7

| Letter dated August 28, 2002 from Lenz to Hartford | Advising Hartford that "there is a potential claim, by depositors, customers[,] borrowers and others against the directors and officers [of CBC]" arising from the FDIC's takeover of CBC. | Stewart Supp. Exh. "J." |

By the end of August, 2002, Hartford was well aware that the FDIC and CDOB, prior to July 1, 2002, had asserted a "Claim," as that term is defined in the Policy, against certain CBC officers and directors as a result of Wrongful Acts committed during the Policy Period. However, as Darren Schulman testified in his affidavit, Hartford made no effort to contact him regarding his June 26, 2002 notice letter, despite the fact that he continued to work at CBC until December 1, 2002. Schulman Aff., ¶ 4. Indeed, Hartford's post-motion document production demonstrates that Hartford made no effort to contact CBC, the FDIC, CDOB, or anyone else as part of a claims investigation regarding the collapse of CBC. Despite being responsible for the D&O Policy in effect during the period of the FDIC and CDOB's takeover of CBC and while many of the alleged transgressions took place, Hartford's document production indicates that Hartford conducted little, if any claims investigation regarding coverage under the D&O Policy, and it has declined to pay a single claim under its insurance policy.

E. **Hartford Has Acknowledged That The FDIC And CDOB Regulatory Proceedings Are Potentially Covered Claims**

The D&O Policy defines "Interrelated Acts" as "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of casually related connected facts, circumstances, situations, events, transactions or causes." Section VI(D) of the Policy, states that "[a]ll Claims arising out of the same

8

Wrongful Act or Interrelated Wrongful Acts of one or more of the Insureds shall be considered a single Claim. Such Claims shall be deemed to be first made on the date the first Claim is made or deemed to be made pursuant to Section VIII.(A) of this Policy, regardless of whether such date is before or during the Policy Period."

Hartford's post-motion document production reflects that Hartford has taken an inconsistent position regarding the construction of the D&O Policy. In the fall of 2002, attorneys for certain CBC former officers and directors provided Hartford with pleadings in the FDIC and CDOB Regulatory Actions filed after the expiration of the D&O Policy and requested a defense for these actions. *See, e.g.,* Palermini Exhs. "2," "3" and "4." Hartford did not take the position that such claims were not potentially covered, as it did in connection with the Megaler Action, the Bazinet Action and the Threatened Shareholder Action. Instead, in a January 17, 2003[3] response to Glenn Kurtz, an attorney for former CBC Board member Brian Marks, Hartford admitted that the Federal and State Regulatory Actions each constituted a potentially covered "Claim" under the D&O Policy. *See* Stewart Supp. Exh. "K" at p. 7. Hartford advised Mr. Kurtz that his client was required to obtain Hartford's prior written consent before incurring Claims Expenses (which included attorneys' fees and experts fees), and instructed Mr. Kurtz to keep Hartford "advised of the status of the FDIC and State Filings." *Id.* If the Federal and State Regulatory Actions are Claims, then the Megaler Action and the Bazinet Action are Claims. Indeed, the Bazinet Action copied the factual allegations of the Federal Regulatory Action almost verbatim. Compare Palermini Exh. "2" (Notice of Assessment of Civil Money Penalties) with Stewart Exh. "B" (Third-Party Complaint in Bazinet

---

[3] The document from Hartford's files is misdated "January 17, 2002."

9

Action). Similarly, Megaler largely reiterated the FDIC's and CDOB's allegations that the CBC Board had failed to exercise proper corporate governance and permitted the bank to become insolvent. For example, Megaler alleged that CBC's Board of Directors "were aware and had knowledge of CBC Bank's insolvency, at a minimum, from June 23, 2002, and had failed to take steps to properly supervise CBC's employees." Stewart Exh. "A," Complaint, at P 0118-0131.

All of the actions against the CBC Outside Directors arise from Wrongful Acts first reported to Hartford in June, 2002. In its opposition papers, Plaintiffs relied on a district court case that was subsequently affirmed by the United States Court of Appeals for the Second Circuit after the parties filed their papers with the Court: *Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 U.S. Dist. LEXIS 9159 (S.D.N.Y. May 20, 2004), *aff'd*, 2005 U.S. App. LEXIS 9841 (2d Cir. May 27, 2005). *Seneca* provides ample support for Plaintiffs' argument that all the claims against the CBC Outside Directors arise from "a common nexus ... of facts, circumstances, situations, events, transactions or causes" that are set forth in the documents that Mr. Schulman first provided to Hartford prior to the expiration of the D&O Policy. Notably, Hartford did not discuss *Seneca* in its reply brief.

