UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

MARSHALL ASCHE, STEVEN B. LEVINE,      )
TIMOTHY S. REED, MARCIAL CUEVAS and    )
JACK WILLIAM DUNLAP,                    )
                                        )
                 Plaintiffs.         )
                                        )
                                        )    Case No. 303CV0416 PCD
   -against-                           )
                                        )
HARTFORD INSURANCE COMPANY              )
OF ILLINOIS,                            )
                                        )
                Defendant.          )
                                        )

-------------------------------------------------------X

## SUPPLEMENTAL CERTIFICATION OF CHARLES A. STEWART, III IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     CHARLES A. STEWART, III, an attorney admitted to practice law, certifies, pursuant to 28 U.S.C. § 1746, under penalty of perjury, as follows:

     1.     I am a member of Stewart Occhipinti, LLP, co-counsel along with Weinstein & Wisser, LLP for Marshall Asche, Steven B. Levine, Timothy S. Reed, Marcial Cuevas and Jack William Dunlap, the Plaintiffs in the above captioned action. Pursuant to the Court's Ruling on Plaintiffs' Motion to Compel and for a Continuance, dated September 30, 2005, I respectfully submit this Supplemental Certification in opposition to the motion of Defendant Hartford Insurance Company of Illinois ("Hartford") for summary judgment.

2.     I personally reviewed the documents that Hartford produced in response to Plaintiffs' First Request for Production of Documents. I did not observe a single document reflecting that Hartford has paid any Claims arising from the collapse of CBC.

## EXHIBITS

3.     Attached hereto as Exhibit "H" is a true and accurate copy of a Letter dated June 26, 2002 from Darren Schulman to Hartford produced in Hartford's document production.

4.     Attached hereto as Exhibit "I" is a true and accurate copy of a Letter dated July 11, 2002 from the FDIC to Hartford. No further communications between the FDIC and Hartford were contained in Hartford's document production. No communications between the CDOB and Hartford were contained in Hartford's document production.

5.     Attached hereto as Exhibit "J" is a true and accurate copy of a Letter dated August 28, 2002 from Randolph Lenz to Hartford. No other communications between Lenz and Hartford were contained in Hartford's document production.

6.     Attached hereto as Exhibit "K" is a true and accurate copy of a Letter dated January 17, 2003 between Glenn Kurtz, Esq., an attorney for former CBC Board member Brian Marks, and Hartford.

Dated: October 20, 2005

_____
Charles A. Stewart, III

# EXHIBIT H



**C B C**

**Connecticut Bank o:**
90 Broad Street • New Yor]
Tel. (212) 858-3389   Fax

:TS

**DARREN SCHULMAN**
Executive Vice President
Chief Operating Officer

The Hartford
Hartford Plaza
Hartford, CT  06115

Attention:    D&O Claims

Re:    Connecticut Bank of Commerce/Policy # NDA0200230-01

Ladies and Gentlemen

     I write to provide you with notice in connection with the above-referenced policy.

     It has come to the attention of Connecticut Bank of Commerce (the "Insured") that its directors and officers, including but not limited to its Chairman Randolph W. Lenz and its President and CEO J. Donald Weand, Jr., may be subject to claims for wrongful acts.  The Insured learned about this matter on Tuesday, June 25, 2002, when it directors and senior management met with representatives of the Federal Deposit Insurance Corporation ("FDIC") and the State of Connecticut Banking Department.  Attached to this letter is the Prompt Corrective Action Directive Ordering Dismissal issued by the FDIC on June 25, 2002, which describes the information that the Insured has obtained at this point in time.

     Please do not hesitate to contact me if you have any questions or need additional information.  I can be reached at (212) 858-3389.

Very truly yours,

Darren Schulman    EVP.

Enclosure                                                                         CBC 000850

---

**Branches**

| | | | | |
|---|---|---|---|---|
| **Stamford Executive Offices** | **Woodbridge** | **Branford** | **Time Warner Building** | **New York** |
| 612 Bedford Street | 128 Amity Road | 620 West Main Street | 75 Rockefeller Plaza | 90 Broad Street |
| Stamford, CT 06901 | Woodbridge, CT 06525 | Branford, CT 06405 | New York, NY 10019-6908 | New York, NY 10004-2290 |
| Tel. (203) 708-8850 | Tel. (203) 392-2334 | Tel. (203) 488-6801 | Tel. (212) 314-9800 | Tel. (212) 858-3300 |
| Fax (203) 977-8372 | Fax (203) 392-2338 | Fax (203) 488-5761 | Fax (212) 314-9888 | Fax (212) 858-3449 |

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of )<br><br>CONNECTICUT BANK OF COMMERCE )<br>STAMFORD, CONNECTICUT )<br><br>(INSURED STATE NONMEMBER BANK) )<br> ) | PROMPT CORRECTIVE<br>ACTION DIRECTIVE<br>ORDERING DISMISSAL<br><br>FDIC-02-101 PCAD |

Connecticut Bank of Commerce, Stamford, Connecticut ("Bank"), is a "critically

undercapitalized" insured depository institution as that term is defined in section 38(b)(1) of the

Federal Deposit Insurance Act ("Act"), 12 U.S.C. § 1831o(b)(1), and section 325.103 of the

Federal Deposit Insurance Corporation ("FDIC") Rules and Regulations, 12 C.F.R. § 325.103.

