UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                              )
MARSHALL ASCHE, STEVEN B. LEVINE,      )
TIMOTHY S. REED, MARCIAL CUEVAS and    )
JACK WILLIAM DUNLAP,                                )
                                                              )
                            Plaintiffs,                   )
                                                              )
              v.                                            )     Case No. 303CV0416 PCD
                                                              )
HARTFORD INSURANCE COMPANY       )
OF ILLINOIS,                                            )
                                                              )
                            Defendant.                 )
_____ )

## RESPONSE TO PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO HARTFORD'S MOTION FOR SUMMARY JUDGMENT

Dated: October 31, 2005

Respectfully submitted,

HARTFORD INSURANCE COMPANY OF ILLINOIS

W. Joe Wilson (ct22292)
jwilson@tylercooper.com
William H. Champlin III (ct04202)
champlin@tylercooper.com
TYLER COOPER & ALCORN, LLP
185 Aslyum Street
CityPlace/35th Floor
Hartford, CT  06103-3488
(860) 725-6200
Fax (860) 278-3802

and

Alan J. Joaquin
Alison M. Jarandeh
DRINKER BIDDLE & REATH
1500 K Street N.W. , Suite 1100
Washington, D.C.  20005
(202) 842-8800
Fax (202) 842-8465

Its attorneys

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES     ii

A.    "Hartford Received Notice of Wrongful Acts During the Policy Period" (Supp. Opp. p. 3)     1

B.    "All Claims Arising From Duly Reported Wrongful Acts Are Deemed to be Claims Made During the Policy Period" (Supp. Opp. p. 5)     2

C & D. "Hartford Received Notice of a Claim During the Policy Period (Supp. Opp. p. 5) and Within the 60-Day Grace Period Following the Expiration of the Policy" (Supp. Opp. p. 6)     4

E.    "Hartford Has Acknowledged That The FDIC and CDOB Regulatory Proceedings Are Potentially Covered Claims" (Supp. Opp. p. 8)     7

F.    "Hartford Never Gave the CBC Outside Directors Any 'Confidence' That It Would Reimburse Them For Claims Expenses Incurred In Any CBC-Related Action" (Supp. Op. p. 10)     8

CONCLUSION     10

## TABLE OF AUTHORITIES

**PAGE**

Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357,
367-8 (7th Cir. 1990)                                                                 6

Home Ins. Co. v. Adco Oil Co., 154 F.3d 739, 742 (7th Cir. 1998)      1

Seneca v. Kemper Ins. Co., 2994 U.S. Dist. LEXIS 9159 (S.D.N.Y. May
20, 2004) aff'd 2005 U.S. App. LEXIS 9841 (2d Cir. May 27, 2005)       6

## RESPONSE TO PLAINTIFF'S SUPPLEMENTAL OPPOSITION

In their Supplemental Memorandum of Law in Opposition to Hartford's Motion for Summary Judgment ("Supp. Opp."), plaintiffs, former outside directors of Connecticut Bank of Commerce ("CBC"), purport to rely on "additional document production" by Hartford. But plaintiffs describe only three documents that were not previously discussed in the pleadings. The first is not relevant to the instant dispute (FDIC Letter, Stewart Supp. Ex. I); the second frankly supports Hartford's position (Lenz Letter, Stewart Supp. Ex. J); and the third is a letter to a third party (Hartford to Kurtz, Stewart Supp. Ex. K) that is essentially identical to a letter Hartford sent to plaintiff Reed but about which plaintiffs, for their own reasons, chose to remain silent.