F. **Hartford Never Gave the CBC Outside Directors Any "Confidence" That It Would Reimburse Them For Claims Expenses Incurred In Any CBC-Related Action**

For the reasons set forth in Plaintiffs' opposition papers, the CBC Outside Directors are entitled to reimbursement of the amounts they paid to defend and resolve the Federal and State Regulatory Actions. Indeed, even under Hartford's interpretation of the Regulatory Exclusion, Hartford cannot avoid its coverage obligations and is

required to reimburse Plaintiffs for Claims Expenses associated with the Federal and State Regulatory Actions, because the record reflects that regulatory agencies ultimately concluded that the CBC Outside Directors were innocent of certain conduct comprising Claims.[4]

One statement in Hartford's reply warrants brief comment, however. According to Hartford: "[T]he [Regulatory] exclusion is absolute except for those Insureds who are so firmly convinced that the regulatory action is baseless that they are willing to utilize their own resources to prove it, <u>confident that they will have their Claims Expenses reimbursed following a final adjudication of no liability</u>." Hartford Reply Br. at 10 (emphasis in original). Here, however, as Dr. Levine explains in his affidavit (and as confirmed by Hartford's post-motion document production), Hartford never gave the CBC Outside Directors any reason to be "confident" that Hartford would ever reimburse them for Claims Expenses incurred in <u>any</u> action arising from the collapse of CBC. As Dr. Levine states: "Had Hartford not disclaimed coverage on the grounds that it was not liable for actions against the CBC Outside Directors arising from the collapse of CBC, such as the Megaler Action, the Bazinet Action and the Threatened Shareholder Action, the CBC Outside Directors would have litigated the CDOB and FDIC actions differently with a view to being vindicated for their conduct as CBC Board members." Levine Aff., ¶ 26. Indeed, Hartford refused to participate in the CDOB and FDIC proceedings. Levine Aff., ¶ 19. Contrary to Hartford's argument in its reply brief (Hartford Reply Br. at pp. 9-10), its insurance policy did not promote settlement. What compelled the CBC

---

[4] For example, the FDIC Settlement expressly states that the FDIC had not found that the CBC Outside Directors engaged in fraudulent activities and, in fact, the CDOB and FDIC generally absolved the CBC Outside Directors of wrongful conduct in connection with the collapse of a bank having approximately $97 millions in assets.

11

Outside Directors to settle with the federal and state regulatory authorities was the extraordinary pressure of having to fund all of the CBC-related actions when their insurance company chose to disregard its fiduciary and contractual obligations and provided them no "confidence" that it would ever do anything but contest coverage for claims that its policyholders reasonably expected would be covered.

## III.  CONCLUSION

For the foregoing reasons and those previously expressed, the Plaintiffs respectfully request that Hartford's motion for summary judgment be denied in its entirety.

Dated: October 20, 2005

Respectfully submitted,

By: _____
Charles A. Stewart, III (CT 17452)
cstewart@somlaw.com
STEWART OCCHIPINTI, LLP
1350 Broadway, Suite 2200
New York, New York 10018
(212) 239-5500

and

WEINSTEIN & WISSER, P.C.
Richard P. Weinstein (CT 06215)
29 South Main Street, Suite 207
West Hartford, CT 06107
(860) 561-2628

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------X

MARSHALL ASCHE, STEVEN B. LEVINE,
TIMOTHY S. REED, MARCIAL CUEVAS and
JACK WILLIAM DUNLAP,

                Plaintiffs.

-against-                                                                Dkt. No. 3:03cv416 (PCD)

HARTFORD INSURANCE COMPANY
OF ILLINOIS,                                                         **CERTIFICATE OF SERVICE**

                Defendant.

-------------------------------------------------------------X

      Charles A. Stewart, III, an attorney admitted to practice in the United States District Court for the Southern District of New York and admitted pro hac in the United States District Court for the District of Connecticut in the above action, certifies, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that on October 20, 2005, in addition to service by email, I served the attached *Plaintiffs' Supplemental Memorandum of Law In Opposition to Hartford's Motion for Summary Judgment* upon all counsel of record in this action by depositing true copies of the same, each enclosed in a pre-paid envelope, in a depository maintained by the United States Post Office in the City and State of New York, addressed to the following at the address provided by each for that purpose, to wit:

                Alan J. Joaquin, Esq.
                Drinker Biddle & Reath, LLP
                1500 K Street N.W.
                Suite 1100
                Washington, D.C. 20005-1208

                W. Joe Wilson
                Tyler Cooper & Alcorn, LLP
                185 Asylum Street
                Hartford, CT 06103-3488

Dated: October 20, 2005

                                                  _____
                                                  Charles A. Stewart, III