Capital levels reflected in the Bank's Reports of Condition and Income as of March 31, 2002,

which represented the Bank as "adequately capitalized," when adjusted by preliminary results of

a joint examination of the Bank conducted by the FDIC and the State of Connecticut as of April

1, 2002, result in a ratio of tangible equity capital to total assets that equals negative 1.94

percent, thus rendering the Bank "critically undercapitalized" for purposes of the prompt

corrective action provisions of the Act.

1. The FDIC has determined that the continued employment of Randolph W. Lenz

("Respondent Lenz"), would not materially strengthen the Bank's ability to become adequately

capitalized. This is based upon the finding that:

CBC 000851

2

(a) Since 1992, Respondent Lenz has been Chairman of the Bank's Board, the majority shareholder of the Bank, and is currently a member of the Bank's Board Compensation and Credit Committees. He has been previously criticized by the FDIC in its 2001 Report of Examination ("2001 Exam Report") for causing or permitting the Bank to engage in lax, preferential and hazardous lending activities, and it is evident that the volume of loans with undue risk he has referred and continues to refer to the Bank has resulted in severe asset quality problems that have ultimately resulted in the Bank's insolvency.

(b) The 2001 Exam Report cited loan administration weaknesses, credit underwriting deficiencies and a lack of adherence to prudent credit policy guidelines and other weaknesses in controls and procedures necessary to guard against an elevated level of loan risk. These weaknesses resulted in the Bank stipulating to the issuance by the FDIC of a Cease-and-Desist Order dated November 30, 2001, to correct such practices including addressing credit administration weaknesses, revising the Bank's Credit Policy, reducing concentrations of credit, and reducing the volume of adversely classified and criticized loans.

(c) Management of the Bank under the control of Chairman Lenz is poor. Weak risk management practices in many areas of Bank supervision are evident. Despite being warned of loan administration weaknesses, Respondent Lenz has continued to cause or permit the Bank to approve or allow renewal of loans despite the fact that prudent underwriting, effective administration, or adequate oversight appears absent. The findings of the 2002 examination of the Bank indicate that the Bank is in noncompliance with numerous provisions of the November 30, 2001 Cease and Desist Order. The amount of adversely classified loans as of the 2002 examination is $97,584,000.

CBC 000852

3

(d) An example of such hazardous lending is a credit relationship to finance gaming operations in Latin American countries which was referred to the Bank by Mr. Lenz. This relationship originated on November 8, 2000 as a line-of-credit in the amount of $250,000, but was amended and restated eleven times. Another line-of-credit was added on December 1, 2001, for $1,125,000 for a sale-leaseback arrangement where the Bank purchased gaming equipment (slot machines) located in Panama. Since origination this credit relationship has grown to $3,795,000. Origination and administration of the loan has been accomplished in a manner contrary to the Bank's Credit Policy. Among other things, repayment of these loans is solely dependent on the successful operation of gambling facilities in Latin America, which have yet to show a profit; the working capital line has been continually renewed with additional advances to fund accrued interest, expenses, and cover operating losses; at each renewal/extension and advance of funds Bank management has capitalized the accrued interest; collateral coverage is weak and since the activities are outside the jurisdiction of the US, collecting or liquidating this loan would be difficult.

(e) The FDIC has discovered evidence that during the period beginning the first quarter of 2000, Respondent Lenz engaged in a apparently fraudulent scheme of unlawful and unsound lending whereby he caused or permitted the Bank to purchase another financial institution, MTB Bank, New York, New York ("MTB"), with $20 million of the Bank's own existing funds instead of through the infusion of $20 million in new Tier I capital, including not less than $10 million in common stock, as was required by the FDIC as a condition to the acquisition. Respondent Lenz represented to the FDIC that he would contribute of $20 million of his own outside funds to purchase common and noncumulative perpetual preferred stock. This scheme was accomplished through more than $20 million in loans that Respondent caused or permitted

CBC 000853

4

the Bank to make to nominee borrowers and others, including related interests of Respondent Lenz. That same money was later transferred to Respondent Lenz or his related interests, who transferred it to the Bank in the form of capital purportedly to satisfy the condition to purchase MTB. The result was that the Bank's capital was inflated by $20 million more than it actually was. Respondent Lenz subsequently concealed the scheme from FDIC examiners.

(f) While he has provided capital contributions in the past, the apparent fraudulent activities described above that resulted in at least $20,000,000 of such contributions being obtained through loans by the Bank itself, rather than independently from Respondent Lenz, draws into serious question his ability to provide future capital contributions in a quantity sufficient to assure the future viability of the Bank.

2. The FDIC has also determined that the continued employment of J. Donald Weand, Jr. ("Respondent Weand") would not materially strengthen the Bank's ability to become adequately capitalized. This is based upon the finding that:

(a) Respondent Weand has been President and Chief Executive Officer of the Bank since May 1999. He also served at various times as Senior Vice President, Chief Lending Officer and Chief Operating Officer at the Bank since 1996, and currently serves as a member of the Bank's Management, Risk Management, and Asset and Liability Committees. Respondent Weand has demonstrated no ability to restore a troubled institution to a safe and sound condition and the financial condition of the Bank has deteriorated under Mr. Weand's management, falling from a "3" rated composite bank to a currently insolvent "5" rated institution.