Most of the Supplemental Opposition, although couched as providing the Court with new information, merely rehashes old arguments and opportunistically attempts to "spin" Hartford's conduct as nefarious when, in fact, Hartford simply seeks to enforce the Policy's clear and unambiguous preconditions to coverage.[1]

**A.     "Hartford Received Notice of Wrongful Acts During the Policy Period" (Supp. Opp. p. 3)**

Notice provisions in claims-made policies are strictly construed because they define the scope of coverage; proper notice becomes a condition precedent to coverage. *Home Ins. Co. v. Adco Oil Co.*, 154 F.3d 739, 742 (7th Cir. 1998). During the Policy Period, Hartford received notice of specific Wrongful Acts that could give rise to Claims against Lenz and Weand so as to preserve coverage for certain Claims against those two individuals under Section VIII.A of the Policy. Those Wrongful Acts were described

---

[1] For example, plaintiffs again attempt to persuade the Court that Hartford failed to conduct a proper investigation into the "potential claims." Supp. Opp. p. 8. Plaintiffs point to no newly-produced documents to contradict the undisputed fact on June 26, 2002, CBC expressly assured Hartford that it now had the sum of the "information the Insured has obtained at this point in time." Stewart Supp. Ex. H. Plaintiffs also flatly misstate the truth when they assert that Hartford "made no effort to contact Mr. Schulman" or anyone else at CBC. Supp. Opp. p.8. The very letter cited in their "chart of notices" on page 7, dated July 26, 2002, not only was sent to Mr. Schulman but invited a response. There was no such response. Palermini Aff., ¶ 11.

in the only notice given to Hartford's D&O Claims department during the Policy Period that ended at 12:01 a.m. on July 1, 2002 – that is, the June 26, 2002 Schulman Letter with the FDIC Dismissal Order.  Plaintiffs discussed those materials at great length in their original Opposition.  They have not introduced any new documents to dispute the fact that these materials were the only communication to Hartford's D&O Claims department during the Policy Period.   Contrary to plaintiffs' unwarranted suggestion, Hartford never attempted to deceive anyone about notices of potential claims during the so-called 60-day grace period.  Supp. Opp. at 3.   As Hartford expressly stated in its Reply to Plaintiffs' original Opposition, for the purposes of Section VIII.A, it is irrelevant whether notices of additional Wrongful Acts arrived at Hartford eight hours or eight months after the Policy Period expired.  The Policy is clear:  any description of Wrongful Acts or "potential claims" within the 60-day notice period for actual Claims would not trigger Section VIII.A.[2]

**B.    "All Claims Arising From Duly Reported Wrongful Acts Are Deemed to be Claims Made During the Policy Period"  (Supp. Opp. p. 5)**

Plaintiffs seem finally to appreciate that the Interrelated Wrongful Acts provision of the Policy applies only if Wrongful Acts were "duly reported" to Hartford before 12:01 a.m. on July 1, 2002 and only if subsequent Claims arise out of those "duly reported" Wrongful Acts.  But although the newly-produced documents present no evidence of notice other than the Schulman Letter and the FDIC Dismissal Order, plaintiffs manufacture an opportunity simply to repeat their argument that the description of the Wrongful Acts of Lenz and Weand in the FDIC Dismissal Order preserves coverage for

---

[2] With absolutely no basis in fact, certainly with no supporting documents, plaintiffs opine that Hartford "may have received" additional notices that "may have been sent prior to June 29."  Supp. Opp. p. 3.  Hartford disputes this unwarranted insinuation and protests the plaintiffs' inclusion of it in a Memorandum that the Court permitted because of newly-produced documents.  Plaintiffs cite no such documents to justify their insinuation.  Moreover, plaintiffs cite no documents to support their original "constructive notice" argument ( that Hartford should be <u>deemed</u> to have received notice of Wrongful Acts because CBC's agents <u>may have sent</u> documents to Hartford's Underwriters for reasons unrelated to preserving coverage for future claims).  The newly-produced documents do not support that contention.

2

the claims ultimately brought against these plaintiffs.  Supp Opp. p. 4-5.   The argument, however, rests on a mischaracterization of the Policy provision that is central to this dispute (Section VIII.A).