(b) Respondent Weand was responsible for and was the originating officer for many of the loans that were involved in the scheme described in paragraph 1(e) above, the proceeds of which were used to purchase MTB.  He has caused or permitted the Bank to engage in lax

5

underwriting and preferential and hazardous lending activities described in paragraph 1(b)

through (d), above. As President and Chief Executive Officer, Mr. Weand has also been

responsible for allowing poor underwriting practices to continue.

(c) Respondent Weand's direction of the Bank has also strongly contributed to weak risk

management practices in many areas of Bank supervision which will result in noncompliance

with numerous provisions of the November 30, 2001 Cease and Desist Order, as determined in

the FDIC/State 2002 Joint examination.

Furthermore, the FDIC has reason to believe that at present, Respondents Lenz and

Weand continue to cause the Bank to originate risky loans and that, unless Respondents are

dismissed, such transactions could be similarly repeated, and could further weaken the condition

of the Bank, and/or otherwise prejudice the interests of the depositors. The FDIC also has reason

to believe that based upon Respondents' participation in apparent fraudulent and hazardous

lending described above, and their previous concealment to examiners, there is a strong potential

asset dissipation and the possibility of document destruction.

Therefore, the FDIC finds it necessary, in order to carry out the purposes of section 38 of

the Act, to issue this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING

DISMISSAL without providing notice as set forth in section 308.201(a)(1) of the FDIC's Rules

of Practice and Procedure, 12 C.F.R. § 308.201(a)(1), and hereby issues the PROMPT

CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL pursuant to section 38 of the

Act, 12 U.S.C. §1831o, and section 308.201(a)(2) of the FDIC's Rules of Practice and

Procedure.

## PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL

IT IS HEREBY DIRECTED that the Bank shall dismiss from office Randolph W. Lenz,

CBC 000855

6

Chairman of the Board and J. Donald Weand, Jr., President and Chief Executive Officer of the Bank. IT IS FURTHER DIRECTED that this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall become effective and enforceable immediately upon its receipt by the Bank.

Each provision of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL shall be binding upon the Bank, its directors, officers, employees, agents, successors, assigns, and other institution-affiliated parties of the Bank.

The Bank may file a written appeal of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL within fourteen (14) calendar days from the date of issuance of this directive as provided in section 308.201(a)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.201(a)(2

Within ten (10) calendar days from receipt of a copy of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING DISMISSAL as required by section 38(n) of the Act, 12 U.S.C. § 1831o(n), and 308.203(a) of the FDIC's Rules of Practice and Procedures, 12 C.F.R. § 308.203(a), Respondents Lenz and Weand may each file a written request for reinstatement pursuant to section 308.203(b) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.203(b). Within such written response each Respondent may request an informal hearing before the FDIC under section 308.203(b)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. § 308.203(b)(2). If either Respondent desires to present oral testimony or witnesses at

CBC 000856

7

the hearing, he shall include a request to do so with the request for an informal hearing, and such

request shall specify the names of the witnesses and the general nature of their expected

testimony.

The appeal and any request for reinstatement shall be filed with Patrick J. Rohan,

Regional Director, or his successor, Federal Deposit Insurance Corporation, 15 Braintree Hill

Office Park, Suite 100 Braintree, Massachusetts 02184.  Copies of all papers filed in this

proceeding shall be served upon the Office of the Executive Secretary, Federal Deposit Insurance

Corporation, 550 17th Street, N.W., Washington, D.C. 20429, Michael J. Zamorski, Director,

Division of Supervision, Federal Deposit Insurance Corporation, 550 17th Street, N.W.,

Washington, D. C. 20429, A.T. Dill,  III, Senior Counsel, Legal Division, Compliance and

Enforcement Section, Federal Deposit Insurance Corporation, 550 17th Street, N.W.,

Washington, D. C. 20429, and upon David Schecker, Regional Counsel (Supervision), Federal

Deposit Insurance Corporation, 15 Braintree Hill Office Park, Suite 100 Braintree, Massachusetts

02184.

Each provision of this PROMPT CORRECTIVE ACTION DIRECTIVE ORDERING

DISMISSAL shall remain effective and enforceable except to the extent that, and until such time

as, any provision shall be modified, terminated, suspended, or set aside by the FDIC.

Pursuant to delegated authority.

Dated at Washington, D.C., this 25th day of June, 2002.