According to plaintiffs, a "duly reported" Wrongful Act is "one that may reasonably be expected to rise to a Claim against an Officer or Director."  Supp. Opp. p. 5.   But this is <u>not</u> what the Policy demands as "duly reported;" rather, a Wrongful Act cannot be deemed "duly reported" within the meaning of Section VIII.A unless the report is in writing, is received by Hartford during the Policy Period and comprises all of the following: a description of a specific Wrongful Act; the reasons for anticipating a Claim; the nature and dates of the alleged Wrongful Act; the alleged damages sustained; the names of potential claimants; any Director or Officer involved in the alleged Wrongful Act; <u>and</u> the manner in which the Insureds first became aware of the specific Wrongful Act.  Plaintiffs utterly fail to cite any new documents demonstrating that Wrongful Acts that subsequently gave rise to Claims were "duly reported."

The documents already in the record -- the Schulman Letter and FDIC Dismissal Order -- do not describe any potential claimants other than the regulatory agencies.  There is no indication that claimants may include depositors or shareholders, or that claimants could seek as potential damages the loss of deposited funds, as sought by the Megaler and Bazinet claimants, or the quantum of those damages.   Neither the Schulman Letter nor the FDIC Dismissal Order describe any negligence by CBC's outside directors;  instead, the "duly reported" Wrongful Acts of Lenz and Weand are those involving an unsound "credit relationship to finance gaming operations in Latin American countries" and a "fraudulent scheme of unlawful and unsound lending" leading to the purchase of MTB Bank.   Neither the Megaler nor the Bazinet complaints allege that CBC's outside directors participated in that fraud.  The Bazinet complaint alludes to the fraud but expressly alleges that Lenz and Weand concealed the scheme from the

3

directors. The Megaler complaint is even more attenuated from the FDIC Dismissal Order, because Megaler alleges one-on-one misrepresentations by a bank employee (Eduardo Martin) and negligent supervision of bank employees by the outside directors. The FDIC Dismissal Order does not even mention, let alone describe with particularity, any conduct by the outside directors.[3]

**C & D. "Hartford Received Notice of a Claim During the Policy Period (Supp. Opp. p. 5) and Within the 60-Day Grace Period Following the Expiration of the Policy" (Supp. Op. p. 6)**

Plaintiffs first tucked the germ of this argument into a single footnote in their original Opposition, suggesting that the FDIC Dismissal Order was a Claim. In that footnote, however, plaintiffs acknowledged that the FDIC Dismissal Order "does not identify a party" and was not "for" a Wrongful Act, but merely "concerned" Wrongful Acts of Lenz and Weand. *See* Opp. p. 20. It seems that plaintiffs now fully appreciate that because of insufficient notice of specific Wrongful Acts, they must establish that an actual Claim was made during the Policy Period.

That is why, despite the fact that plaintiffs do not submit any newly-produced documents establishing any such Claim, they take a "second bite at the apple." Their argument is frail, partly because the Schulman Letter expressly limited itself to notice that CBC's directors and officers "may be subject to claims." Stewart Supp., Ex. H. and Levine Aff. ¶ 11. Moreover, there are no documents in the record – newly-produced or not – in which the Insureds provide notice of an actual Claim before the 60-day "grace period" expired.

For example, the Accord Notice dated July 1, 2002 from the broker lists an "occurrence" – pointedly not a "claim" – and remarks that it is "for record purposes only

---

[3] Plaintiffs concede that they did not expect the FDIC Dismissal Order to give rise to a Claim by the regulatory agencies against them ("I and the other Plaintiffs were shocked" when the regulatory actions were filed). Levine Aff. ¶ 17.

at this time" (*i.e.,* to preserve coverage for future claims). The accompanying news articles, reporting on CDOB's application for a court order naming the FDIC as receiver, did not constitute or even describe a demand upon any Director or Officer. Similarly, the plaintiffs inexplicably include the July 11, 2002 letter from the FDIC to Hartford on their chart of "notices of claims" despite the fact that the letter is actually a demand upon Hartford -- the letter was not directed to any Insured at all. Moreover, "notice" of this "claim" (if it can even be termed a "claim") was provided to Hartford by the FDIC, not by any Insured as required by the Policy. Complaint, Ex. A, Section I.