Michael J. Zamorski, Director
Division of Supervision
Federal Deposit Insurance Corporation

CBC 000857

(FRI) DEC 13 2002 14:47
DB&R LLP 202-842-8465

| DOCUMENT # | TIME STORED | TIME SENT | DURATION | PAGE(S) | MODE | RESULT |
|---|---|---|---|---|---|---|
| 4860129-711 | 12.13 14:43 | 12.13 14:43 | 3'19" | 9 | ECM | OK |

| DESTINATION | DST. TEL # |
|---|---|
| 220#12126290075# | 8832#181220#12126290075# |



# DrinkerBiddle&Reath
L L P

Suite 1100
1500 K Street, N.W.
Washington, D.C. 20005-1209
☐ 202-842-8800

## FACSIMILE INFORMATION SHEET

TO: John Janiec, Esq.   FROM: Alan Joaquin   DIRECT DIAL: 202-842—8832

DATE: December 13, 2002   DOCUMENT NAME:

NUMBER OF PAGES: INCLUDING COVER   9

TELEPHONE NUMBER:   FAX NUMBER: 212-629-0075

IF YOU DO NOT RECEIVE THIS FAX DOCUMENT IN ITS
ENTIRETY, PLEASE CALL THE OPERATOR AT (202-842-8800)

DB&R FACSIMILE MACHINES

202-842-8465/66

Message: **Dear Mr. Janiec: Attached is the letter you requested.**

CBC 000858

Client/Matter No.: 181220

☐ Original will not follow:



# DB&R

## DrinkerBiddle&Reath
### L L P

Suite 1100
1500 K Street, N.W.
Washington, D.C. 20005-1209
☐ 202-842-8800

## FACSIMILE INFORMATION SHEET

| | | | DIRECT DIAL: | 202-842—8832 |
|---|---|---|---|---|

TO: John Janiec, Esq.       FROM: Alan Joaquin

DATE: December 13, 2002      DOCUMENT NAME:

NUMBER OF PAGES: INCLUDING COVER   9

TELEPHONE NUMBER:          FAX NUMBER: 212-629-0075

IF YOU DO NOT RECEIVE THIS FAX DOCUMENT IN ITS
ENTIRETY, PLEASE CALL THE OPERATOR AT (202-842-8800)

DB&R FACSIMILE MACHINES

202-842-8465/66

Message: **Dear Mr. Janiec:  Attached is the letter you requested.**

Client/Matter No.:181220

☐ Original will not follow

☐ Original will follow via:   ☐ Regular Mail   ☐ Overnight Delivery   ☐ Hand Delivery   ☐ Other: _____

The pages which follow are confidential and/or privileged.  They are intended solely for the person to whom this cover sheet is addressed.  Any review, reproduction or retransmission of such material by any person other than such addressee is unauthorized.  If this cover sheet and the pages which follow have been received at your location in error, please notify the operator by telephone (collect) at the number set forth above and return the material U.S. First-Class Mail without inspection.  We will reimburse your postage.  Thank you for your cooperation.

CBC 000859

NS

EXHIBIT I

**Federal Deposit Insurance Corporation**
Washington, DC 20429

Legal Division

550 17th Street, NW
July 11, 2002

nARTFORD FINANCIAL PRODUCTS

REC'D    JUL 1 9 2002

**CLAIMS**
**LAW DEPARTMENT**

JUL 1 4 '02

**RECEIVED**

**BY CERTIFIED MAIL—RETURN RECEIPT REQUESTED**

Hartford Insurance Company of Illinois
Hartford, GT. O6115
ATTENTION: D&O Claims
ATTENTION: Financial Products Underwriters

Subject:       Connecticut Bank of Commerce
               Stamford, Connecticut #4656
               Directors, Officers, and Company Liability
               Policy Number NDA0200230-01

To Whom it May Concern:

As you may be aware, on June 26, 2002, Connecticut Bank of Commerce, Stamford, Connecticut ("CBC") was closed, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. Our records show that Directors, Officers, and Company Liability Policy Number NDA0200230-01 was in effect at the time of failure.

The FDIC is in the process of collecting and evaluating materials relating to director and officer liability policies. Please forward a complete copy of all documents issued to or contemplated for the above-named institution for the last five years. For example, in addition to all correspondence of any type, to or from you or your agents and anyone else concerning any D&O policy, we would like to receive copies of any policies themselves, proposals, applications, requests for renewal, notices of termination or cancellation, any notices of claim (including, for example, of potential claim or wrongful acts), any notices alleging coverage under a policy, and any documentation or correspondence related to any of these matters. (We are also interested in policies issued to MTB Bank, New York, New York. If you have any information concerning such policies, please let me know.)

I will be the attorney for the FDIC in this matter, and all correspondence and inquiries related to director and officer liability policies should be directed to me. Please forward this letter to any person who should receive it, and let me know if there is anyone whom I should specifically contact.

CBC 001033

Page 2

Please let me know if you have any questions, and thank you very much for your prompt attention to this matter.

Yours truly,

Katharine H. Haygood
Counsel
202-736-0537

cc:    Kent Hess
       Investigations Specialist

CBC 001034

EXHIBIT J

RANDOLPH W. LENZ
30 COMPASS POINT
FT. LAUDERDALE, FLORIDA 33308

HARTFORD FINANCIAL **PRODUCTS**

REC'D · SEP 1 3 2002

August 28, 2002

**CLAIMS**

The Hartford
Hartford Plaza
Hartford, CT 06115
Attention: D&O Claims

Re: Policy Number NDA0200230-01 held by Connecticut Bank of Commerce

To Whom It may Concern:

Please be advised that the undersigned was Chairman of the Board of Connecticut Bank of Commerce ("CBC"). CBC was the insured under policy number NDA0200230-01. The FDIC was appointed the receiver of CBC by the Superior Court of the Judicial District of Hartford Connecticut upon an ex parte application for the appointment of a receiver by the Connecticut Commissioner of Banking on June 26, 2002. The Commissioner's affidavit accompanying the ex-parte application set forth the Commissioner's belief that CBC was in an unsafe and unsound condition.