Most telling is Lenz's own view – as evidenced by his August 28, 2002 letter – that the FDIC Dismissal Order (and the application for an appointment of a receiver by the Connecticut Commissioner of Banking) are not, in fact, Claims. Stewart Supp., Ex. J, (discussing only "a potential claim" and "the potential for future claims.")

Plaintiffs breezily dismiss the case law demonstrating that Lenz's position is correct. Plaintiffs argue that the cases are distinguishable because they do not construe policies that define the term Claim. Supp. Opp. p. 6. But the salient part of the definition of Claim in Hartford's Policy is not whether the FDIC Dismissal Order is an "administrative or regulatory proceeding." The correct inquiry is whether the Dismissal Order is "against" Directors and Officers. "Against" is not a defined term in Hartford's Policy. However, the Insuring Agreements provide a framework for its interpretation, because they expressly cover only Loss that the Insureds become "legally obligated" to pay. This is completely consistent with the conclusion that the plain and ordinary meaning of an action "against" Directors and Officers is that the claimant must seek to hold them personally responsible for alleged wrongdoing, as discussed at greater length in Hartford's original briefs. Nowhere do plaintiffs contend that during the Policy Period

the FDIC sought to hold Lenz, Weand, or any other director personally responsible for alleged wrongdoing.[4]

Because there was no Claim during the Policy Period, the case law upon which plaintiffs rely is inapposite – including the recent Second Circuit affirmance of the trial court in *Seneca v. Kemper Ins. Co.*, 2004 U.S. Dist. LEXIS 9159 (S.D.N.Y. May 20, 2004), aff'd, 2005 U.S. App. LEXIS 9841 (2d Cir. May 27, 2005). The CBC directors seek to "relate" actual Claims to notice of Wrongful Acts. The *Seneca* court did not hold that a later Claim could be "interrelated to" "duly reported" Wrongful Acts. In *Seneca*, the Insureds expressly sought, and Seneca extended, coverage for an actual Claim made under Seneca's Policy Period. Subsequently, the Insureds sought coverage for a second Claim made in Kemper's Policy Period. The *Seneca* court held that the two actual Claims made in two different Policy Periods could be deemed a single Claim by virtue of their common factual nexus.

Here, however, plaintiffs want to relate actual Claims only to potential claims. Supp. Opp, p. 10 ("all of the actions . . arise from Wrongful Acts first reported to Hartford in June, 2002"). Unlike in *Seneca*, all of the actions brought against the CBC Insureds are Claims made after the Policy Period expired. They cannot be deemed Claims first made during the Policy Period unless the Insureds gave particularized, detailed notice of Wrongful Acts before July 1, 2002 at 12:01 a.m. as specified in Section VIII.A of the Policy. *Seneca* does not in any way stand for the proposition that the Policy's Interrelated Wrongful Acts provision trumps the requirements set forth in Section VIII.A, or that it could possibly be implicated even in the absence of an actual Claim made during the Policy Period.

---

[4] In order to be held liable, an individual must be identified by a claimant. See, e.g., *Harbor Insurance Co. v. Continental Bank Corp.*, 922 F.2d 357, 367-8 (7th Cir. 1990).

E. **"Hartford Has Acknowledged That The FDIC and CDOB Regulatory Proceedings Are Potentially Covered Claims" (Supp. Opp. p. 8)**

In a document dated July 26, 2002, Hartford reserved its rights and defenses regarding the Insureds' notice of potential claims and deferred its determination whether the notice letters constitute a Claim and/or otherwise comply with" the Policy's notice provisions "until such time as additional information is received or action by third parties develops." Supp. Op. p. 7. Five months later, Hartford did receive such additional information (albeit not from any of the plaintiffs). By letter dated December 4, 2002, counsel for Brian Marks sought coverage from Hartford. (Marks is not a plaintiff in this coverage dispute.) Hartford responded by acknowledging that the FDIC and CDOB regulatory actions appeared to constitute Claims against Mr. Marks, but Hartford (a) expressly did not admit coverage for the actions and (b) repeatedly emphasized that the actions were excluded from coverage by Endorsement No. 4, except potentially for Claims Expenses "in the event a judgment or other final adjudication establishing no liability on the part of any Insured for any Claims which would otherwise be excluded by the terms of Endorsement No. 4." Stewart Supp. Ex. K.