As a result of the aforementioned actions, there is a potential claim, by depositors, customers borrowers and others against the directors and officers, including the undersigned, as Chairman of the Board of CBC.

As a condition precedent to coverage under the policy, The Hartford must be made aware of any claims, real or actual. Therefore, please allow this letter to serve as notice to The Hartford of the potential for future claims against the undersigned.

Sincerely,

Randolph W. Lenz

CBC 001024

EXHIBIT K

# DrinkerBiddle&Reath
### L L P

Alan J. Joaquin
202-842-8832
alan.joaquin@dbr.com

*Law Offices*

1500 K Street N.W.
Suite 1100
Washington, DC
20005-1209

202-842-8800
202-842-8465 fax
www.dbr.com

PHILADELPHIA
WASHINGTON
BERWYN
NEW YORK
LOS ANGELES
SAN FRANCISCO

inkerBiddle&Shanley LLP
PRINCETON
FLORHAM PARK

January 17, 2002

VIA FACSIMILE

Glenn M. Kurtz, Esq.
White & Case
1155 Avenue of the Americas
New York, NY  10036-2787

RE:  Insurer:   Hartford Insurance Company of Illinois
     Insured:   CBC
     Claim:     Megaler v. Lenz, et al.
     Policy No.: NDA 0200230-01

Dear Mr. Kurtz:

We represent The Hartford Insurance Company of Illinois ("Hartford") in connection
with the above-referenced claim presented under the Directors and Officers Liability
Policy No. NDA 0200230-01 issued to CBC (the "Policy"). We have reviewed your
correspondence dated December 4, 2002 and attachments thereto, including the FDIC
Notice of Assessment of Civil Money Penalties (the "FDIC Filing") and the State of
Connecticut, Department of Banking's Notice of Intent to Impose Civil Penalties and
Notice of Right to Hearing (the "State Filing").

The purpose of this letter is to provide you with Hartford's initial views of the allegations
set forth in the FDIC and State Filings in light of the terms of the Policy. Hartford's
views are necessarily based upon the unsubstantiated allegations of the Filings and do not
reflect an independent assessment of the merits of the claim. We do not intend to suggest
that there is any merit to such allegations.

We direct this letter to you as the authorized representative of the persons and entities
covered under the Policy. If you are not acting on behalf of these individuals and entities
with respect to insurance matters, please forward a copy of this letter to those individuals
and entities or to their insurance representative.

## THE POLICY

As we previously advised you in connection with another matter, Hartford issued the
Policy to CBC with a Policy Period of July 1, 2001 to July 1, 2002. The Policy has a
Limit of Liability of $5,000,000, subject to a $200,000 Retention under Insuring
Agreements B and C. The Policy **does not provide for a duty to defend any Director**

*Established
1849*

DC\368905\3

CBC 000839

DrinkerBiddle&Reath

Glen M. Kurtz, Esq.
January 17, 2002
Page 2

**or Officer.** Rather, the Policy provides that it is the duty of the Insureds to defend any Claim.

We also note that the Endorsement No. 4 to the Policy excludes from coverage any Claim made against the Directors and Officers . . . brought by or on behalf of the Resolution Trust Corporation, Office of Thrift Supervision, Federal Deposit Insurance Corporation, the Comptroller of the Currency, or similar federal or state supervisory or regulatory authority. Endorsement No. 4 also provides that in the event a judgment or other final adjudication establishing no liability on the part of any Insured for any Claims which would otherwise be excluded by the terms of Endorsement No. 4, Hartford agrees that otherwise covered Claims Expenses above the applicable Retention and up to a Limit of Liability of $2.5 million shall not be excluded from coverage by reason of Endorsement No. 4.

## SUMMARY OF THE CLAIM

### A. The FDIC Filing

#### 1. The MTB Transaction and 3/22 Loans

The FDIC Filing dated November 22, 2002, is captioned *In the Matter of: Randolph W. Lenz, J. Donald Weand, Jr., Marcial Cuevas, Jack W. Dunlap, Steven B. Levine, Brian A. Marks, and Marshall C. Asche, individually and as former institutio-affiliated parteis of Connecticut Bank of Commerce, Stamford, Connecticut,* Case Nos. FDIC-02-174e; FDIC-02-158e; FDIC-02-160c&b; FDIC-02-161c&b; FDIC-02-175k; FDIC-02-176k; FDIC-02-177k; FDIC-02-178k; FDIC-02-179k; FDIC-02-180k; FDIC-02-181k; FDIC-02-182k.

According to the FDIC Filing, in August 1992, Respondent Lenz acquired more than 80% of the common stock of CBC. Throughout the time during which the transactions at issue occurred, CBC allegedly operated under either an FDIC Memorandum of Understanding dated March 23, 1999 or a Cease and Desist Order issued by the FDIC on November 30, 2001 ("C&D").