Plaintiffs assert that Hartford's letter to Mr. Marks somehow establishes coverage for the regulatory actions and, by extension, the Megaler and Bazinet Actions. Supp. Op. p. 9. But coverage for the regulatory actions is entirely precluded by the regulatory exclusion and the liability plaintiffs incurred in settling those actions. Therefore, the only way the Megaler and Bazinet complaints can be deemed Claims made before July 1, 2002, is if they arise from a "duly reported" Wrongful Act. The "duly reported" Wrongful Acts in this case are those of Lenz and Weand only, and solely those acts that were described in the FDIC Dismissal Order.

Plaintiffs have not introduced any new documents showing that either Megaler or Bazinet arose from those "duly reported" Wrongful Acts. No new documents show that

any Insureds "duly reported" Megaler's name as a potential claimant, the nature and dates of the alleged misrepresentations Martin made to Megaler, the alleged damages of $2.7 million in deposits, or the names of any of the defendants named by Megaler, other than Lenz.  With regard to Bazinet, plaintiffs can only argue that the Bazinet complaint "copied the factual allegations of the Federal Regulatory Action."  However, the Federal Regulatory Action (*i.e*, the action that plaintiffs settled with the FDIC) was not filed until <u>after</u> the Policy Period expired.

### F.  "Hartford Never Gave the CBC Outside Directors Any 'Confidence' That It Would Reimburse Them For Claims Expenses Incurred In Any CBC-Related Action" (Supp. Op. p. 10)

The only argument in the Supplemental Opposition that is entirely new by virtue of newly-produced documents is that Hartford failed to provide plaintiffs with letters similar to one sent to Glen M. Kurtz, Esq.  Supp. Opp. Ex. K.  In that letter, Hartford advised counsel for Brian Marks that the FDIC Action was excluded from coverage, based on Endorsement No. 4 to the Policy, which excludes Loss from

> any Claim made against the Directors and Officers . . . brought by or on behalf of the Resolution Trust Corporation, Office of Thrift Supervision, Federal Deposit Insurance Corporation, the Comptroller of the Currency, or similar federal or state supervisory or regulatory authority.

The letter also advised Mr. Marks that Claims Expenses could be covered, but only in the event of a judgment or other final adjudication establishing no liability on the part of any Insureds.

According to plaintiffs, if they had received similar letters they would have had the "confidence" to defend the regulatory proceedings rather than settle.  Supp. Op. p. 11.  There are two problems with this contention.  First, the "confidence" given to Mr. Marks in Hartford's letter is not an acknowledgment of coverage.  It is a recitation o f the

8

Policy's regulatory exclusion, including the exception for an adjudication establishing "no liability on the part of any Insured," and a reservation of Hartford's rights and defenses.[5]

Second, and fatal to their contention that Hartford did not provide them with similar "confidence," plaintiffs have chosen not to provide the Court with a very similar letter in their possession for more than two years, sent by Hartford to counsel for plaintiff Timothy S. Reed. Mr. Reed wrote to Hartford on January 28, 2003 to advise the insurer that "conditions exist which would require me to call upon" the Policy. Hartford's response, dated March 13, 2003, observes that it is aware of the FDIC Action, although "no one has provided us with notice of the FDIC Filing on behalf of Mr. Reed." The letter proactively goes on to give Mr. Reed Hartford's coverage views.[6]  Joaquin Aff. Ex. A.

Most relevantly, Hartford writes that by virtue of the regulatory exclusion in Endorsement No. 4 to the Policy, there would be no coverage for the FDIC Action. Id. However, as in the letter to Mr. Marks, Hartford explicitly draws Mr. Reed's attention to the exception for Claims Expenses in the event of a final adjudication of "no liability on the part of any Insured" for the FDIC Action. Id. As with Mr. Marks, Hartford requests further information regarding Mr. Reed's defense arrangements and reserves its rights and defenses. Id. Plaintiffs' implication to this Court that the Marks letter is "new" information justifying their Supplemental Opposition is questionable at best, given the existence of an essentially identical letter to plaintiff Reed.