It is alleged that on August 4, 1999 – following discussions with the FDIC – CBC submitted an application to the FDIC for permission to purchase substantially all of the banking assets and to assume the deposits and certain liabilities of MTB Bank in New York. The FDIC indicated that it would approve the transaction but only if CBC increased its Tier 1 Capital by not less that $20 million (the "Capital Injection"). Ultimately, the FDIC approved the transaction because Lenz and others represented to the FDIC that the required Capital Injection would be satisfied by Lenz using his personal

CBC 000840

DrinkerBiddle&Reath
L L P

Glen M. Kurtz, Esq.
January 17, 2002
Page 3

assets to fund his purchase of $10 million of CBC common stock and $10 million of CBC preferred stock.

The FDIC now alleges that Lenz did not use his own personal assets to satisfy the Capital Injection requirement as he had represented. Rather, it is alleged that Lenz engaged in an improper "straw" or nominee loan scheme. To facilitate that scheme, it is alleged that on March 22, 2000, CBC's Board of Directors and its Credit Committee held a joint meeting, during which Weand orally presented for approval certain loans to be issued to Lenz's social acquaintances and/or business associates (the "Straw Borrowers").

According to the FDIC Filing, all of the loans and credit facilities presented at the 3/22 Meeting, plus five loans and facilities that Weand caused to be made without board or credit committee approval (the 3/22 loans), were issued to the Straw Borrowers. The Straw Borrowers, in turn, allegedly "turned over" the loan proceeds to Lenz, either directly or through CBC Investment Partnership ("CBCIP"), an entity referred to in the FDIC Filing simply as "a related interest of Respondent Lenz." The proceeds were allegedly used to fund the purchase of $20 million in CBC common and preferred stock to purportedly satisfy the FDIC's Required Capital Injection.

It is further alleged that on March 5, 2001, during the joint FDIC/State of Connecticut Department of Banking examination, Lenz wrongfully denied that the 3/22 Loan Proceeds were the source of funds used to satisy the FDIC's Capital Injection requirement.

Based on the foregoing, it is alleged the Capital Injection, a written condition of the FDIC's approval of the MTB Transaction, was never satisfied. In addition, it is alleged that the transactions violated Generally Accepted Accounting Principles and the FFIEC's Instructions for the Preparation of Consolidated Reports of Condition and Income ("Call Report Instructions"). These principles and instructions required CBC to deduct from its capital account any capital contributions that were funded by CBC Loans. Because this was not done, the Call Reports (required to be filed by CBC with the FDIC) are alleged to have been materially inaccurate and falsified under the direction and/or with the consent of Lenz and/or Weand.

### 2. The 6/21 Loans

The FDIC Filing also alleges that in June 2000, CBC had loans or other credit facilities outstanding to National Pallet Leasing Systems, LLC ("NPLS"), who did not have the financial capacity to repay these loans. Because the loans and facilities were delinquent, CBC could not dispose of them. Accordingly, it is alleged that Lenz and Weand

CBC 000841

DrinkerBiddle&Reath
L L P

Glen M. Kurtz, Esq.
January 17, 2002
Page 4

implemented another straw or nominee loan scheme to make them appear current so that they could be sold.

In furtherance of the scheme, it is alleged that the Peachtree Group, LLC ("Peachtree") was formed by F. Ross Walpole (the indirect owner of NPLS) and his wife as agents for Lenz. The Credit Committee then met on June 21, 2000 and approved seven loans totaling about $11.25 million (6/21 Loans) to entities alleged to be controlled by Lenz, his adult children or his business associates. In recommending the loans, it is alleged that Weand falsely represented to the Credit Committee that their proceeds would be used as working capital or as commercial mortgages. Ultimately, the loans were approved at the 6/21 meeting despite the fact they allegedly exhibited "more than the normal risk of repayment and/or other unsafe or unsound characteristics."

Once disbursed, it is alleged that $5 million of the 6/21 Loan Proceeds were transferred to Peachtree and used to purchase from CBC "a 100% participation in the majority of the NPLS Loans."[1] Then, on December 18, 2001, the Walpoles transferred to Lenz the interest in Peachtree. It is alleged that because CBC was able to dispose of the previously delinquent NPLS Loan, CBC's condition appeared in the Bank's June 30, 2000 Call Reports to be materially better than it actually was and that CBC was meeting certain provisions of the MOU, when it in fact was not.

### 3. Additional Loans

In and after March 2000, it is alleged that additional loans or loan modifications (the "Additional Loans") were made by CBC to one or more of the 3/22 Straw Borrowers and/or others. A portion of the proceeds from the Additional Loans were allegedly used by CBCIP to pay interest due on the 3/22 and 6/21 Loans. Other portions of the proceeds allegedly were used to provide operation funds to Lenz and his other entities.

According to the FDIC, Lenz referred the Additional Related Loans to CBC and caused them to be issued while knowing they would not be used for their stated purposes. Similarly, it is alleged that Weand orally presented many of the Additional Loans to CBC's Credit Committee and recommended that they be approved while being aware that they were poorly underwritten, violated the Bank's loan policy or exhibited other unsafe or unsound characteristics.