---

[5] In any event, the "confidence" Mr. Marks purportedly received did not encourage him to defend the regulatory action – he settled at exactly the same time and for the same civil monetary penalty as plaintiffs Asche and Reed.

[6] Hartford's letter to counsel for Mr. Marks is explicitly responsive to his "correspondence dated December 4, 2002 and attachments thereto," including the FDIC Action. There is no similar correspondence in the record from any of the plaintiffs. Mr. Reed wrote to Hartford but did not explicitly seek coverage for the FDIC Action. Accordingly, Hartford had no reason to write a similar letter to anyone other than Mr. Reed.

Finally, because even if the FDIC Action were a Claim deemed made during the Policy Period the regulatory exclusion would preclude all coverage, plaintiffs again resort to their incredible contention that a stipulated agreement "finding" no liability as to certain allegations by the FDIC constitutes a "final adjudication establishing no liability on the part of any Insureds" even though each of those Insureds paid a civil monetary penalty to settle the FDIC Action.  Supp. Op. p. 11.  Plaintiffs do not provide any newly-produced documents supporting the proposition that a settlement constitutes an "adjudication" as that term would be understood by a layman, or that the legal obligation of each of the plaintiffs to pay civil monetary penalties can possibly be deemed "no liability on the part of any Insureds."

## CONCLUSION

Plaintiffs ask for a declaration of insurance coverage under Hartford's claims-made Policy for actions against them first brought after the Policy Period expired.  The Supplemental Opposition utterly fails to describe any newly-produced documents establishing either that any Claim against Directors or Officers was made during the Policy Period or that any Insured reported to Hartford specific Wrongful Acts with sufficient particularity to preserve coverage for the Claims made against plaintiffs. Hartford respectfully requests that this Court grant summary judgment in Hartford's favor either in whole or, alternatively, in part as to the FDIC and CDOB Actions on the basis that any Loss from those proceedings is excluded from coverage under the terms of the regulatory exclusion in the policy's Endorsement No. 4.

Dated: October 31, 2005

Respectfully submitted,

HARTFORD INSURANCE COMPANY OF ILLINOIS

_____
W. Joe Wilson (ct22292)
jwilson@tylercooper.com
William H. Champlin III (ct04202)
champlin@tylercooper.com
TYLER COOPER & ALCORN, LLP
185 Aslyum Street
CityPlace/35th Floor
Hartford, CT  06103-3488
(860) 725-6200
Fax (860) 278-3802

and

Alan J. Joaquin
Alison M. Jarandeh
DRINKER BIDDLE & REATH
1500 K Street N.W. , Suite 1100
Washington, D.C.  20005
(202) 842-8800
Fax (202) 842-8465

Its attorneys

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL ASCHE, STEVEN B. LEVINE, TIMOTHY S. REED, MARCIAL CUEVAS and JACK WILLIAM DUNLAP, <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD INSURANCE COMPANY OF ILLINOIS, <br><br> Defendant. | Case No. 303CV0416 PCD |

## CERTIFICATE OF SERVICE

I, W. Joe Wilson, an attorney admitted to practice in the United States District Court for the District of Connecticut certifies, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that on October 31, 2005, certify that I served the attached Response to Plaintiffs' Supplemental Opposition to Hartford's Motion for Summary Judgment upon all counsel of record in this action by depositing true copies of the same, each enclosed in a pre-paid envelope, in a depository maintained by the United States Postal Service in the City of Hartford and State of Connecticut, addressed to the following at the address provided by each for that purpose, to wit:

        Charles A. Stewart, IIII
        Stewart Occhipinti LLP
        1350 Broadway, Ste. 2200
        New York, NY  10018

        Richard P. Weinstein
        Weinstein & Wisser, P.C.
        29 South Main Street, Suite 207
        West Hartford, CT  06107

Dated:  October 31, 2005

        _____
        W. Joe Wilson