---

[1] At the time the 6/21 Loans were approved, Weand allegedly knew of their fraudulent nature, but did not disclose it to the Credit Committee Members.

CBC 000842

DrinkerBiddle&Reath
ᴸᴸᴾ

Glen M. Kurtz, Esq.
January 17, 2002
Page 5

### 4. The 6/23 Meeting

Finally, it is alleged that in June 2002, the FDIC and State examiners (the "Regulators") informed CBC that they planned to hold meetings with CBC's management and its Board of Directors on June 24, and 25, 2002. Accordingly, the FDIC alleges that prior to June 23, 2002, Lenz and Weand were aware that the results of the 2002 Examination were likely to show a severe deterioration in CBC's condition and that there was a possibility that the Regulators might restrict CBC's ability to extend credit.

Therefore, on June 23, 2002, a Sunday evening, CBC's Board of Directors allegedly held a meeting by telephone. Respondents Lenz, Weand, Cuevas, Dunlap, Levine, Reed and Asche are alleged to have participated. During that meeting a number of one-year extensions of maturity on loans to individuals and entities closely associated with Lenz were presented to and approved by the Board (the "6/23 Extensions"). The 6/23 Extensions were allegedly approved upon oral presentations only. In addition, it is alleged that two new large structured finance proposals totaling $11.5 million (the 6/23 New Loans") were presented to and approved by the CBC Board of Directors at the meeting. According to the FDIC, all the 6/23 Extensions and Loans violated the C&D and exhibited numerous unsafe and unsound characteristics.

Based on the above-described conduct, Lenz and Weand, and the fact that each of the other Respondent Directors are alleged to have taken part in approving the loans and extensions at issue despite the fact "that circumstances existed in connection with each of these loans [and extensions] that should have caused the Respondent Directors to question their propriety," the FDIC Filing provides notice of the following:

1) Notice To Prohibit From Further Participation in the conduct of the affairs of any insured depository institution against Lenz and Weand. This charge is based on allegations that Lenz and Weand: violated laws, rules, regulations, cease and desist orders and conditions imposed by Regulators; and engaged in unsafe or unsound practices and breaches of fiduciary duty. The Notice also alleges that "by reason of the violations, unsafe or unsound practices and breaches of fiduciary duty": (a) CBC has suffered or will suffer loss or damage; (b) "Respondent Lenz and Respondent Weand have received financial gain or benefit;" and (c) such transactions "involve [their] personal dishonesty."

2) Notice of Charges for Orders of Restitution against Lenz and Weand. This Notice alleges that Lenz was unjustly enriched in the amount of at least $20 million in this matter and that he and Weand caused or were primarily responsible for causing CBC to issue loans having a present aggregate unpaid balance of at least $34 million.

CBC 000843

DrinkerBiddle&Reath
L L P

Glen M. Kurtz, Esq.
January 17, 2002
Page 6

3) Notice of Assessment Of Civil Money Penalties, Findings of Fact and Conclusions of Law against all Respondents alleging that each of them knowingly violated law and/or regulations and "knowingly and/or recklessly caused a substantial pecuniary gain or other benefit by reason of such acts."

4) Order To Pay Civil Money Penalties for the conduct described in the FDIC Filing. The FDIC asserts that these penalties should be in the amounts of $2 million and $1 million respectively for Lenz and Weand and that the other Respondent Directors be assessed fines of either $500,000 (Cuevas, Dunlap and Levine) or $250,000 (Reed, Marks and Asche).

5) Notice Of Hearing scheduled no less than 60 days from the date of service of the FDIC Filing. The purpose of the hearing is to take evidence on the charges asserted in the filing and to determine whether a permanent order should be issued to prohibit Lenz and Weand from further participating in the conduct of the affairs of any insured depository institution without the prior consent of the FDIC. The Notice of Hearing also states that if the Respondents fail to request a hearing regarding the Penalties imposed, the penalty assessed in the FDIC Filing will be final.

**B. The State Filing**

It appears that on or about November 20, 2002, the State of Connecticut, Department of Banking (the "State") served notice upon Respondent Marks of the State's intent to Impose Civil Penalties upon him. The State alleges that the penalties are based upon Mark's involvement with the MTB Transaction and 3/22 Loans described above, as well as a March 2000 loan CBC issued to Lenz in the amount of $1.1 million. The penalties at issue cannot exceed $7,500 per violation or a maximum civil penalty of $240,000.

## COVERAGE ISSUES[2]

As we previously advised, the Policy does not provide for any duty or obligation on the part of Hartford to defend the Directors and Officers.

Insuring Clause A provides coverage for Loss that the Directors and Officers become legally obligated to pay as a result of a Claim first made during the Policy Period for a Wrongful Act that took place during or prior to the Policy Period. Insuring Clause B provides coverage to CBC for loss to the extent it has indemnified the Directors and Officers for an otherwise covered Loss. Because the Filings name individuals only, and

---

[2] As the Sections and Endorsements of the Policy referred to in this letter are merely summarized, and because other Sections and Endorsements may apply, we recommend that you read the Policy in its entirety.

CBC 000844

DrinkerBiddle&Reath
L L P

Glen M. Kurtz, Esq.
January 17, 2002
Page 7

because CBC appears to be Financially Insolvent,[3] coverage, if any, would fall under Insuring Clause A.

As stated above, Endorsement No. 4 to the Policy excludes from coverage any Claim made against the Directors and Officers . . . brought by or on behalf of the Resolution Trust Corporation, Office of Thrift Supervision, Federal Deposit Insurance Corporation ("FDIC") the Comptroller of the Currency, or similar federal or state supervisory or regulatory authority." Section IV(A) of the Policy defines "Claim" as including "a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document. Directors and Officers, in turn, are defined pursuant to Section IV(D) to include one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors or officers of [CBC]."

Based on the foregoing Policy provisions, it appears that the FDIC and State Filings Claims constitute Claims made against Directors and Officers which have been brought by the FDIC and a "similar state supervisory or regulatory authority." Accordingly, the Policy would provide no coverage for any liability the Insureds may have incurred by reason of those matters.

We do note, however, that Endorsement No. 4 also provides that in the event of a judgment or other final adjudication establishing no liability on the part of any Insured for any Claim which would otherwise be excluded by the terms of Endorsement No. 4, the Claims Expenses incurred in connection with that Claim – up to a $2.5 million Limit of Liability – will not be excluded from coverage by reason of that Endorsement. All other terms, conditions and exclusions of the Policy, however, including the applicable Retention, continue to apply. In that regard, we wish to bring to your attention the following Policy provisions:

Section III(A) provides that No Claims Expenses shall be incurred without Hartford's prior written consent. Section IV(B) of the Policy defines Claims Expenses as that portion of Loss consisting of reasonable and necessary fees (including attorney's fees and experts' fees) and expenses incurred in the defense or appeal of a Claim, but shall not include the wages salaries, benefits or expenses of any Directors, Officers or employees of the Company.

This is to advise you that Hartford consents to your firm's representation of Mr. Marks. Of course, Hartford reserves the right to deny coverage of any Claims Expenses on the basis that such defense fees and/or expenses are not reasonable and/or necessary.

---

[3] Section IV.G defines Financial Insolvency as including the status of CBC resulting from the appointment of a receiver (in this case, the FDIC).

CBC 000845

DC:369050\3

DrinkerBiddle&Reath
L L P

Glen M. Kurtz, Esq.
January 17, 2002
Page 8

Hartford also reserves its right to decline coverage of Claims Expenses incurred as a result of the Insureds having unreasonably or unnecessarily retained multiple counsel.

Section V of the Policy as amended by Endorsement No. 1 to the Policy excludes coverage of Loss, including Claims Expenses, incurred in connection with any Claim made against the Directors and Officers for based upon, arising from, or in any way related to the following:

(I)   the Insured(s) gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled;

(J)   any deliberate dishonest, malicious or fraudulent act or omission or any willful violation of law by such Insured if a judgment or other final adjudication adverse to the insured establishes such an act, omission or willful violation;

(M)  the rendering or failure to render professional services in connection with the Company's business.

## CONCLUSION

Based on the foregoing, we ask that you please keep us advised of the status of the FDIC and State Filings.

Thank you for your anticipated cooperation in this matter. Of course, to the extent that you disagree with this analysis, please promptly advise us of your views in writing together with any information that you believe Hartford should consider.

Please appreciate that Hartford's continuing attention to this matter is not intended as an admission of coverage. Accordingly, Hartford respectfully reserves all of its rights and defenses under the Policy, in equity and at law. Hartford also reserves its right to raise additional Policy terms and conditions, if and when it may be appropriate to do so.

Sincerely yours,

Alan J. Joaquin

AJJ
cc: Swett & Crawford

CBC 000846

DC\368905\3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X

MARSHALL ASCHE, STEVEN B. LEVINE,
TIMOTHY S. REED, MARCIAL CUEVAS and
JACK WILLIAM DUNLAP,

                        Plaintiffs.

-against-                                      Dkt. No. 3:03cv416 (PCD)

HARTFORD INSURANCE COMPANY
OF ILLINOIS,                                   **CERTIFICATE OF
                                               SERVICE**

                        Defendant.

------------------------------------------------------------X

       Charles A. Stewart, III, an attorney admitted to practice in the United States
District Court for the Southern District of New York and admitted pro hac in the
United States District Court for the District of Connecticut in the above action,
certifies, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that on October 20,
2005, in addition to service by email, I served the attached ***Supplemental
Certification of Charles A. Stewart, III In Opposition to Defendant's Motion for
Summary Judgment*** upon all counsel of record in this action by depositing true
copies of the same, each enclosed in a pre-paid envelope, in a depository maintained
by the United States Post Office in the City and State of New York, addressed to the
following at the address provided by each for that purpose, to wit:

                        Alan J. Joaquin, Esq.
                        Drinker Biddle & Reath, LLP
                        1500 K Street N.W.
                        Suite 1100
                        Washington, D.C. 20005-1208

                        W. Joe Wilson
                        Tyler Cooper & Alcorn, LLP
                        185 Asylum Street
                        Hartford, CT  06103-3488

Dated: October 20, 2005

                                    _____
                                      Charles A. Stewart, III